ACCEPTED
14-15-00614-cv
FOURTEENTH COURT OF APPEALS
HOUSTON, TEXAS
10/19/2015 8:49:00 AM
CHRISTOPHER PRINE
CLERK

## No. 14-15-00614-CV

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS
10/19/2015 8:49:00 AM
CHRISTOPHER A. PRINE
Clerk

### IN THE COURT OF APPEALS
### FOR THE FOURTEENTH DISTRICT OF TEXAS

_____

## MAXIM CRANE WORKS, L.P.,

*Appellant*

## V.

## BERKEL & COMPANY CONTRACTORS, INC.

*Appellee*

_____

### Appeal from the 149th Judicial District Court
### Brazoria County, Texas
### Trial Court Cause No. 75576-CV

_____

### MAXIM CRANE WORKS, L.P'S RESPONSE TO
### BERKEL & COMPANY CONTRACTORS, INC.'S
### MOTION TO ABATE

_____

Jeffrey L. Diamond
State Bar No. 05802500
Ann E. Knight
State Bar No. 00786026
1010 N. San Jacinto Street
Houston, Texas 77002
Tel: (713) 227-6800
Fax: (713) 227-6801
jeffrey@ jdiamondandassociates.com
ann@jdiamondandassociates.com

**TO THE HONORABLE FOURTEENTH COURT OF APPEALS:**

Appellant, Maxim Crane Works, L.P., ("Maxim") files this, its response to Appellee, Berkel Company Contractors, Inc. (Berkel's") Motion to Abate, and respectfully shows the Court as follows:

## I. INTRODUCTION AND BACKGROUND FACTS

The underlying lawsuit arises out of a personal injury which was sustained by Plaintiff on September 30, 2013, as a result of being struck by a piece of equipment at a jobsite in Houston, Harris County, Texas. At the time of the incident, Plaintiff was employed by Skanska USA Building Inc., the general contractor, who had retained BERKEL, a subcontractor, to provide construction services, including the installation of Auger Cast Piles. In order to provide the construction services at the jobsite, BERKEL rented a Link-Belt crawler crane form MAXIM pursuant to a Bare Rental Agreement (hereinafter referred to as "Agreement"). At the time of the incident, BERKEL was operating the crane to perform deep foundation drilling and installation of the piles when the boom collapsed and the auger and leads broke and struck Plaintiff.

The Bare Rental Agreement between MAXIM and BERKEL contained an indemnity clause which was subject to, and specifically referenced, Chapter 151 of the Texas Insurance Code, commonly referred to as the Texas Anti Indemnity Statute. Maxim filed a cross-action against Berkel on or about June 12, 2014, for breach of that Agreement and for recovery of its defense costs, and the same was subsequently amended on December 17, 2014. (See Exhibit "A" attached hereto.)

Maxim's Motion for Entry of Judgment and Supplemental Motion for Entry of Judgment on its cross-claim against BERKEL (See Exhibits "B" and "C" attached hereto), were denied in the Amended Final Judgment, signed on July 1st 2015 (See Exhibit "D" attached hereto). On July

16, 2015, Maxim filed its Notice of Appeal from a Final Judgment signed on June 17, 2015, and the Amended Judgment signed on July 1st 2015. Subsequently, on August 31, 2015, BERKEL filed a Motion to Abate Maxim's Appeal on the grounds that Maxim's Appeal was not ripe. BERKEL also filed a Motion for New Trial and Objections to the Amended Judgment which were heard on August 31, 2015. The Motion for New Trial was denied but the objections to the Amended Judgment were granted and, as a result of same, a Final Judgment was entered on September 16, 2015 (See Exhibit "E" attached hereto). BERKEL filed its Notice of Appeal on September 16, 2015.

## II. MAXIM'S APPEAL IS RIPE

Maxim has filed an appeal on the denial of its cross-claim against BERKEL and is seeking the Court's guidance on the interpretation and application of Chapter 151, of The Texas Insurance Code, specifically, Sections 151.102.and 151.103.

Pursuant to Section 151.102, of The Texas Insurance Code, Maxim is of the opinion that it is entitled to a reimbursement of its attorney's fees under the Bare Rental Agreement on a pro-rata percentage consistent with the Jury's Verdict. BERKEL, on the other hand, is of the opinion that since MAXIM was assigned a percentage of fault by the jury, then it is not entitled to reimbursement under the Bare Rental Agreement and Section 151.102, of any of its attorney's fees. This issue is clearly ripe for appeal, since it is a matter of interpretation of the Statute, Chapter 15, Texas Insurance Code, and is not contingent on the outcome of BERKEL'S Appeal, noticed on September 16, 2015.

With respect to Section 151.103 of The Texas Insurance Code, MAXIM is of the opinion that it is entitled to full defense and indemnity from BERKEL (pursuant to the Agreement and Section 151.103) in the event that BERKEL is successful on its Appeal. In

other words, if Plaintiffs' Judgment against BERKEL is determined to be barred, based on the exclusive remedy defense of the Texas Worker's Compensation Scheme, MAXIM is of the opinion that Section 151.103, provides that MAXIM is entitled to full defense and indemnity from BERKEL. Although BERKEL will argue that this issue is contingent on the outcome of its appeal on the merits of this case, that is not the case since the appeal issue to be decided is a matter of interpretation of the Statute, Chapter 15, Texas Insurance Code, and how it should be applied in this instance.

### III. CONCLUSION

For the foregoing reasons, Maxim Crane Works, L.P. respectfully requests that this Court deny BERKEL's Motion to abate this case in its entirety.

Respectfully submitted,

**J. DIAMOND AND ASSOCIATES, PLLC**


        /s/ Ann E. Knight
Jeffrey L. Diamond
        State Bar No.  05802500
Ann E. Knight
        State Bar No. 00786026
1010 N. San Jacinto Street
Houston, Texas 77002
Tel:  (713) 227-6800
Fax:  (713) 227-6801
jeffrey@ jdiamondandassociates.com
ann@jdiamondandassociates.com

Attorneys for Defendants:
**Maxim Crane Works, L.P., and James Davidson**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the forgoing instrument was served upon all known counsel of record via facsimile, hand delivery, and/or certified mail, return receipt requested, on the 16th day of October, 2015.

Kurt B. Arnold
**ARNOLD & ITKIN**
6009 Memorial Drive
Houston, TX 77007

Justin Gilbert
**GILBERT & FUREY**
222 North Velasco Street
Angleton, TX 77515

Charles Lloyd Clay, Jr.
**CHUCK CLAY & ASSOCIATES, LLC.**
3280 Peachtree Road NE, Suite 2050
Atlanta, GA 30305

Russell S. Post
**BECK REDDEN LLP**
1221 McKinney, Suite 4500
Houston, TX 77010

Andrew T. McKinney IV
D. Douglas Mena
**LITCHFIELD CAVO LLP**
One Riverway, Suite 1000
Houston, TX 77056

Thomas C. Wright
Jessica Z. Barger
Garrett A. Gibson
**WRIGHT & CLOSE, LLP.**
One Riverway, Suite 2200
Houston, Texas 77056

John Dwyer
**GORDON & REES, LLP**
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

Steven D. Selbe
**GORDON & REES, LLP**
1900 West Loop South, Suite 1000
Houston, TX 77027

Christopher Pine
Clerk, First Court of Appeals
First Court of Appeals
301 Fannin Street, Room 208
Houston, Texas 77002-2066

Christopher Pine
Clerk, Fourteenth Court of Appeals
Fourteenth Court of Appeals
301 Fannin Street, Room 208
Houston, Texas 77002-2066

/s/ Ann E. Knight
Ann E. Knight

5

# EXHIBIT A

Filed for Record
12/17/2014 10:32:41 AM
Rhonda Barchak, District Clerk
Brazoria County, Texas
75576-CV
Kandice Haseloff, Deputy

CAUSE NO. 75576-CV

| | | |
|---|---|---|
| TYLER LEE AND LEIGH ANN LEE INDIVIDUALLY AND AS NEXT FRIEND OF SYDNEY ROSE LEE, MINOR | § § § § | IN THE DISTRICT COURT OF |
| *Plaintiff* | § § | |
| VS. | § § | BRAZORIA COUNTY, TEXAS |
| BERKEL & COMPANY CONTRACTORS, INC., MAXIM CRANE WORKS, L.P., DIXON EQUIPMENT SERVICES, INC., FLOYD DIXON, ISAAC DOLAN, JAMES DAVIDSON ANDREW BENNETT, AND LINK-BELT CONSTRUCTION EQUIPMENT CO. | § § § § § § § § | |
| *Defendants* | § | 149TH JUDICIAL DISTRICT |

## MAXIM CRANE WORKS, L.P.'s FIRST AMENDED CROSS-CLAIM AGAINST BERKEL & COMPANY CONTRACTORS, INC.

COMES NOW, Defendants, **MAXIM CRANE WORKS, L.P.'s** (hereinafter referred to as "MAXIM") and files this, its First Amended Cross-Claim against **BERKEL & COMPANY CONTRACTORS, INC.,** (hereinafter referred to as "BERKEL") and would respectfully show the Court as follows:

### I.

BERKEL has appeared in this action and is before the Court for all purposes.

### II. FACTS

This lawsuit arises out of a personal injury which was sustained by Plaintiff on September 30, 2013, as a result of being struck by a piece of equipment at a jobsite located at 15375 Memorial Drive, Houston, Harris County, Texas. At the time of the incident, Plaintiff was employed by Skanska USA Building Inc., the general contractor, who had retained BERKEL, a subcontractor, to provide construction services, including the installation of Auger Cast Piles. In order to provide the construction services at the jobsite, BERKEL rented a Link-Belt crawler

crane form MAXIM pursuant to a Bare Rental Agreement (hereinafter referred to as "Agreement"). At the time of the incident, Berkel was operating the crane to perform deep foundation drilling and installation of the piles when the boom collapsed and the auger and leads broke.

The Bare Rental Agreement provides in part as follows:

THE EQUIPMENT IS RENTED TO LESSEE ON A **BARE RENTAL BASIS ONLY**, In Its "As Is" condition. Lessee, at its expense, shall transport, operate, inspect, maintain and repair the Equipment, and return the Equipment to Lessor in the same condition as when delivered to Lessee, ordinary wear and tear from normal use excepted. LESSEE IS RESPONSIBLE FOR ENSURING COMPLIANCE BY IT AND ITS EMPLOYEES/AGENTS, AND OF THE EQUPMENT ITSELF, WITH ALL APPLICABLE LAWS, REGULATIONS AND ORDINANCES, INCLUDING THE OCCUPATIONAL SAFETY AND HEALTH ACT AND REGULATIONS (INCLUDING BUT NOT LIMITED TO 29 C.F.R. 1926, SUBPART N – CRANES AND DERRICKS IN CONSTRUCTION AND CFR 1910, 18- CRAWLER LOCAMOTIVE AND TRUCK CRANES), and ALL APPLICABLE ANSI STANDARDS, Lessor shall have no responsibility of any kind for compliance with any such laws, regulations or ordinances during the period the Equipment is in Lessee's possession or control.

**Terms and Conditions**

2. **Operation:** Lessee shall not subject the Equipment to careless or needlessly rough usage and Lessee hereby agrees that the Equipment shall be operated, inspected, maintained and repaired only by experienced, competent persons under Lessee's supervision and control. The Equipment shall be operated in a safe and lawful manner at all times, and in accordance with the manufacturer's operators manual, OSHA rules and ANSI standards. Lessee's operation of the Equipment shall not exceed the manufacturer's safety requirements and rated load capacities. Equipment shall not be used when overloaded.....

6. **Insurance:** Lessee, at its expense, shall take out, carry and maintain the insurance specified herein and in the insurance addendum attached hereto, in full force during the term of this Lease, and prior to taking delivery of the Equipment:

a. Primary, non-contributing without regard to any "Other insurance" clause, comprehensive general liability insurance, including contractual liability, protecting against liability for property damage and personal injury or death arising out of the possession, use, operation, maintenance and repair of the Equipment, with limits of liability not less than $2,000,000 general aggregate;

2

All Insurance required hereunder shall be deemed primary, non-contributory insurance of Lessor; shall name Lessor as an additional insured party ……. and loss payee;….

7.  **INDEMNIFICATION:**

a.  TO THE FULLUES EXTENT PERMITTED BY TEXAS INSURANCE CODE CHAPTER 161 OR OTHER APPLICABLE LAW, AND EXCEPT AS SET OUT IN SUBPARAGRAPH (B) BELOW, LESSEE SHALL DEFEND, INDEMNIF, AND HOLD HARMLESS THE LESSOR, ITS OFFICERS, DIRECTORS, SHAREHOLDERS, PARTNERS, MEMBERS, MANAGERS, EMPLOYEES AFFILITES, REPRSENTATIVES AND AGENTS ("INDEMNITEES") FROM ANY AND ALL ACTIONS, CAUSES OF ACTION, CLAIMS, SUITS, DEMANDS, INVESTIGATIONS, OBLIGATIONS, JUDGMENTS, LOSSES, COSTS, LIABILITIES, DAMAGES, FINES, PENALTIES AND EXPENSES, INCLUDING ATTORNEY FEES, WHICH ARE INCURRED BY, ACCRUED, ASSERTED, OR MADE AGAINS,T OR RECOVERAGLE FROM ANY OF THE INDEMNITEES ARISING FROM OR RELATING TO, DIRECTLY OR INDIRECTLY, THE LESSES'S ACCEPTANCE, POSSESSION, TRANSPORT, USE, OPERATION, OR CONTROL OF THE EQUIPMENT, WHETHER OR NOT THE SAME ARISES FROM DAMAGE TO PROEPRTY (REAL OR PERSONAL), INJURY OR DEATH TO PERSONS INCLUDING BUT NOT LIMITED TO LESSEE'S EMPLOYEES, AGETNS AND REPRESNTATIVES, FAILURE TO COMPLY WITH APPLICABLE LAWS, REGUALTIONS AND ORDINANCES, EQUIPMNT CONDITION, LOSS OF USE OR SEIZURE OF EQUIPMENT, OR OTHERWISE, BUT ONLY TO THE EXTENT CAUSED IN WHILE OR IN PART BY ANY NEGLIGENT ACT OR OMISSION OR ANY INTENTIONAL ACT OF LESSEE OR ANYONE DIRECLTY OR INDIRECTLY EMPLOYED BY LESSEE OR ANYONE FOR WHOSE LESSEE MAY BE LIABLE. LESSEE'S OBLIGATION TO DEFEND, HOLD HARMLESS AND INDEMNITY THE INDEMNITEES SHALL SURVIVE THE TERMINATION OF THIS RENTAL AGREEMENT, IT IS EXPRESSLY AGREED THAT THIS INDEMNIFICATION CLAUSE APPLIES TO BOTH THIRD-PARTY CLAIMS AND ALL CLAIMS BETWEEN LESSOR AND LESSEE.

b.  NOTWITHSTANDING THE FOREGOING, TO THE FULLEST EXTENT PERMITTED BY TEXAS INSURANCE CODE CHAPTER 151 OR OTHER APPLICABLE LAW, LESSEE SHALL DEFEND, INDEMNITY,A DN HOLD HARMLESS THE LESSOR, ITS OFFICERS, DIRECTORS, SHAREHOLDERS, PARTNERS, MEMBERS, MANAGERS, EMPLOYEES, AFFILIATES, REPRESENTATIVES AND AGENTS ("INDEMNITEES") FROM AND AGAINST ALL CLAIMS, DAMAGES, LOSSES AND EXPENSES, INCLUDING BUT NOT LIMITED TO

3

ATTORNEYS FEES ARISING OUT OF OR RESULTING FROM BODILY INJURY TO, OR SICKNESS, DIESEASE OR DEATH OF ANY EMPLOYEE, AGENT OR REPRESENTATIVE OF LESSES OR ANY OF ITS SUBCONTRACTORS, REGARLESS OF WHETHER SUCH CLAIM, DAMAGE, LOSS OR EXPENSE IS CAUSED, OR IS ALLEGED OT BE CAUSED, IN WHOLE OR IN PART BY THE NEGLIGENCE OF ANY INDEMNITEE, IT BEING THE EXPRESSED INTENT OF LESSOR AND LESSEE THAT IN SUCH EVENT THE LESSEE IS TO INDEMNIFY, HOLD HARMLESS AND DEFEND THE INDEMNITIEES FROM THE CONSEQUENCES OF THEIR OWN NEGLIGENCE WHETHER IT IS OR IS ALLOWED TO BE THE SOLE OR CONCURRING CUASE OF THE BODILY INJURY, SICKNESS, DISEASE OR DEATH OF LESSEE'S EMPLOYEE OR THE EMPLOYEE OF AN OF ITS SUBCONTRACTOR. THE INDEMNIFICATION OBLIGATIONS UNDER THIS PARAGRAPH SHALL NOT BE LIMITED BY ANY LIMITATION ON THE AMOUNT OR TYPE OF DAMAGES, COMPESNATION OR BENEFITS PAYABLE BY OR FOR LESSEE UDNER WORKERS' COMPESNATION ACTS, DISABILTY BENEFIT ACTS OR OTHER EMPLOYEE BENEFIT ACTS. LESSEE SHALL PROCURE LIABILITY INSURNACE COVERING ITS OBLIGATIOSN UNDER THIS PARAGRAPH, LESSEE EXPRESSLY AGREES TO WAIVE ANY WORKERS COMPENSATION IMMUNITY IT MAY OTHERWISE HAVE.

See Exhibit "A" attached hereto – the Bare Rental Agreement between Maxim and Berkel

## III. CROSS-CLAIMS

### A. Breach of Contract

BERKEL entered into an Agreement with MAXIM for the rental of the Link-Belt crane at the Memorial jobsite. Plaintiff has named MAXIM as a Defendant in the underlying lawsuit from whom he is seeking to recover damages for his alleged personal injuries as set out in his live Petition.

The Agreement provided that, BERKEL shall operate the crane in a safe and lawful manner at all times and in accordance with the manufacturer's operator's manual, all applicable laws, regulations, ordinances rules and standards and that its operation of the crane not exceed the manufacturer's safety requirements and rated load capacities. Additionally, pursuant to the

4

Agreement, BERKEL agreed to defend, hold harmless and indemnify MAXIM and maintain certain insurance under which MAXIM is to be named as an additional insured.

The Bare Rental Agreement was valid and enforceable and MAXIM complied with the terms of the Bare Rental Agreement, including any conditions precedent.

BERKEL has breached the Agreement and such breaches include but are not limited to the following:

- By failing to operate the Equipment in a safe and lawful manner at all times.

- By failing to operate the Equipment in accordance with the manufacturer's operators manual.

- By operating the Equipment in excess of the manufacturer's safety requirements.

- By operating the Equipment in excess of its rated load capacities.

- By failing to ensure that the equipment was operated by experienced and competent persons.

- By subjecting the Equipment to careless and needlessly rough usage.

- By failing to operate the Equipment in accordance with OSHA rules and ANSI standards.

- By failing to comply with all applicable laws, regulations and ordinances, including the occupational safety and health act and regulations (including but not limited to 29 C.F.R. 1926, subpart n – Cranes And Derricks In Construction and CFR 1910, 18- crawler locomotive and truck cranes), and all applicable ANSI standards, with respect to the operation of the equipment.

- By refusing to defend and indemnify MAXIM.

- By refusing to recognize MAXIM as an additional insured.

5

As a direct result and/or proximate cause of these breaches of the contract, MAXIM was wrongfully deprived of the benefits that it contracted and bargained for and has suffered damages.

**B.      Contribution and Indemnity**

MAXIM pleads, restates, and re-alleges the previous paragraphs as if set forth fully herein. MAXIM denies any liability in the underlying action, but if or any reason liability is assessed against MAXIM, MAXIM is entitled to defense and contribution under Texas statutory and common law from BERKEL for any all damages awarded to Plaintiff.

**C.      Attorney's Fees**

MAXIM pleads, restates, and re-alleges the previous paragraphs as if set forth fully herein. Pursuant to the Agreement and Chapter 38 of the Texas Civil Practice & Remedies Code, MAXIM is entitled to recover reasonable and necessary attorney's fees and other costs from BERKEL. As a proximate result of the wrongful acts and/or omissions of BERKEL, MAXIM has been required to retain the undersigned counsel to defend it from Plaintiffs' claims and to prepare, file, and prosecute these claims. Accordingly, MAXIM is entitled to recover reasonable attorney's fees, expenses, and costs incurred in connection with this case.

**WHEREFORE, PREMISES CONSIDERED,** Defendant, **MAXIM CRANE WORKS, L.P.,** prays that Plaintiffs take nothing by reason of this suit, and in the alternative, for indemnity and contribution from Defendant, **BERKEL & COMPANY CONTRACTORS, INC.,** for damages arising out of this action, and for such other and further relief, both general and special, at law and in equity, to which **MAXIM CRANE WORKS, L.P.,** may show itself to be justly entitled.

6

Respectfully submitted,

**J. DIAMOND AND ASSOCIATES, PLLC**


_____/S/ ANN E. KNIGHT_____

Ann E. Knight
    State Bar No. 00786026
1010 N. San Jacinto Street
Houston, Texas 77002
Telephone  (713) 227-6800
Facsimile  (713) 227-6801
ann@jdiamondandassociates.com


Attorney for Defendants:
**MAXIM CRANE WORKS, LP., and
JAMES DAVIDSON**

7

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was sent via facsimile, hand-delivered, via electronic transmission, and/or deposited in an official depository of the United States Postal Service, in a postage-paid wrapper, certified mail, return receipt requested, properly addressed to all known counsel of record on the 17th day of December, 2014.

*Via Fax: 713/222-3850*
Kurt B. Arnold
M. Paul Skrabanek
**ARNOLD & ITKIN**
6009 Memorial Drive
Houston, TX 77007

*Via Fax: (404) 949-8159*
Charles Lloyd Clay, Jr.
**CHUCK CLAY & ASSOCIATES, LLC.**
(Admitted *Pro Hac Vice*)
3280 Peachtree Road NE, Suite 2050
Atlanta, GA 30305

*Via Fax: 213/680-4470*
John Dwyer
**GORDON & REES, LLP**
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

*Via Fax: 713/961-3938*
Steven D. Selbe
**GORDON & REES, LLP**
1900 West Loop South, Suite 1000
Houston, TX 77027

*Via Fax: 713/418-2001*
Andrew T. McKinney IV
D. Douglas Mena
**LITCHFIELD CAVO LLP**
One Riverway, Suite 1000
Houston, TX 77056

*Via Fax: 281/331-8083*
Jerry B. Dozier
**LAW OFFICE OF JERRY B. DOZIER**
2318 Koster Road
Alvin, TX 77511

_____/s/ Ann E. Knight_____
Ann E. Knight

8

# EXHIBIT A

08/21/2013

# MAXIM CRANE WORKS, L.P.

840 Licking Pike, Wilder KY, 41076

P.O. #:
JDS #:

Revised April 22, 2013

## EQUIPMENT LEASE - BARE RENTAL AGREEMENT

THIS EQUIPMENT LEASE-BARE RENTAL AGREEMENT (this Lease) is entered into as of the __21st__ day of __August__, __2013__, by and between Maxim Crane Works, L.P., a Pennsylvania limited partnership ("Lessor") and the Lessee ("Lessee") identified as follows:

| Lessee Name: BERKEL & COMPANY CONTRACTORS, INC | | | Lessee is a: Corporation | | |
|---|---|---|---|---|---|
| Lessee Street Address: 2330 PRECINCT LINE ROAD | | | Lessee Billing Street Address (if different): | | |
| Lessee City: RICHMOND | State: TX | ZIP: 77406 | Lessee City: | State: | ZIP: |
| Local Contact Name: Bruce Smith | Position: | | Lessee Phone No.: (913) 422-6125 | Lessee Fax No.: (0) 0-0 | |

### LIST OF EQUIPMENT AND ACCESSORIES LEASED

| Equipment and Accessories Description/Model/Serial/Unit # | Replacement Value | Last Annual Inspection Date | Rental Rate | | |
|---|---|---|---|---|---|
| | | | Per Month | Per Week | Per Day |
| 1) Unit#3500, Link-Belt LS-248H5 Crawler Crane, S/N N5J9-1601 | $1,600,000.00 | | $17,500.00 | | |
| 2) | | | | | |
| Freight In/Out: IN $12,000.00 OUT $12,000.00 | | | | | |
| Add. Charges: Erection Supervisor $1,500.00/day | | | | | |
| Crane OT- $49.72/hour over 176 hours | | | | | |
| Other: | | | | | |

Lessor hereby leases to Lessee the equipment and accessories identified above (the "Equipment"), and Lessee agrees to lease and pay for such Equipment from Lessor, subject to the terms and conditions of this Lease, at the Rental Rate listed above, for a minimum of __5 months__ commencing on __08/26/2013__, which minimum rent shall be paid on demand. All Equipment shall remain in Lessee's possession and control at all times. The Equipment is to be located at: __West Memorial Place, Houston, TX__

THE EQUIPMENT IS RENTED TO LESSEE ON A **BARE RENTAL BASIS ONLY**, in its "As Is" condition. Lessee, at its own expense, shall transport, operate, inspect, maintain and repair the Equipment, and return the Equipment to Lessor in the same condition as when delivered to Lessee, ordinary wear and tear from normal use excepted. LESSEE IS RESPONSIBLE FOR ENSURING COMPLIANCE BY IT AND ITS EMPLOYEES/AGENTS, AND OF THE EQUIPMENT ITSELF, WITH ALL APPLICABLE LAWS, REGULATIONS AND ORDINANCES, INCLUDING THE OCCUPATIONAL SAFETY AND HEALTH ACT AND REGULATIONS (INCLUDING BUT NOT LIMITED TO 29 C.F.R. 1926, SUBPART N -- CRANES AND DERRICKS IN CONSTRUCTION AND CFR 1910, 18- CRAWLER LOCOMOTIVE AND TRUCK CRANES), and ALL APPLICABLE ANSI STANDARDS. Lessor shall have no responsibility of any kind for compliance with any such laws, regulations or ordinances during the period the Equipment is in Lessee's possession or control. See Operation, and Inspection, Maintenance and Record Keeping requirements in the Terms and Conditions. Maxim's Rental Equipment Service Policy is incorporated herein by reference.

This Lease is expressly subject to the Terms and Conditions on the following pages, which are incorporated by reference. Lessee is placed on notice that the terms and conditions on the following pages contain provisions that, among other things: require Lessee to indemnify others, including the Lessor; waive all jury trials; and eliminate all warranties.

Lessee acknowledges that it has read and understands this Lease in its entirety, including the Terms and Conditions on the following pages. This Lease is executed by a duly authorized representative of Lessor.

**BERKEL & COMPANY CONTRACTORS, INC**
(Lessee Name: Print or Type)

By: _____

Bruce A. Smith
(Print Name and Title)

_____
(Attest/Witness)

**Maxim Crane Works, L.P.**

By: _____

Bryan Carlisle, VP
(Print Name and Title)

840 Licking Pike, Wilder KY, 41076
(Lessor's Local Office Address)

Phone: 859-441-7400 Fax: 859-442-6202
(Lessor's Local Phone & Fax Number)

## Terms And Conditions

1. **Term:** Unless the parties hereto agree in writing otherwise, the Lease begins on the date the first piece of Equipment is shipped to Lessee, and ends on the date the last piece of Equipment is returned to Lessor.

2. **Operation:** Lessee shall not subject the Equipment to careless or needlessly rough usage and Lessee hereby agrees that the Equipment shall be operated, inspected, maintained and repaired only by experienced, competent persons under Lessee's supervision and control. The Equipment shall be operated in a safe and lawful manner at all times, and in accordance with the manufacturer's operators manual, OSHA rules and ANSI standards. Lessee's operation of the Equipment shall not exceed the manufacturer's safety requirements and rated load capacities. Equipment shall not be used when overloaded, while the operator is under the influence of drugs or alcohol in violation of state or federal law, or to carry persons or property for hire. If the Equipment is a crane, it is to be used as a lift crane ONLY. Demolition, dynamic compaction, pile driving, and clamming work require additional documentation and Equipment authorized only by Lessor.

3. **Compliance with Laws and Standards:** Lessee shall comply with and conform to all laws, regulations, ordinances, rules and orders of any governmental entity relating to the possession, transportation, use, maintenance and repair of the Equipment, including but not limited to, all OSHA laws and regulations. Lessee shall also comply with all applicable ANSI Standards. Lessee agrees to assume full responsibility for, and to the fullest extent allowed by applicable law, shall indemnify, defend and save Lessor harmless against actual or asserted violations thereof, including all losses, damages, expenses, fines, forfeitures, seizures, confiscations, and penalties arising out of any such laws and regulations.

4. **Title:** All Equipment shall remain the property of Lessor at all times. Any attachments, accessions, replacement parts, repairs or additions to the Equipment shall automatically become Lessor's property. Lessee shall keep the Equipment free from any and all liens, encumbrances and claims whatsoever, and shall not do or permit any act which may encumber or impair Lessor's title or rights in the Equipment. Upon Lessor's request, Lessee shall promptly execute and/or deliver to Lessor all documentation (such as estoppel certificates or a landlord waiver), as Lessor deems necessary or appropriate for the preservation, perfection or enforcement of Lessor's interests in the Equipment and Lessor's rights under this Agreement, and if Lessee fails to do so, Lessor may execute such documents on Lessee's behalf and in Lessee's name.

5. **Acceptance:** Lessee shall inspect the equipment immediately upon delivery. The equipment is deemed accepted unless within 24 hours of delivery the Lessee notifies Lessor in writing that the equipment is not serviceable, specifying the reason(s) therefore. Acceptance of the equipment constitutes Lessee's acknowledgement that it has inspected the equipment and it is in good, safe, serviceable condition, and fit for the use intended. If the equipment thereafter proves defective or unfit for use, Lessor's liabilities and responsibilities are defined in Paragraph 8 (warranties). Consistent with Paragraph 8, Lessor's sole responsibility is to repair or replace the equipment. At Lessee's option, Lessee's sole remedy is to return the Equipment and terminate the Lease. If Lessee elects to terminate the Lease, Lessee shall pay all rental and other amounts due prior to termination, which shall never be less than rent due for the minimum rental period, transportation charges, and any outstanding costs of repairs.

6. **Insurance:** Lessee, at its expense, shall take out, carry and maintain the insurance specified herein and in the insurance addendum attached hereto, in full force during the term of this Lease, and prior to taking delivery of the Equipment:

   a. Primary, non-contributing without regard to any "Other Insurance" clause, comprehensive general liability insurance, including contractual liability, protecting against liability for property damage and personal injury or death arising out of the possession, use, operation, maintenance and repair of the Equipment, with limits of liability not less than $2,000,000 each occurrence; and a $2,000,000 general aggregate;

   b. Automobile liability, protecting against liability for property damage and personal injury or death arising out of the possession, use, operation and transportation of the Equipment, with limits of liability not less than $ 1,000,000 each occurrence;

   c. Inland marine all risk coverage (physical damage insurance), with any overload, boom and jib exclusion deleted, for the full replacement value of the Equipment in the amount indicated on the face hereof;

   d. Umbrella liability with limits of liability of not less than $3,000,000; and

   e. Workers' compensation and employer's liability insurance, in accordance with all applicable state and federal laws, with limits of at least the statutory minimum or $1,000,000.00, whichever is greater.

All insurance required hereunder shall be deemed primary, non-contributory insurance of Lessor; shall name Lessor as an additional insured party (using ISO Form GC 20 10 or equivalent) and loss payee; shall be maintained with insurance companies with an A.M. Best rating of A- or higher and licensed and/or authorized to do business in the jurisdiction of the jobsite location; shall provide a waiver of subrogation with respect to the general liability, excess, inland marine all risk and auto coverage; and shall provide that the coverage thereunder may be altered or canceled only after not less than 30 days prior written notice to Lessor. Lessee is solely responsible for any insurance premiums and deductibles, and loss of usage of the Equipment. No "Other Insurance" provisions shall be applicable to Lessor or their underwriters by virtue of being named as an additional insured party and/or loss payee under the policy. Lessee shall furnish Lessor with certificate(s) of insurance evidencing such coverage. Lessor's policies shall be considered excess over all Lessee's policies. Indemnification obligations by Lessee under this Agreement are in addition to, and an alternative, to the insurance coverage required herein; and Lessee's maintenance of any such insurance coverage shall not operate to waive any such indemnification obligations. If Lessee fails to procure and maintain the required physical damage insurance coverage in accordance with this Section 6, Lessor shall have the right (but not the obligation), without notice and at Lessee's expense, to place such insurance coverage and/or enroll Lessee in any force-placed or waiver program maintained by Lessor from time to time, and Lessee shall pay the cost thereof upon the terms set forth in Lessor's invoice made in accordance with the provisions of Section 11 hereof. To the extent Lessee may perform under this Agreement without obtaining the required insurance coverage, such an occurrence shall not operate in any manner as a waiver of Lessor's right to maintain any breach of contract action against Lessee.

7. **INDEMNIFICATION:**

   a. TO THE FULLEST EXTENT PERMITTED BY TEXAS INSURANCE CODE CHAPTER 151 OR OTHER APPLICABLE LAW, AND EXCEPT AS SET OUT IN SUBPARAGRAPH (B) BELOW, LESSEE SHALL DEFEND, INDEMNIFY, AND HOLD HARMLESS THE LESSOR, ITS OFFICERS, DIRECTORS, SHAREHOLDERS, PARTNERS, MEMBERS, MANAGERS, EMPLOYEES, AFFILIATES, REPRESENTATIVES AND AGENTS ("INDEMNITEES") FROM ANY AND ALL ACTIONS, CAUSES OF ACTION, CLAIMS, SUITS, DEMANDS, INVESTIGATIONS, OBLIGATIONS, JUDGMENTS, LOSSES, COSTS, LIABILITIES, DAMAGES, FINES, PENALTIES AND EXPENSES, INCLUDING ATTORNEY FEES, WHICH ARE INCURRED BY, ACCRUED, ASSERTED, OR MADE AGAINST, OR RECOVERABLE FROM ANY OF THE INDEMNITEES ARISING FROM OR RELATING TO, DIRECTLY OR INDIRECTLY, THE LESSEE'S ACCEPTANCE, POSSESSION, TRANSPORT, USE, OPERATION, OR CONTROL OF THE EQUIPMENT, WHETHER OR NOT THE SAME ARISES FROM DAMAGE TO PROPERTY (REAL OR PERSONAL), INJURY OR DEATH TO PERSONS INCLUDING BUT NOT LIMITED TO LESSEE'S EMPLOYEES, AGENTS AND REPRESENTATIVES, FAILURE TO COMPLY WITH APPLICABLE LAWS, REGULATIONS AND ORDINANCES, EQUIPMENT CONDITION, LOSS OF USE OR SEIZURE OF EQUIPMENT, OR OTHERWISE, BUT ONLY TO THE EXTENT

CAUSED IN WHOLE OR IN PART BY ANY NEGLIGENT ACT OR OMISSION OR ANY INTENTIONAL ACT OF LESSEE OR ANYONE DIRECTLY OR INDIRECTLY EMPLOYED BY LESSEE OR ANYONE FOR WHOSE AC LESSEE MAY BE LIABLE. LESSEE'S OBLIGATION TO DEFEND, HOLD HARMLESS AND INDEMNIFY THE INDEMNITEES SHALL SURVIVE THE TERMINATION OF THIS RENTAL AGREEMENT. IT IS EXPRESSLY AGREED THAT THIS INDEMNIFICATION CLAUSE APPLIES TO BOTH THIRD-PARTY CLAIMS AND ALL CLAIMS BETWEEN LESSOR AND LESSEE.

b. NOTWITHSTANDING THE FOREGOING, TO THE FULLEST EXTENT PERMITTED BY TEXAS INSURANCE CODE CHAPTER 151 OR OTHER APPLICABLE LAW, LESSEE SHALL DEFEND, INDEMNIFY, AND HOLD HARMLESS THE LESSOR, ITS OFFICERS, DIRECTORS, SHAREHOLDERS, PARTNERS, MEMBERS, MANAGERS, EMPLOYEES, AFFILIATES, REPRESENTATIVES AND AGENTS ("INDEMNITEES") FROM AND AGAINST ALL CLAIMS, DAMAGES, LOSSES AND EXPENSES, INCLUDING, BUT NOT LIMITED TO, ATTORNEYS FEES ARISING OUT OF OR RESULTING FROM BODILY INJURY TO, OR SICKNESS, DISEASE OR DEATH OF, ANY EMPLOYEE, AGENT OR REPRESENTATIVE OF LESSEE OR ANY OF ITS SUBCONTRACTORS, REGARDLESS OF WHETHER SUCH CLAIM, DAMAGE, LOSS OR EXPENSE IS CAUSED, OR IS ALLEGED TO BE CAUSED, IN WHOLE OR IN PART BY THE NEGLIGENCE OF ANY INDEMNITEE. IT BEING THE EXPRESSED INTENT OF LESSOR AND LESSEE THAT IN SUCH EVENT THE LESSEE IS TO INDEMNIFY, HOLD HARMLESS AND DEFEND THE INDEMNITEES FROM THE CONSEQUENCES OF THEIR OWN NEGLIGENCE WHETHER IT IS OR IS ALLEGED TO BE THE SOLE OR CONCURRING CAUSE OF THE BODILY INJURY, SICKNESS, DISEASE OR DEATH OF LESSEE'S EMPLOYEE OR THE EMPLOYEE OF ANY OF ITS SUBCONTRACTORS. THE INDEMNIFICATION OBLIGATIONS UNDER THIS PARAGRAPH SHALL NOT BE LIMITED BY ANY LIMITATION ON THE AMOUNT OR TYPE OF DAMAGES, COMPENSATION OR BENEFITS PAYABLE BY OR FOR LESSEE UNDER WORKERS' COMPENATION ACTS, DISABILITY BENEFIT ACTS OR OTHER EMPLOYEE BENEFIT ACTS. LESSEE SHALL PROCURE LIABILITY INSURANCE COVERING ITS OBLIGATIONS UNDER THIS PARAGRAPH. LESSEE EXPRESSLY AGREES TO WAIVE ANY WORKERS COMPENSATION IMMUNITY IT MAY HAVE. OTHERWISE

8. NO WARRANTIES: LESSOR WARRANTS THAT THE EQUIPMENT WILL BE DELIVERED IN GOOD OPERATING CONDITION. LESSOR'S SOLE RESPONSIBILITY UNDER THE ABOVE WARRANTY SHALL BE, AT ITS OPTION, TO EITHER REPAIR OR SUITABLY REPLACE THE EQUIPMENT WITHIN A COMMERCIALLY REASONABLE TIME. THE ABOVE WARRANTY IS CONTINGENT UPON PROPER USE OF THE EQUIPMENT BY LESSEE AND SHALL NOT APPLY IF ADJUSTMENT, REPAIR OR REPLACEMENT IS REQUIRED BECAUSE OF ACCIDENT, MISUSE, IMPROPER HANDLING, OPERATION, MAINTENANCE, UNUSUAL PHYSICAL STRESS OR WEATHER CONDITIONS. THE FOREGOING IS THE EXCLUSIVE AND ENTIRE WARRANTY GIVEN IN CONNECTION WITH THE EQUIPMENT WHICH EQUIPMENT IS OTHERWISE BEING LEASED IN "AS IS" CONDITION. LESSOR IS NOT THE MANUFACTURER OF THE EQUIPMENT. LESSOR MAKES NO OTHER WARRANTY AND EXPRESSLY DISCLAIMS ANY AND ALL EXPRESS AND IMPLIED WARRANTIES AS TO THE EQUIPMENT, INCLUDING ANY WARRANTY OF MERCHANTABILITY, OR FITNESS FOR A PARTICULAR PURPOSE. LESSOR SHALL NOT BE LIABLE FOR ANY DELAYS, WORK STOPPAGES, LOSS OF USE OF EQUIPMENT, LOST TIME, INCONVENIENCE, LOST PROFITS OR ANY OTHER DIRECT OR INDIRECT INCIDENTAL, SPECIAL OR CONSEQUENTIAL DAMAGES RELATING TO THE POSSESSION, TRANSPORT, USE, OPERATION, CONTROL, MAINTENANCE AND/OR REPAIR OF THE EQUIPMENT, OR ANY LOSS DAMAGE OR INJURY RESULTING THEREFROM.

9. Rent Adjustments: All Rental Rates are based on an 8 hour day (daily rentals), 40 hour week (weekly rentals), or 176 hour month (monthly rentals), on a single day-shift operation. Lessee shall pay a proportionate hourly charge for all excess hours of usage. Lessee shall not be entitled to any abatement, deduction, reduction, set-off, counterclaim, recoupment or defense against rent for any reason, including any non-working time of the Equipment (except as provided otherwise herein or as the parties hereto may agree in writing).

10. Transportation: The Equipment will be loaded at Lessor's expense F.O.B. Lessor's yard or other shipping point designated by Lessor. Lessee, at its own expense and risk, shall do all other loading, unloading, installation, dismantling and transportation of the Equipment and shall pay all other freight, demurrage, storage, switching, drayage, rigging, trucking or other transportation charges (including but not limited to, fuel costs and taxes, mileage charges, weight and road use permits, highway taxes and any other IFTA taxes) from the time of loading by Lessor to and including the time of the Equipment's return to Lessor, unless the parties hereto agree otherwise in writing. If the Equipment is transported on its own wheels, Lessee, at its own expense and risk, shall provide a responsible person (at least 21 years of age with a valid drivers license) to accompany the Equipment to and from the shipping and receiving point. Equipment shall be returned to the destination designated by Lessor.

11. Payment: In addition to the payment of the Rental Rate specified on the front of this Lease, Lessee shall pay Lessor upon demand:

a. all taxes, levies, assessments, fees and other public charges against or upon any of the Equipment, including, but not limited to, personal property taxes, if applicable.

b. all fines, penalties, forfeitures, court costs, expenses and attorneys fees arising with respect to Lessee's possession, transportation, use, maintenance or repair of the Equipment, including but not limited to any parking, traffic or other violations assessed against the Equipment. Lessor or Lessee.

c. Lessor's costs and expenses, including reasonable attorney's fees (unless prohibited by law), incurred in enforcing this Lease, collecting any amounts due hereunder, or in repossessing the Equipment.

d. All cost of repairs and any related expenses.

Any payments more than 30 days past due hereunder shall bear interest at 1.5% per month (or the maximum rate allowed by law, which ever is higher). Any and all personal property, sales (unless collected by Lessor), use or other taxes which may be applicable to the Equipment by reason of this Agreement or to the rental payments payable hereunder shall be paid and reported by Lessee directly to the appropriate governmental agency charged with the assessment and collection of such taxes, and evidence of such payments shall be provided to Lessor upon its request.

12. Inspection, Maintenance, Repairs and Record Keeping Requirements: Lessee shall effect and bear the expense of all necessary inspections, maintenance, adjustments and repairs required by the Equipment operators manual and by law, and shall maintain the Equipment at Lessee's expense in good working condition (including making all repairs occasioned by any accident). Lessee shall be responsible for performing all normal basic service, including filters, lubricants, lubrications, protection against freezing and restoration of parts affected by abnormal exposure. While Lessor shall have the right to inspect the Equipment at any time during normal business hours, Lessee agrees that Lessor has no control over the operation, use, maintenance or repair of the Equipment when it is in Lessee's possession, supervision or control. Lessor shall have prompt access to the Equipment to properly maintain and repair same if Lessee fails to do so or upon Lessor's demand, all at Lessee's cost. Lessor retains the right to make or direct all repairs occasioned by any accident, all at Lessee's expense. All repairs must meet manufacturer specifications and equipment be certified by the manufacturer. OSHA regulations pertaining to the equipment require daily, monthly (or other periodic) and annual inspections. Lessee is solely responsible for conducting these inspections and for otherwise ensuring that the Equipment meets, and is operated in accordance with, OSHA requirements and ANSI Standards. Lessor also furnishes the following items with each crane to assist Lessee with OSHA compliance: crane logbook; operator's manual; fire extinguisher; and, load chart. Lessee will be charged a replacement fee equal to the cost to replace each missing item not returned with the Equipment. Lessee shall keep a written record of all inspections and shall be responsible for maintaining the crane log book while the Equipment is in Lessee's possession. Lessee shall be solely responsible for any liability imposed by Lessee's failure to maintain inspection records and crane log books while the Equipment is in Lessee's possession.

**13. Damage:** Lessee shall immediately not[ ] [Le]ssor of any damage to the Equipment. All repairs to t[ ] [E]quipment occasioned by damage during the term hereof shall be at the expense of Lesse[ ] [e]xcluding latent manufacturing defects). All repairs must b[ ] authorized by Lessor. All repairs must meet manufacturer specifications and the Equipment must be certified by the manufacturer. If Lessor determines that the returned Equipment has been subjected to damage, excess wear and tear or improper usage, Lessee agrees to pay Lessor upon demand all costs to restore or repair the Equipment, ordinary wear and tear from normal use excepted. Lessee exclusively bears risk of loss or damage to the Equipment, accidental or otherwise (excluding latent manufacturing defects) including but not limited to, fire, flood, theft, comprehensive losses, collision, rollover and Acts of God. Lessor and Lessee acknowledge and agree that the replacement value(s) stated on the face hereof shall be used to determine the value of the Equipment in order to establish the amount of the loss or damage thereto. Rental payments shall not be applied to loss or damage claims. The Lease term and rental period shall continue to run while the Equipment is being repaired and shall continue to run until all repairs are completed and paid.

**14. Accidents:** Lessee shall immediately notify Lessor of any accident involving the Equipment, including but not limited to, personal injury and/or property damage arising from the transportation, possession, use, maintenance or repair of the Equipment so that Lessor's ability to investigate the accident is not prejudiced. Lessor shall have immediate access to, and right of retrieval and repair of, the Equipment. Lessee shall not remove equipment or components from site. Lessor shall make or have the right to direct all repairs occasioned by any accident at Lessee's expense. All repairs shall meet manufacturer specifications and approval. Lessee shall immediately deliver any summons, pleading, notice or paper of any kind involving any claim, suit or proceeding relating to any accident or event involving the Equipment to Lessor. Lessee shall not aid or abet the assertion of any such claim, suit or proceeding and shall fully cooperate with Lessor in investigating and defending the same.

**15. Default:** Time is of the essence with respect to Lessee's performance of its obligations under this Agreement. Lessor may declare this Lease in default if any one or more of the following occurs: (a) Lessee fails to make any payment required hereunder when due; (b) Lessee fails to maintain in force at all times the required insurance; (c) Lessee fails to properly operate, maintain or repair the Equipment; (d) Lessee fails to observe or perform any other covenant or requirement of this Lease, which failure is not cured to Lessor's satisfaction within five (5) days after Lessor's notice to Lessee thereof; (e) Lessee attempts to sell, transfer or encumber the Equipment; (f) a voluntary or involuntary proceeding is instituted in any court of competent jurisdiction, seeking a decree or order (i) for relief in respect of Lessee under any applicable bankruptcy, insolvency, reorganization, assignment for the benefit of creditors, or other similar law, or (ii) for the appointment of a receiver, liquidator, assignee, custodian, trustee, sequestrator or similar official of Lessee or its property, or (iii) for the winding up or liquidation of the Lessee's affairs; (g) Lessee shall generally fail to pay its debts as they come due; and/or (h) Lessee, in Lessor's opinion, shall become financially insecure. At any time after such declaration, Lessor may enter, with or without legal process, any premises where the Equipment is located and take possession thereof. Lessee shall provide Lessor with unobstructed ingress and egress for such purpose. Furthermore, Lessee shall immediately pay to Lessor all amounts then due hereunder and all costs of removal and repossession of the Equipment. Lessor's remedies herein shall be cumulative and are in addition to all other remedies existing at law or in equity, including but not limited to, (a) terminate this Agreement and all rights of Lessee hereunder; (b) to declare the entire unpaid rent due (including any rent accruing during any minimum rental term) to be immediately due and payable; (c) to enter the premises where the Equipment is located, take possession of and remove the Equipment or render the Equipment inoperable, with or without legal process; (d) to demand that Lessee surrender and deliver up possession of the Equipment to Lessor; (e) with or without terminating this Agreement, to re-let the Equipment on such terms and conditions as are then available and otherwise acceptable to Lessor, and apply rent payments received, after deduction of all costs and expenses incurred by Lessor, to amounts due from Lessee under this Agreement; and (f) within Lessor's sole discretion, but without any obligation, to take such action or make any payment to remedy any default, including but not limited to, procuring any required insurance coverage, paying any fine, imposition, penalty, taxes or fees incurred to recover and/or release the Equipment from any forfeiture, seizure, confiscation or similar proceeding, or from any lien or other encumbrance imposed on the Equipment, all such payments of which shall be reimbursed by Lessee. In addition to the payment of any amounts due Lessor hereunder, Lessee shall be responsible for and shall reimburse Lessor for all costs and expenses incurred by Lessor in connection with the exercise of any rights and remedies hereunder, including all expenses incurred in the removal and transportation of the Equipment to Lessor's premises, any cleaning, service and/or repair of the Equipment, and in the enforcement of the terms and conditions of this Agreement or damages recoverable hereunder, including costs of collection and reasonable attorney's fees (including fees and expenses incurred in any bankruptcy proceeding or on appeal).

**16. No Assignment or Sub-Lease:** This Lease may not be assigned by Lessee and the Equipment may not be offered by Lessee for use or sublet to any other person or entity without Lessor's prior written consent (which consent may be withheld for any reason). Any consent by Lessor to an assignment or sub-lease shall not release Lessee from any obligations under this Lease.

**17. Jury Waiver:** UNLESS PROHIBITED BY LAW, LESSEE AND LESSOR EACH KNOWINGLY, UNCONDITIONALLY, AND IRREVOCABLY WAIVE TRIAL BY JURY WITH RESPECT TO ANY ACTION, CLAIM, SUIT OR PROCEEDING, WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE, IN RESPECT OF, ARISING OUT OF, RELATED TO, OR INCIDENTAL TO THE RELATIONSHIP ESTABLISHED BETWEEN THEM (OR AS TO ANY THIRD PARTIES) IN CONNECTION WITH THIS LEASE, ANY OTHER DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH, THE CONDUCT OF THE PARTIES, OR THE TRANSACTIONS RELATED HERETO.

**18. Full Agreement; Governing Law; Waiver; Severability:** This Lease, together with any addenda attached, constitute the full agreement of Lessor and Lessee. Any changes to this Lease must be evidenced in writing signed by Lessor and Lessee. This Lease shall be binding upon and shall inure to the benefit of the parties hereto, their respective successors and permitted assigns. The law of the state where the Equipment is delivered, assembled, inspected and operated shall control this Lease. Lessee agrees that exclusive jurisdiction to bring and maintain any action or proceeding arising out of or related to this Agreement shall be brought in the county of the state, or in the United States District Court where the Equipment is delivered, assembled, inspected and operated as set forth herein. Headings are provided for convenience only, not for interpretation of this Lease. Lessor and Lessee are independent contractors, and neither Lessee nor any operator of the Equipment shall be deemed to be the agent, servant or employee of Lessor for any reason or purpose. No failure of Lessor to enforce performance of any terms or covenants, or to exercise or delay in exercising any right, under this Lease shall operate as a waiver thereof; nor shall any single or partial exercise of any right hereunder preclude any other or further exercise thereof or the exercise of any other right. If any provision of this Lease is held to be invalid or illegal by a Court of competent jurisdiction, the invalid or illegal term will be deemed excluded from this Lease and will not invalidate the remaining terms of this Lease.

**19. Lessor's Right To Effect Compliance:** If Lessee fails to comply with any provision of this Agreement including, but not limited to, the obligation to pay or satisfy any taxes, liens, insurance premiums or other charges, Lessor shall have the right, but shall not be obligated, to effect such compliance in whole or in part, and all costs and expenses shall be paid by Lessee immediately upon demand by Lessor. Lessor's effecting such compliance shall not constitute a waiver of any default by Lessee hereunder.

**20. Lifting Lugs, Rigging And Apparatus:** Lessee hereby assumes all responsibility and liability to ensure the adequacy of design and strength of any lifting lug or device embedded in or attached to any object, and any and all rigging or lifting apparatus (even if such rigging or lifting apparatus is supplied by Lessor to Lessee), and Lessee will indemnify and hold Lessor harmless from any and all actions, causes of action, claims, suits, demands, investigations, obligations, judgments, losses, costs, liabilities, damages, fines, penalties and expenses, including attorney's fees arising or resulting from any failures or defects therefrom.

**21. Assembly and Disassembly:** The parties agree that any and all Equipment mobilization and/or demobilization costs including but not limited to, assembly, erection, reconfiguration, disassembly or other movement of the Equipment, were quoted by Lessor based on "Standard Activity". Standard Activity means mobilization and demobilization during the following minimum weather conditions, and otherwise absent a force majeure, (i) ambient temperature in excess of twenty (20) degrees Fahrenheit; (ii) sustained winds (including gusts) less than twenty (20) miles per hour; (iii) no precipitation

in the form of snow or ice; or (iv) minor precipitation in the form of rain (less than one (1) inch per twenty-four (24) hour period. Rates for Standard Activity apply eight (8) hours per day Monday through Friday (excluding holidays). Rates for mobilization and/or demobilization which do not fall within Standard Activity (the "Non-Standard Rates") shall be provided to Lessee prior to any such costs being incurred and the parties hereto shall cooperate in good faith to schedule such mobilization and/or demobilization on a cost efficient basis.

# REI .'AL EQUIPMENT SERVICE POL .Y

The United State Department of Labor ("DOL") and the Occupational Health and Safety Administration ("OSHA") provide that anyone operating a crane be required to perform a safety check of the equipment prior to each shift of operation. These pre-operational inspections require all fluid levels to be checked prior to each shift of operation and all operational safety equipment to be in operating condition prior to equipment use. Also, OSHA requires written documentation of these and other inspections to remain in compliance with the laws. Maxim Crane Works, L.P. ("Maxim") provides a log book in every crane to assist you in complying with the government regulations. Maxim will track all reported machine malfunctions with the help of your assigned competent equipment operator. Maxim provides annual inspections at no additional charge to help maintain compliance with OSHA laws and regulations.

As a customer of Maxim renting equipment on a bare-rental basis, you are responsible for the daily, weekly and monthly inspection, as well as maintenance and repair of the Maxim equipment in your possession. To be in compliance with OSHA regulations, you must perform the following maintenance and operating procedures:

- Ensure that the equipment is operated only by competent persons trained to operate the specific make and model of the crane provided.

- Coordinate all repairs with the Maxim Service Department to ensure that the equipment is in a safe working condition and complies with OSHA and other state and local regulations.

- Complete the DAILY CRANE LOG:
Ensure that all operators accurately complete the DAILY CRANE LOG located in the document compartment of the crane. Instructions on completing the DAILY CRANE LOG are located on the inside cover. ENTRIES INTO THE DAILY CRANE LOG ARE MANDATORY AS PRESCRIBED BY OCCUPATIONAL SAFETY AND HEALTH ACT SECTIONS 1910 AND 1926.
To help you stay in compliance with the laws:

- All deficiencies noted on Forms C4 and C5, maintained on the DAILY CRANE LOG shall be faxed to the MAXIM Service Manager listed below immediately after deficiencies are noted. The Service Manager will track the completion of each repair on a Maxim work-order. The requestor shall be notified when the necessary repairs have been completed.

- Completion of DAILY LUBRICATION, INSPECTION AND MAINTENANCE:
Document all inspection, lubrication and maintenance of the equipment prior to use (on a daily, weekly and monthly basis) as specified by the equipment manufacturer on the DAILY INSPECTION LOG (FORM C3).

- A summary of required inspections, maintenance and lubrication procedures are detailed in the equipment operator's manual.

Customers are responsible for returning the equipment in the same condition as when delivered, ordinary wear and tear accepted. Any damage to the equipment resulting from failure to maintain or care for the equipment, abuse of the equipment, operation of the equipment under abnormal or unreasonable conditions or any other cause, accidental or otherwise is the customer's responsibility (excluding a latent manufacturer's defect or Maxim negligence).

MAXIM SERIVCE: The Maxim Service Department will perform all Long Term Preventative Maintenance ("LTPM") pursuant to a two-hundred and fifty (250) engine hour cycle or every three months (whichever is first to occur). LTPM includes, but is not limited to, a complete inspection of the crane/equipment and full oil and lube service pursuant to manufacturer specifications. Maxim will charge you for all such LTPM service work and any resulting repairs except in those cases where the condition(s) necessitating the repair work results from ordinary wear and tear to the equipment (or a latent manufacturer's defect or Maxim negligence). The charge to you for such service and repair work will be for: (i) labor (at the hourly service charge in effect and based on portal-to-portal determination); (ii) transportation costs; and (iii) parts and materials.

Maxim Service Department site labor rate: _____

Fixed Portal to Portal charge: _____

Service Option:

☐ 1. MAXIM SERVICE OPTION: I elect to have Maxim perform LTPM service as described above.

☐ 2. CUSTOMER SERVICE OPTION: I elect to self-perform LTPM in accordance with manufacturer specification.
    a. Upon Maxim's request customer is required to give Maxim access to inspect the equipment and maintenance records. If customer does not service crane in accordance with manufactures prescribed service intervals, Maxim will service the crane and charge the customer pursuant to Option 1

Maxim will respond within 24 hours for emergency repairs. For service performed other than during normal working hours, customers will be responsible for the difference between the straight time rates and the applicable overtime rates that are in effect at the time of service.

Upon arrival at a job site, at a time and date predetermined by the Maxim Service Manager and the Customer Site Supervisor, Maxim's personnel shall have access to the equipment to begin operations within one (1) hour of arrival. Excessive time is chargeable item to customer's account.

Upon termination of the rental, the equipment will be returned to Maxim's yard for inspection.
Should there be any damages for which the customer is responsible; Maxim will invoice you for these damages under the same purchase order as the rental.

Maxim will notify you of any charges in a timely manner. Should you have any questions concerning the charges, please contact our Service Department.

Maxim Service Manager: _____

Office number: _____

FAX NUMBER: _____

Cell Phone Number: _____

Maxim assumes no responsibility for labor back charges due to downtime. However, every effort will be made to minimize downtime.

## EQUAL OPPORTUNITY EMPLOYER

## INSURANCE REQUIREMENTS

1. Lessee, at its expense, shall take out, carry and maintain the insurance specified herein and in the insurance addendum attached hereto, in full force during the term of this Lease, and prior to taking delivery of the Equipment:

   a. Primary, non-contributing, without regard to any "Other Insurance" clause, comprehensive general liability insurance, including contractual liability, protecting against liability for property damage and personal injury or death arising out of the possession, use, operation, maintenance and repair of the Equipment, with limits of liability not less than $2,000,000 each occurrence; and a $2,000,000 general aggregate (a non-contributory excess/umbrella policy may be utilized to meet minimum per occurrence coverage and aggregate limits);

   b. Automobile liability, protecting against liability for property damage and personal injury or death arising out of the possession, use, operation and transportation of the Equipment, with limits of liability not less than $ 1,000,000 each occurrence;

   c. Inland marine all risk coverage (physical damage insurance), with any overload, boom and jib exclusion deleted, for the full replacement value of the Equipment in the amount indicated on the face hereof;

   d. Umbrella liability with limits of liability of not less than $3,000,000; and

   e. Workers' compensation and employer's liability insurance, in accordance with all applicable state and federal laws, with limits of at least the statutory minimum or $1,000,000.00, whichever is greater.

2. All insurance required hereunder shall be deemed primary, non-contributing, without regard to any "other insurance" clause, insurance of Lessor; shall name Lessor as an additional insured party (using ISO Form GC 20 10 or equivalent) and loss payee, and shall be maintained with insurance companies with an A.M. Best rating of A- or higher and licensed or authorized to do business in the jurisdiction of the jobsite location

3. All insurance required hereunder shall be maintained with responsible insurance companies of recognized standing.

4. Waiver of subrogation with respect to the general liability, excess, inland marine all risk and auto coverage required.

5. Coverage may not be altered or canceled without 30 days prior written notice to Lessor.

6. Lessee is solely responsible for any insurance premiums and deductibles, and loss of usage of the Equipment.

7. No "Other Insurance" provisions shall be applicable to Lessor or their underwriters by virtue of being named as an additional insured party and/or loss payee under the policy.

8. Lessee shall furnish Lessor with certificate(s) of insurance evidencing such coverage.

9. Lessor's policies shall be considered excess over all Lessee's policies.

10. Equipment to be covered:

    a. Manufacture/Model/Serial Number/Unit Number:

    b. Value:

Please fax and mail your certificate of insurance to the address below:

| | |
|---|---|
| Address: | 840 Licking Pike, Wilder KY, 41076 |
| Phone: | 859-441-7400 |
| Fax: | 859-442-6202 |

Hidden:
1530003 - Links the embedded view with it's parent

## ∴ & COMPANY CONTRACTORS, INC.

⌐recinct Line Road
⌐mond, Texas 77406
⌐NE: 281-344-1090
∷ 281-344-1099

| | | | | PURCHASE ORDER NO.: 13-210.02 |
| BERKEL JOB NO.: | 13-210 |
| DATE: | 8/21/2013 |
| Page 1 OF 2 |

| Maxim Crane Works, L.P. | SHIP TO: West Memorial Place |
| ⌐N: Buddy Knowles | General Cont: Skanska |
| ⌐NE: 713-248-2172 | C/O: Berkel & Company Contractors, Inc. |
| ⌐: 281-882-9162 | Site Contact: Chris Miller 925-766-7583 |
| ⌐RESS: 305 20th Street | ADDRESS: 15375 Memorial Drive |

| ⌐: | STATE: | ZIP: | CITY | STATE: | ZIP |
| --- | --- | --- | --- | --- | --- |
| Texas City | Texas | 77592 | Houston | Texas | 77079 |

| ⌐ | DATE REQUIRED: | TAX EXEMPT: | No | TERMS: |
| --- | --- | --- | --- | --- |
| crawler crane | 8/26/2013 | TWIC CARD: | N/A | |

| | AS REQUIRED QUANTITY OR SERVICE (IF CHECKED, THIS IS A REQUIREMENTS ORDER) |
| X | SPECIFIC QUANTITY OR SERVICE |
| | READY MIX - NO ADDITIVES OR AIR ENTRAINMENT |

**MIX PROPORTIONS MUST BE ON DELIVERY TICKET**

| PLEASE SUPPLY ITEMS BELOW | PRICE | UNIT |
| --- | --- | --- |
| ⌐n conventional crawler with 190' of lattice boom | $17,500.00 | month |
| ⌐d in | $12,000.00 | ls |
| ⌐l out | $12,000.00 | ls |
| ⌐on Supervisor | $1,600.00 | day |
| | | |
| | | |
| | | |
| | | |
| | | |

⌐dinate deliveries with Chris Miller 925-766-7583

*PRICES AND SPECIFICATIONS AS CONFIRMED ON YOUR PROPOSAL #: 00232273     DATED: 8/20/2013*

Drivers & Personnel coming onsite must comply with all safety rules and use all required Personal Protective Equipment.

⌐ces above are valid for duration of the project.

SE NOTIFY US IMMEDIATELY IF YOU ARE UNABLE TO SHIP COMPLETE ORDER BY DATE SPECIFIED.

PURCHASE APPROVAL:

cc: Job File, K.C., Superintendent, Accounting

⌐ces, bills, statements, packages or other documents or shipments must contain the purchase order number printed on the front page of this Purchase ⌐dditionally, three copies of the Seller's invoice must accompany the original bill of lading.

⌐Seller is specifically instructed otherwise all invoices, bills and statements must be submitted to the following address:
el & Company Contractors, Inc., 2330 Precinct Line Road, Richmond, TX 77406

⌐chase Order, when accepted by Seller, shall constitute a valid and binding contract. ADDITIONAL TERMS AND CONDITIONS ON THE REVERSE ⌐EREOF ARE A MATERIAL PART OF THIS CONTRACT.

# EXHIBIT B

Filed for Record
6/4/2015 4:34:32 PM
Rhonda Barchak, District Clerk
Brazoria County, Texas
75576-CV
Kelley Hanson, Deputy

CAUSE NO. 75576-CV

| | | |
|---|---|---|
| TYLER LEE AND LEIGH ANN LEE INDIVIDUALLY AND AS NEXT FRIEND OF SYDNEY ROSE LEE, MINOR | § § § § | IN THE DISTRICT COURT OF |
| *Plaintiff* | § § | |
| VS. | § § | BRAZORIA COUNTY, TEXAS |
| BERKEL & COMPANY CONTRACTORS, INC., MAXIM CRANE WORKS, L.P., DIXON EQUIPMENT SERVICES, INC., FLOYD DIXON, ISAAC DOLAN, JAMES DAVIDSON ANDREW BENNETT, AND LINK-BELT CONSTRUCTION EQUIPMENT CO. | § § § § § § § § | |
| *Defendants* | § | 149TH JUDICIAL DISTRICT |

## MOTION FOR ENTRY OF JUDGMENT AS TO MAXIM'S CROSS ACTION AGAINST BERKEL

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, **MAXIM CRANE WORKS, L.P.** a Defendant in the above numbered and referenced matter (hereinafter "MAXIM") and files this *Motion for Entry of Judgment as to Maxim's Cross Action Against Berkel*, and in support thereof would respectfully show as follows:

I.

**MAXIM** filed a cross action against Defendant, **BERKEL & COMPANY CONTRACTORS, INC.** (hereinafter "BERKEL"), on or about June 12, 2014, for breach of contract and for recovery of its defense costs, and the same was subsequently amended on December 17, 2014. *Attached hereto as Exhibit A, and incorporated herein as if fully set forth below.* MAXIM'S cross action was based upon the Bare Rental Agreement *(which is incorporated herein by reference as if fully set forth below)* between it and BERKEL, and the

same was admitted into evidence during the trial of the case as MAXIM Defense Exhibit 17. *See Exhibit B, herein.*

Whether MAXIM was entitled to reimbursement of its defense costs had previously been submitted to the court for consideration via BERKEL'S Motion for Summary Judgment. *Attached hereto as Exhibit E, and incorporated herein as if fully set forth below.* MAXIM filed responsive pleadings to BERKEL'S Motion for Summary Judgment *(attached hereto as Exhibit F, and incorporated herein as if fully set forth below)* and BERKEL, in turn, filed a Reply to same. *Attached hereto as Exhibit G, and incorporated herein as if fully set forth below.* However, the Court issued an Order denying BERKEL'S Motion on February 24, 2015. See Exhibit H, herein.

On April 20th, 2015, the Court called this case for trial. All parties appeared in person and through their respective attorneys, and announced ready for trial. The Court summoned a jury panel and a qualified jury of twelve (plus two alternates) was sworn to be the jury and that jury, together with the Court, proceeded to hear the evidence.

At the Jury Charge Conference, MAXIM requested that a Breach of Contract question *(See Exhibit C, herein)* be submitted to the jury for consideration. Although evidence of BERKEL'S breach of the Bare Rental Agreement was submitted by all parties during the trial of the case via documentary evidence, live testimony, and deposition testimony, and the Bare Rental Agreement itself was entered into evidence during the trial as well, BERKEL objected to the submission of a Breach of Contract question to the Jury in the court's Jury Charge; BERKEL argued, and the Court concluded, that MAXIM'S demand for reimbursement of its defense costs should not be couched in terms of breach of contract, but instead was a question of law to be decided by the court pursuant to Chapter 151 of the Texas Insurance Code (the

Texas Anti-Indemnity Act); which was already previously briefed by the parties in the above-referenced Motion for Summary Judgment pleadings filed by the parties. Put simply, BERKEL is of the opinion that if **MAXIM** was found any percentage at fault by the jury, then it is not entitled to reimbursement under the Bare Rental Agreement of any of its attorney's fees; **MAXIM,** on the other hand, is of the opinion that it is entitled to a reimbursement of its attorney's fees under the Bare Rental Agreement on a pro-rata percentage consistent with the Jury's Verdict.

Accordingly, the Court sustained BERKEL'S objection to MAXIM'S proposed Breach of Contract Jury Charge question; and therefore, a Breach of Contract question was not submitted to the jury in the Court's Charge.

With respect to the presentation of MAXIM'S defense fees, costs and expenses, both BERKEL and MAXIM agreed that such evidence should be submitted to the Court for consideration outside the presence of the jury; the same was submitted to the judge via sworn testimony of Jeffrey Diamond on May 6th, 2015.

After the evidence was submitted, the jury retired to consider the same and, thereafter, returned its verdict into open court. The jury returned a verdict that found both defendants negligent. In the Charge submitted to the jury by the court, MAXIM was assessed 10% responsible, and BERKEL was assessed 90% responsible, in the negligence/liability questions. *See Exhibit D, herein.*

Maxim has submitted two proposed Judgments for the Court to consider—one in favor of Maxim, and one in favor of Berkel (attached as Exhibits I and J, respectively). It is clear that the aggrieved party on the reimbursement of attorney's fees issue will appeal the same;

therefore, MAXIM requests that the Court enter a Judgment on the reimbursement of attorney's fees issue so that the same may be dealt with by the appellate courts.

## II. PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, MAXIM CRANE WORKS, L.P., a Defendant herein, moves the court herein to enter a Final Judgment in accordance with one of the proposed Judgments attached hereto as Exhibit I or J, in the above numbered and captioned matter; and for such other and further relief, both general and special, at law and in equity to which MAXIM may otherwise be justly entitled.

Respectfully submitted,

**J. DIAMOND & ASSOCIATES, PLLC**

_/s/ Ann E. Knight_

Jeffrey L. Diamond
    State Bar No. 05802500
Ann E. Knight
    State Bar No. 00786026
1010 N. San Jacinto Street
Houston, Texas 77002
Tel: (713) 227-6800
Fax: (713) 227-6801
jeff@jdiamondandassociates.com
ann@jdiamondandassociates.com

Attorneys for Defendants:
**Maxim Crane Works, L.P., and James Davidson**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the forgoing instrument was served upon all known counsel of record via facsimile, hand delivery, and/or certified mail, return receipt requested, on the 4th day of June, 2015.

Kurt B. Arnold
**ARNOLD & ITKIN**
6009 Memorial Drive
Houston, TX 77007

Andrew T. McKinney IV
D. Douglas Mena
**LITCHFIELD CAVO LLP**
One Riverway, Suite 1000
Houston, TX 77056

Charles Lloyd Clay, Jr.
**CHUCK CLAY & ASSOCIATES, LLC.**
3280 Peachtree Road NE, Suite 2050
Atlanta, GA 30305

Jerry B. Dozier
**LAW OFFICE OF JERRY B. DOZIER**
2318 Koster Road
Alvin, TX 77511

John Dwyer
**GORDON & REES, LLP**
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

Russell S. Post
**Beck Redden LLP**
1221 McKinney, Suite 4500
Houston, TX 77010

Steven D. Selbe
**GORDON & REES, LLP**
1900 West Loop South, Suite 1000
Houston, TX 77027

Justin Gilbert
**GILBERT & FUREY**
222 North Velasco Street
Angleton, TX 77515

/S/ Ann E. Knight
Ann E. Knight

# Exhibit A

Filed for Record
12/17/2014 10:32:41 AM
Rhonda Barchak, District Clerk
Brazoria County, Texas
75576-CV
Kandice Haseloff, Deputy

CAUSE NO. 75576-CV

| | | |
|---|---|---|
| TYLER LEE AND LEIGH ANN LEE INDIVIDUALLY AND AS NEXT FRIEND OF SYDNEY ROSE LEE, MINOR | § § § § | IN THE DISTRICT COURT OF |
| *Plaintiff* | § § | |
| VS. | § § | BRAZORIA COUNTY, TEXAS |
| BERKEL & COMPANY CONTRACTORS, INC., MAXIM CRANE WORKS, L.P., DIXON EQUIPMENT SERVICES, INC., FLOYD DIXON, ISAAC DOLAN, JAMES DAVIDSON ANDREW BENNETT, AND LINK-BELT CONSTRUCTION EQUIPMENT CO. | § § § § § § § § | |
| *Defendants* | § | 149TH JUDICIAL DISTRICT |

## MAXIM CRANE WORKS, L.P.'s FIRST AMENDED CROSS-CLAIM AGAINST BERKEL & COMPANY CONTRACTORS, INC.

COMES NOW, Defendants, **MAXIM CRANE WORKS, L.P.'s** (hereinafter referred to as "MAXIM") and files this, its First Amended Cross-Claim against **BERKEL & COMPANY CONTRACTORS, INC.,** (hereinafter referred to as "BERKEL") and would respectfully show the Court as follows:

I.

BERKEL has appeared in this action and is before the Court for all purposes.

## II. FACTS

This lawsuit arises out of a personal injury which was sustained by Plaintiff on September 30, 2013, as a result of being struck by a piece of equipment at a jobsite located at 15375 Memorial Drive, Houston, Harris County, Texas. At the time of the incident, Plaintiff was employed by Skanska USA Building Inc., the general contractor, who had retained BERKEL, a subcontractor, to provide construction services, including the installation of Auger Cast Piles. In order to provide the construction services at the jobsite, BERKEL rented a Link-Belt crawler

crane form MAXIM pursuant to a Bare Rental Agreement (hereinafter referred to as "Agreement"). At the time of the incident, Berkel was operating the crane to perform deep foundation drilling and installation of the piles when the boom collapsed and the auger and leads broke.

The Bare Rental Agreement provides in part as follows:

THE EQUIPMENT IS RENTED TO LESSEE ON A **BARE RENTAL BASIS ONLY**, In Its "As Is" condition. Lessee, at its expense, shall transport, operate, inspect, maintain and repair the Equipment, and return the Equipment to Lessor in the same condition as when delivered to Lessee, ordinary wear and tear from normal use excepted. LESSEE IS RESPONSIBLE FOR ENSURING COMPLIANCE BY IT AND ITS EMPLOYEES/AGENTS, AND OF THE EQUIPMENT ITSELF, WITH ALL APPLICABLE LAWS, REGULATIONS AND ORDINANCES, INCLUDING THE OCCUPATIONAL SAFETY AND HEALTH ACT AND REGULATIONS (INCLUDING BUT NOT LIMITED TO 29 C.F.R. 1926, SUBPART N – CRANES AND DERRICKS IN CONSTRUCTION AND CFR 1910, 18- CRAWLER LOCOMOTIVE AND TRUCK CRANES), and ALL APPLICABLE ANSI STANDARDS, Lessor shall have no responsibility of any kind for compliance with any such laws, regulations or ordinances during the period the Equipment is in Lessee's possession or control.

### Terms and Conditions

2. **Operation:** Lessee shall not subject the Equipment to careless or needlessly rough usage and Lessee hereby agrees that the Equipment shall be operated, inspected, maintained and repaired only by experienced, competent persons under Lessee's supervision and control. The Equipment shall be operated in a safe and lawful manner at all times, and in accordance with the manufacturer's operators manual, OSHA rules and ANSI standards. Lessee's operation of the Equipment shall not exceed the manufacturer's safety requirements and rated load capacities. Equipment shall not be used when overloaded.....

6. **Insurance:** Lessee, at its expense, shall take out, carry and maintain the insurance specified herein and in the insurance addendum attached hereto, in full force during the term of this Lease, and prior to taking delivery of the Equipment:

a. Primary, non-contributing without regard to any "Other insurance" clause, comprehensive general liability insurance, including contractual liability, protecting against liability for property damage and personal injury or death arising out of the possession, use, operation, maintenance and repair of the Equipment, with limits of liability not less than $2,000,000 general aggregate;

2

All Insurance required hereunder shall be deemed primary, non-contributory insurance of Lessor; shall name Lessor as an additional insured party ....... and loss payee;....

7.    INDEMNIFICATION:
a.    TO THE FULLUES EXTENT PERMITTED BY TEXAS INSURANCE CODE CHAPTER 161 OR OTHER APPLICABLE LAW, AND EXCEPT AS SET OUT IN SUBPARAGRAPH (B) BELOW, LESSEE SHALL DEFEND, INDEMNIF, AND HOLD HARMLESS THE LESSOR, ITS OFFICERS, DIRECTORS, SHAREHOLDERS, PARTNERS, MEMBERS, MANAGERS, EMPLOYEES AFFILITES, REPRSENTATIVES AND AGENTS ("INDEMNITEES") FROM ANY AND ALL ACTIONS, CAUSES OF ACTION, CLAIMS, SUITS, DEMANDS, INVESTIGATIONS, OBLIGATIONS, JUDGMENTS, LOSSES, COSTS, LIABILITIES, DAMAGES, FINES, PENALTIES AND EXPENSES, INCLUDING ATTORNEY FEES, WHICH ARE INCURRED BY, ACCRUED, ASSERTED, OR MADE AGAINS,T OR RECOVERAGLE FROM ANY OF THE INDEMNITEES ARISING FROM OR RELATING TO, DIRECTLY OR INDIRECTLY, THE LESSES'S ACCEPTANCE, POSSESSION, TRANSPORT, USE, OPERATION, OR CONTROL OF THE EQUIPMENT, WHETHER OR NOT THE SAME ARISES FROM DAMAGE TO PROEPRTY (REAL OR PERSONAL), INJURY OR DEATH TO PERSONS INCLUDING BUT NOT LIMITED TO LESSEE'S EMPLOYEES, AGETNS AND REPRESNTATIVES, FAILURE TO COMPLY WITH APPLICABLE LAWS, REGUALTIONS AND ORDINANCES, EQUIPMNT CONDITION, LOSS OF USE OR SEIZURE OF EQUIPMENT, OR OTHERWISE, BUT ONLY TO THE EXTENT CAUSED IN WHILE OR IN PART BY ANY NEGLIGENT ACT OR OMISSION OR ANY INTENTIONAL ACT OF LESSEE OR ANYONE DIRECLTY OR INDIRECTLY EMPLOYED BY LESSEE OR ANYONE FOR WHOSE LESSEE MAY BE LIABLE. LESSEE'S OBLIGATION TO DEFEND, HOLD HARMLESS AND INDEMNITY THE INDEMNITEES SHALL SURVIVE THE TERMINATION OF THIS RENTAL AGREEMENT. IT IS EXPRESSLY AGREED THAT THIS INDEMNIFICATION CLAUSE APPLIES TO BOTH THIRD-PARTY CLAIMS AND ALL CLAIMS BETWEEN LESSOR AND LESSEE.

b.    NOTWITHSTANDING THE FOREGOING, TO THE FULLEST EXTENT PERMITTED BY TEXAS INSURANCE CODE CHAPTER 151 OR OTHER APPLICABLE LAW, LESSEE SHALL DEFEND, INDEMNITY.A DN HOLD HARMLESS THE LESSOR, ITS OFFICERS, DIRECTORS, SHAREHOLDERS, PARTNERS, MEMBERS, MANAGERS, EMPLOYEES, AFFILIATES, REPRESENTATIVES AND AGENTS ("INDEMNITEES") FROM AND AGAINST ALL CLAIMS, DAMAGES, LOSSES AND EXPENSES, INCLUDING BUT NOT LIMITED TO

3

ATTORNEYS FEES ARISING OUT OF OR RESULTING FROM BODILY INJURY TO, OR SICKNESS, DIESEASE OR DEATH OF ANY EMPLOYEE, AGENT OR REPRESENTATIVE OF LESSES OR ANY OF ITS SUBCONTRACTORS, REGARLESS OF WHETHER SUCH CLAIM, DAMAGE, LOSS OR EXPENSE IS CAUSED, OR IS ALLEGED OT BE CAUSED, IN WHOLE OR IN PART BY THE NEGLIGENCE OF ANY INDEMNITEE, IT BEING THE EXPRESSED INTENT OF LESSOR AND LESSEE THAT IN SUCH EVENT THE LESSEE IS TO INDEMNIFY, HOLD HARMLESS AND DEFEND THE INDEMNITIEES FROM THE CONSEQUENCES OF THEIR OWN NEGLIGENCE WHETHER IT IS OR IS ALLOWED TO BE THE SOLE OR CONCURRING CUASE OF THE BODILY INJURY, SICKNESS, DISEASE OR DEATH OF LESSEE'S EMPLOYEE OR THE EMPLOYEE OF AN OF ITS SUBCONTRACTOR. THE INDEMNIFICATION OBLIGATIONS UNDER THIS PARAGRAPH SHALL NOT BE LIMITED BY ANY LIMITATION ON THE AMOUNT OR TYPE OF DAMAGES, COMPESNATION OR BENEFITS PAYABLE BY OR FOR LESSEE UDNER WORKERS' COMPESNATION ACTS, DISABILTY BENEFIT ACTS OR OTHER EMPLOYEE BENEFIT ACTS. LESSEE SHALL PROCURE LIABILITY INSURNACE COVERING ITS OBLIGATIOSN UNDER THIS PARAGRAPH. LESSEE EXPRESSLY AGREES TO WAIVE ANY WORKERS COMPENSATION IMMUNITY IT MAY OTHERWISE HAVE.

See Exhibit "A" attached hereto – the Bare Rental Agreement between Maxim and Berkel

## III. CROSS-CLAIMS

### A. Breach of Contract

BERKEL entered into an Agreement with MAXIM for the rental of the Link-Belt crane at the Memorial jobsite. Plaintiff has named MAXIM as a Defendant in the underlying lawsuit from whom he is seeking to recover damages for his alleged personal injuries as set out in his live Petition.

The Agreement provided that, BERKEL shall operate the crane in a safe and lawful manner at all times and in accordance with the manufacturer's operator's manual, all applicable laws, regulations, ordinances rules and standards and that its operation of the crane not exceed the manufacturer's safety requirements and rated load capacities. Additionally, pursuant to the

4

Agreement, BERKEL agreed to defend, hold harmless and indemnify MAXIM and maintain certain insurance under which MAXIM is to be named as an additional insured.

The Bare Rental Agreement was valid and enforceable and MAXIM complied with the terms of the Bare Rental Agreement, including any conditions precedent.

BERKEL has breached the Agreement and such breaches include but are not limited to the following:

- By failing to operate the Equipment in a safe and lawful manner at all times.

- By failing to operate the Equipment in accordance with the manufacturer's operators manual.

- By operating the Equipment in excess of the manufacturer's safety requirements.

- By operating the Equipment in excess of its rated load capacities.

- By failing to ensure that the equipment was operated by experienced and competent persons.

- By subjecting the Equipment to careless and needlessly rough usage.

- By failing to operate the Equipment in accordance with OSHA rules and ANSI standards.

- By failing to comply with all applicable laws, regulations and ordinances, including the occupational safety and health act and regulations (including but not limited to 29 C.F.R. 1926, subpart n – Cranes And Derricks In Construction and CFR 1910, 18- crawler locamotive and truck cranes), and all applicable ANSI standards, with respect to the operation of the equipment.

- By refusing to defend and indemnify MAXIM.

- By refusing to recognize MAXIM as an additional insured.

5

As a direct result and/or proximate cause of these breaches of the contract, MAXIM was wrongfully deprived of the benefits that it contracted and bargained for and has suffered damages.

### B.     Contribution and Indemnity

MAXIM pleads, restates, and re-alleges the previous paragraphs as if set forth fully herein. MAXIM denies any liability in the underlying action, but if or any reason liability is assessed against MAXIM, MAXIM is entitled to defense and contribution under Texas statutory and common law from BERKEL for any all damages awarded to Plaintiff.

### C.     Attorney's Fees

MAXIM pleads, restates, and re-alleges the previous paragraphs as if set forth fully herein. Pursuant to the Agreement and Chapter 38 of the Texas Civil Practice & Remedies Code, MAXIM is entitled to recover reasonable and necessary attorney's fees and other costs from BERKEL. As a proximate result of the wrongful acts and/or omissions of BERKEL, MAXIM has been required to retain the undersigned counsel to defend it from Plaintiffs' claims and to prepare, file, and prosecute these claims. Accordingly, MAXIM is entitled to recover reasonable attorney's fees, expenses, and costs incurred in connection with this case.

**WHEREFORE, PREMISES CONSIDERED,** Defendant, **MAXIM CRANE WORKS, L.P.,** prays that Plaintiffs take nothing by reason of this suit, and in the alternative, for indemnity and contribution from Defendant, **BERKEL & COMPANY CONTRACTORS, INC.,** for damages arising out of this action, and for such other and further relief, both general and special, at law and in equity, to which **MAXIM CRANE WORKS, L.P.,** may show itself to be justly entitled.

6

Respectfully submitted,

J. DIAMOND AND ASSOCIATES, PLLC


_____/s/ ANN E. KNIGHT_____

Ann E. Knight
        State Bar No. 00786026
1010 N. San Jacinto Street
Houston, Texas 77002
Telephone  (713) 227-6800
Facsimile  (713) 227-6801
ann@jdiamondandassociates.com


Attorney for Defendants:
MAXIM CRANE WORKS, LP., and
JAMES DAVIDSON

7

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was sent via facsimile, hand-delivered, via electronic transmission, and/or deposited in an official depository of the United States Postal Service, in a postage-paid wrapper, certified mail, return receipt requested, properly addressed to all known counsel of record on the 17th day of December, 2014.

*Via Fax: 713/222-3850*
Kurt B. Arnold
M. Paul Skrabanek
ARNOLD & ITKIN
6009 Memorial Drive
Houston, TX 77007

*Via Fax: (404) 949-8159*
Charles Lloyd Clay, Jr.
CHUCK CLAY & ASSOCIATES, LLC.
(Admitted *Pro Hac Vice*)
3280 Peachtree Road NE, Suite 2050
Atlanta, GA 30305

*Via Fax: 213/680-4470*
John Dwyer
GORDON & REES, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

*Via Fax: 713/961-3938*
Steven D. Selbe
GORDON & REES, LLP
1900 West Loop South, Suite 1000
Houston, TX 77027

*Via Fax: 713/418-2001*
Andrew T. McKinney IV
D. Douglas Mena
LITCHFIELD CAVO LLP
One Riverway, Suite 1000
Houston, TX 77056

*Via Fax: 281/331-8083*
Jerry B. Dozier
LAW OFFICE OF JERRY B. DOZIER
2318 Koster Road
Alvin, TX 77511

_/s/ Ann E. Knight_____
Ann E. Knight

8

# EXHIBIT A

08/21/2013

# MAXIM CRANE WORKS, L.P.
840 Licking Pike, Wilder KY, 41076

P.O. #:
JDS #:

Revised April 22, 2013

## EQUIPMENT LEASE - BARE RENTAL AGREEMENT

THIS EQUIPMENT LEASE-BARE RENTAL AGREEMENT (this Lease) is entered into as of the ___21st___ day of ___August___ 2013, by and between Maxim Crane Works, L.P., a Pennsylvania limited partnership ("Lessor") and the Lessee ("Lessee") identified as follows:

| Lessee Name: BERKEL & COMPANY CONTRACTORS, INC | | | | Lessee is a: Corporation | | |
|---|---|---|---|---|---|---|
| Lessee Street Address: 2330 PRECINCT LINE ROAD | | | | Lessee Billing Street Address (if different): | | |
| Lessee City: RICHMOND | State: TX | ZIP: 77406 | | Lessee City: | State: | ZIP: |
| Local Contact Name: Bruce Smith | Position: | | | Lessee Phone No.: (913) 422-6125 | | Lessee Fax No.: (0) 0-0 |

### LIST OF EQUIPMENT AND ACCESSORIES LEASED

| Equipment and Accessories Description/Model/Serial/Unit # | Replacement Value | Last Annual Inspection Date | Rental Rate | | |
|---|---|---|---|---|---|
| | | | Per Month | Per Week | Per Day |
| 1) Unit#3500, Link-Belt LS-248H5 Crawler Crane, S/N N5J9-1601 | $1,600,000.00 | | $17,600.00 | | |
| 2) | | | | | |
| Freight In/Out IN $12,000.00 OUT $12,000.00 | | | | | |
| Add. Charges: Erection Supervisor $1,500.00/day | | | | | |
| Crane OT - $49.72/hour over 176 hours | | | | | |
| Other: | | | | | |

Lessor hereby leases to Lessee the equipment and accessories identified above (the "Equipment"), and Lessee agrees to lease and pay for such Equipment from Lessor, subject to the terms and conditions of this Lease, at the Rental Rate listed above, for a minimum of ___5 months___ commencing on ___08/26/2013___, which minimum rent shall be paid on demand. All Equipment shall remain in Lessee's possession and control at all times. The Equipment is to be located at: West Memorial Place, Houston, TX

THE EQUIPMENT IS RENTED TO LESSEE ON A **BARE RENTAL BASIS ONLY**, in its "As is" condition. Lessee, at its own expense, shall transport, operate, inspect, maintain and repair the Equipment, and return the Equipment to Lessor in the same condition as when delivered to Lessee, ordinary wear and tear from normal use excepted. LESSEE IS RESPONSIBLE FOR ENSURING COMPLIANCE BY IT AND ITS EMPLOYEES/AGENTS, AND OF THE EQUIPMENT ITSELF, WITH ALL APPLICABLE LAWS, REGULATIONS AND ORDINANCES, INCLUDING THE OCCUPATIONAL SAFETY AND HEALTH ACT AND REGULATIONS (INCLUDING BUT NOT LIMITED TO 29 C.F.R. 1926, SUBPART N -- CRANES AND DERRICKS IN CONSTRUCTION AND CFR 1910, 18- CRAWLER LOCOMOTIVE AND TRUCK CRANES), and ALL APPLICABLE ANSI STANDARDS. Lessor shall have no responsibility of any kind for compliance with any such laws, regulations or ordinances during the period the Equipment is in Lessee's possession or control. See Operation, and Inspection, Maintenance and Record Keeping requirements in the Terms and Conditions. Maxim's Rental Equipment Service Policy is incorporated herein by reference.

This Lease is expressly subject to the Terms and Conditions on the following pages, which are incorporated by reference. Lessee is placed on notice that the terms and conditions on the following pages contain provisions that, among other things: require Lessee to indemnify others, including the Lessor; waive all jury trials; and eliminate all warranties.

Lessee acknowledges that it has read and understands this Lease in its entirety, including the Terms and Conditions on the following pages. This Lease is executed by a duly authorized representative of Lessor.

BERKEL & COMPANY CONTRACTORS, INC
(Lessee Name: Print or Type)

By: _____

Bruce A. Smith
(Print Name and Title)

_____
(Attest/Witness)

Maxim Crane Works, L.P.

By: _____

Bryan Carlisle, VP
(Print Name and Title)
840 Licking Pike, Wilder KY, 41076
(Lessor's Local Office Address)
Phone: 859-441-7400 Fax: 859-442-6202
(Lessor's Local Phone & Fax Number)

## Terms And Conditions

1. **Term:** Unless the parties hereto agree in writing otherwise, the Lease begins on the date the first piece of Equipment is shipped to Lessee, and ends on the date the last piece of Equipment is returned to Lessor.

2. **Operation:** Lessee shall not subject the Equipment to careless or needlessly rough usage and Lessee hereby agrees that the Equipment shall be operated, inspected, maintained and repaired only by experienced, competent persons under Lessee's supervision and control. The Equipment shall be operated in a safe and lawful manner at all times, and in accordance with the manufacturer's operators manual, OSHA rules and ANSI standards. Lessee's operation of the Equipment shall not exceed the manufacturer's safety requirements and rated load capacities. Equipment shall not be used when overloaded, while the operator is under the influence of drugs or alcohol in violation of state or federal law, or to carry persons or property for hire. If the Equipment is a crane, it is to be used as a lift crane ONLY. Demolition, dynamic compaction, pile driving, and clamming work require additional documentation and Equipment authorized only by Lessor.

3. **Compliance with Laws and Standards:** Lessee shall comply with and conform to all laws, regulations, ordinances, rules and orders of any governmental entity relating to the possession, transportation, use, maintenance and repair of the Equipment, including but not limited to, all OSHA laws and regulations. Lessee shall also comply with all applicable ANSI Standards. Lessee agrees to assume full responsibility for, and to the fullest extent allowed by applicable law, shall indemnify, defend and save Lessor harmless against actual or asserted violations thereof, including all losses, damages, expenses, fines, forfeitures, seizures, confiscations, and penalties arising out of any such laws and regulations.

4. **Title:** All Equipment shall remain the property of Lessor at all times. Any attachments, accessions, replacement parts, repairs or additions to the Equipment shall automatically become Lessor's property. Lessee shall keep the Equipment free from any and all liens, encumbrances and claims whatsoever, and shall not do or permit any act which may encumber or impair Lessor's title or rights in the Equipment. Upon Lessor's request, Lessee shall promptly execute and/or deliver to Lessor all documentation (such as estoppel certificates or a landlord waiver), as Lessor deems necessary or appropriate for the preservation, perfection or enforcement of Lessor's interests in the Equipment and Lessor's rights under this Agreement, and if Lessee fails to do so, Lessor may execute such documents on Lessee's behalf and in Lessee's name.

5. **Acceptance:** Lessee shall inspect the equipment immediately upon delivery. The equipment is deemed accepted unless within 24 hours of delivery the Lessee notifies Lessor in writing that the equipment is not serviceable, specifying the reason(s) therefore. Acceptance of the equipment constitutes Lessee's acknowledgement that it has inspected the equipment and it is in good, safe, serviceable condition, and fit for the use intended. If the equipment thereafter proves defective or unfit for use, Lessor's liabilities and responsibilities are defined in Paragraph 8 (warranties). Consistent with Paragraph 8, Lessor's sole responsibility is to repair or replace the equipment. At Lessee's option, Lessee's sole remedy is to return the Equipment and terminate the Lease. If Lessee elects to terminate the Lease, Lessee shall pay all rental and other amounts due prior to termination, which shall never be less than rent due for the minimum rental period, transportation charges, and any outstanding costs of repairs.

6. **Insurance:** Lessee, at its expense, shall take out, carry and maintain the insurance specified herein and in the insurance addendum attached hereto, in full force during the term of this Lease, and prior to taking delivery of the Equipment:

   a. ~~Primary, non-contributing without regard to any "Other Insurance" clause, comprehensive general liability insurance, including contractual liability, protecting against liability for property damage and personal injury or death arising out of the possession, use, operation, maintenance and repair of the Equipment, with limits of liability not less than $2,000,000 each occurrence; and a $2,000,000 general aggregate;~~

   b. Automobile liability, protecting against liability for property damage and personal injury or death arising out of the possession, use, operation and transportation of the Equipment, with limits of liability not less than $1,000,000 each occurrence;

   c. Inland marine all risk coverage (physical damage insurance), with any overload, boom and jib exclusion deleted, for the full replacement value of the Equipment in the amount indicated on the face hereof;

   d. Umbrella liability with limits of liability of not less than $3,000,000; and

   e. Workers' compensation and employer's liability insurance, in accordance with all applicable state and federal laws, with limits of at least the statutory minimum or $1,000,000.00, whichever is greater.

All insurance required hereunder shall be deemed primary, non-contributory insurance of Lessor, shall name Lessor as an additional insured party (using ISO Form GC 20 10 or equivalent) and loss payee; shall be maintained with insurance companies with an A.M. Best rating of A- or higher and licensed and/or authorized to do business in the jurisdiction of the jobsite location; shall provide a waiver of subrogation with respect to the general liability, excess, inland marine all risk and auto coverage; and shall provide that the coverage thereunder may be altered or canceled only after not less than 30 days prior written notice to Lessor. Lessee is solely responsible for any insurance premiums and deductibles, and loss of usage of the Equipment. No "Other Insurance" provisions shall be applicable to Lessor or their underwriters by virtue of being named as an additional insured party and/or loss payee under the policy. Lessee shall furnish Lessor with certificate(s) of insurance evidencing such coverage. Lessor's policies shall be considered excess over all Lessee's policies. Indemnification obligations by Lessee under this Agreement are in addition to, and an alternative, to the insurance coverage required herein; and Lessee's maintenance of any such insurance coverage shall not operate to waive any such indemnification obligations. If Lessee fails to procure and maintain the required physical damage insurance coverage in accordance with this Section 6, Lessor shall have the right (but not the obligation), without notice and at Lessee's expense, to place such insurance coverage and/or enroll Lessee in any force-placed or waiver program maintained by Lessor from time to time, and Lessee shall pay the cost thereof upon the terms set forth in Lessor's invoice made in accordance with the provisions of Section 11 hereof. To the extent Lessee may perform under this Agreement without obtaining the required insurance coverage, such an occurrence shall not operate in any manner as a waiver of Lessor's right to maintain any breach of contract action against Lessee.

7. **INDEMNIFICATION:**
   a. TO THE FULLEST EXTENT PERMITTED BY TEXAS INSURANCE CODE CHAPTER 151 OR OTHER APPLICABLE LAW, AND EXCEPT AS SET OUT IN SUBPARAGRAPH (B) BELOW, LESSEE SHALL DEFEND, INDEMNIFY, AND HOLD HARMLESS THE LESSOR, ITS OFFICERS, DIRECTORS, SHAREHOLDERS, PARTNERS, MEMBERS, MANAGERS, EMPLOYEES, AFFILIATES, REPRESENTATIVES, AND AGENTS ("INDEMNITEES") FROM ANY AND ALL ACTIONS, CAUSES OF ACTION, CLAIMS, SUITS, DEMANDS, INVESTIGATIONS, OBLIGATIONS, JUDGMENTS, LOSSES, COSTS, LIABILITIES, DAMAGES, FINES, PENALTIES AND EXPENSES, INCLUDING ATTORNEY FEES, WHICH ARE INCURRED BY, ACCRUED, ASSERTED, OR MADE AGAINST, OR RECOVERABLE FROM ANY OF THE INDEMNITEES ARISING FROM OR RELATING TO, DIRECTLY OR INDIRECTLY, THE LESSEE'S ACCEPTANCE, POSSESSION, TRANSPORT, USE, OPERATION, OR CONTROL OF THE EQUIPMENT, WHETHER OR NOT THE SAME ARISES FROM DAMAGE TO PROPERTY (REAL OR PERSONAL), INJURY OR DEATH TO PERSONS INCLUDING BUT NOT LIMITED TO LESSEE'S EMPLOYEES, AGENTS AND REPRESENTATIVES, FAILURE TO COMPLY WITH APPLICABLE LAWS, REGULATIONS AND ORDINANCES, EQUIPMENT CONDITION, LOSS OF USE OR SEIZURE OF EQUIPMENT, OR OTHERWISE, BUT ONLY TO THE EXTENT

CAUSED IN WHOLE OR IN PART BY ANY NEGLIGENT ACT OR OMISSION OR ANY INTENTIONAL ACT OF LESSEE OR ANYONE DIRECTLY OR INDIRECTLY EMPLOYED BY LESSEE OR ANYONE FOR WHOSE ACT LESSEE MAY BE LIABLE. LESSEE'S OBLIGATION TO DEFEND, HOLD HARMLESS AND INDEMNIFY THE INDEMNITEES SHALL SURVIVE THE TERMINATION OF THIS RENTAL AGREEMENT. IT IS EXPRESSLY AGREED THAT THIS INDEMNIFICATION CLAUSE APPLIES TO BOTH THIRD-PARTY CLAIMS AND ALL CLAIMS BETWEEN LESSOR AND LESSEE.

b. NOTWITHSTANDING THE FOREGOING, TO THE FULLEST EXTENT PERMITTED BY TEXAS INSURANCE CODE CHAPTER 151 OR OTHER APPLICABLE LAW, LESSEE SHALL DEFEND, INDEMNIFY, AND HOLD HARMLESS THE LESSOR, ITS OFFICERS, DIRECTORS, SHAREHOLDERS, PARTNERS, MEMBERS, MANAGERS, EMPLOYEES, AFFILIATES, REPRESENTATIVES AND AGENTS ("INDEMNITEES") FROM AND AGAINST ALL CLAIMS, DAMAGES, LOSSES AND EXPENSES, INCLUDING, BUT NOT LIMITED TO, ATTORNEYS FEES ARISING OUT OF OR RESULTING FROM BODILY INJURY TO, OR SICKNESS, DISEASE OR DEATH OF, ANY EMPLOYEE, AGENT OR REPRESENTATIVE OF LESSEE OR ANY OF ITS SUBCONTRACTORS, REGARDLESS OF WHETHER SUCH CLAIM, DAMAGE, LOSS OR EXPENSE IS CAUSED, OR IS ALLEGED TO BE CAUSED, IN WHOLE OR IN PART BY THE NEGLIGENCE OF ANY INDEMNITEE, IT BEING THE EXPRESSED INTENT OF LESSOR AND LESSEE THAT IN SUCH EVENT THE LESSEE IS TO INDEMNIFY, HOLD HARMLESS AND DEFEND THE INDEMNITEES FROM THE CONSEQUENCES OF THEIR OWN NEGLIGENCE WHETHER IT IS OR IS ALLEGED TO BE THE SOLE OR CONCURRING CAUSE OF THE BODILY INJURY, SICKNESS, DISEASE OR DEATH OF LESSEE'S EMPLOYEE OR THE EMPLOYEE OF ANY OF ITS SUBCONTRACTORS. THE INDEMNIFICATION OBLIGATIONS UNDER THIS PARAGRAPH SHALL NOT BE LIMITED BY ANY LIMITATION ON THE AMOUNT OR TYPE OF DAMAGES, COMPENSATION OR BENEFITS PAYABLE BY OR FOR LESSEE UNDER WORKERS' COMPENATION ACTS, DISABILITY BENEFIT ACTS OR OTHER EMPLOYEE BENEFIT ACTS. LESSEE SHALL PROCURE LIABILITY INSURANCE COVERING ITS OBLIGATIONS UNDER THIS PARAGRAPH. LESSEE EXPRESSLY AGREES TO WAIVE ANY WORKERS COMPENSATION IMMUNITY IT MAY HAVE, OTHERWISE

8. NO WARRANTIES: LESSOR WARRANTS THAT THE EQUIPMENT WILL BE DELIVERED IN GOOD OPERATING CONDITION. LESSOR'S SOLE RESPONSIBILITY UNDER THE ABOVE WARRANTY SHALL BE, AT ITS OPTION, TO EITHER REPAIR OR SUITABLY REPLACE THE EQUIPMENT WITHIN A COMMERCIALLY REASONABLE TIME. THE ABOVE WARRANTY IS CONTINGENT UPON PROPER USE OF THE EQUIPMENT BY LESSEE AND SHALL NOT APPLY IF ADJUSTMENT, REPAIR OR REPLACEMENT IS REQUIRED BECAUSE OF ACCIDENT, MISUSE, IMPROPER HANDLING, OPERATION, MAINTENANCE, UNUSUAL PHYSICAL STRESS OR WEATHER CONDITIONS. THE FOREGOING IS THE EXCLUSIVE AND ENTIRE WARRANTY GIVEN IN CONNECTION WITH THE EQUIPMENT WHICH EQUIPMENT IS OTHERWISE BEING LEASED IN "AS IS" CONDITION. LESSOR IS NOT THE MANUFACTURER OF THE EQUIPMENT. LESSOR MAKES NO OTHER WARRANTY AND EXPRESSLY DISCLAIMS ANY AND ALL EXPRESS AND IMPLIED WARRANTIES AS TO THE EQUIPMENT, INCLUDING ANY WARRANTY OF MERCHANTABILITY, OR FITNESS FOR A PARTICULAR PURPOSE. LESSOR SHALL NOT BE LIABLE FOR ANY DELAYS, WORK STOPPAGES, LOSS OF USE OF EQUIPMENT, LOST TIME, INCONVENIENCE, LOST PROFITS OR ANY OTHER DIRECT OR INDIRECT INCIDENTAL, SPECIAL OR CONSEQUENTIAL DAMAGES RELATING TO THE POSSESSION, TRANSPORT, USE, OPERATION, CONTROL, MAINTENANCE AND/OR REPAIR OF THE EQUIPMENT, OR ANY LOSS DAMAGE OR INJURY RESULTING THEREFROM.

9. Rent Adjustments: All Rental Rates are based on an 8 hour day (daily rentals), 40 hour week (weekly rentals), or 176 hour month (monthly rentals), on a single day-shift operation. Lessee shall pay a proportionate hourly charge for all excess hours of usage. Lessee shall not be entitled to any abatement, deduction, reduction, set-off, counterclaim, recoupment or defense against rent for any reason, including any non-working time of the Equipment (except as provided otherwise herein or as the parties hereto may agree in writing).

10. Transportation: The Equipment will be loaded at Lessor's expense F.O.B. Lessor's yard or other shipping point designated by Lessor. Lessee, at its own expense and risk, shall do all other loading, unloading, installation, dismantling and transportation of the Equipment and shall pay all other freight, demurrage, storage, switching, drayage, rigging, trucking or other transportation charges (including but not limited to, fuel costs and taxes, mileage charges, weight and road use permits, highway taxes and any other IFTA taxes) from the time of loading by Lessor to and including the time of the Equipment's return to Lessor, unless the parties hereto agree otherwise in writing. If the Equipment is transported on its own wheels, Lessee, at its own expense and risk, shall provide a responsible person (at least 21 years of age with a valid drivers license) to accompany the Equipment to and from the shipping and receiving point. Equipment shall be returned to the destination designated by Lessor.

11. Payment: In addition to the payment of the Rental Rate specified on the front of this Lease, Lessee shall pay Lessor upon demand:

a. all taxes, levies, assessments, fees and other public charges against or upon any of the Equipment, including, but not limited to, personal property taxes, if applicable.

b. all fines, penalties, forfeitures, court costs, expenses and attorneys fees arising with respect to Lessee's possession, transportation, use, maintenance or repair of the Equipment, including but not limited to any parking, traffic or other violations assessed against the Equipment, Lessor or Lessee.

c. Lessor's costs and expenses, including reasonable attorney's fees (unless prohibited by law), incurred in enforcing this Lease, collecting any amounts due hereunder, or in repossessing the Equipment.

d. All cost of repairs and any related expenses.

Any payments more than 30 days past due hereunder shall bear interest at 1.5% per month (or the maximum rate allowed by law, which ever is higher). Any and all personal property, sales (unless collected by Lessor), use or other taxes which may be applicable to the Equipment by reason of this Agreement or to the rental payments payable hereunder shall be paid and reported by Lessee directly to the appropriate governmental agency charged with the assessment and collection of such taxes, and evidence of such payments shall be provided to Lessor upon its request.

12. Inspection, Maintenance, Repairs and Record Keeping Requirements: Lessee shall effect and bear the expense of all necessary inspections, maintenance, adjustments and repairs required by the Equipment operators manual and by law, and shall maintain the Equipment at Lessee's expense in good working condition (including making all repairs occasioned by any accident). Lessee shall be responsible for performing all normal basic service, including filters, lubricants, lubrications, protection against freezing and restoration of parts affected by abnormal exposure. While Lessor shall have the right to inspect the Equipment at any time during normal business hours, Lessee agrees that Lessor has no control over the operation, use, maintenance or repair of the Equipment when it is in Lessee's possession, supervision or control. Lessor shall have prompt access to the Equipment to properly maintain and repair same if Lessee fails to do so or upon Lessor's demand, all at Lessee's cost. Lessor retains the right to make or direct all repairs occasioned by any accident, all at Lessee's expense. All repairs must meet manufacturer specifications and equipment be certified by the manufacturer. OSHA regulations pertaining to the equipment require daily, monthly (or other periodic) and annual inspections. Lessee is solely responsible for conducting these inspections and for otherwise ensuring that the Equipment meets, and is operated in accordance with, OSHA requirements and ANSI Standards. Lessor also furnishes the following items with each crane to assist Lessee with OSHA compliance: crane logbook; operator's manual; fire extinguisher; and, load chart. Lessee will be charged a replacement fee equal to the cost to replace each missing item not returned with the Equipment. Lessee shall keep a written record of all inspections and shall be responsible for maintaining the crane log book while the Equipment is in Lessee's possession. Lessee shall be solely responsible for any liability imposed by Lessee's failure to maintain inspection records and crane log books while the Equipment is in Lessee's possession.

13. **Damage:** Lessee shall immediately not[ify] [Le]ssor of any damage to the Equipment. All repairs to t[he] [E]quipment occasioned by damage during the term hereof shall be at the expense of Lesse[e] [ex]cluding latent manufacturing defects). All repairs must be authorized by Lessor. All repairs must meet manufacturer specifications and the Equipment must be certified by the manufacturer. If Lessor determines that the returned Equipment has been subjected to damage, excess wear and tear or improper usage, Lessee agrees to pay Lessor upon demand all costs to restore or repair the Equipment, ordinary wear and tear from normal use excepted. Lessee exclusively bears risk of loss or damage to the Equipment, accidental or otherwise (excluding latent manufacturing defects) including but not limited to, fire, flood, theft, comprehensive losses, collision, rollover and Acts of God. Lessor and Lessee acknowledge and agree that the replacement value(s) stated on the face hereof shall be used to determine the value of the Equipment in order to establish the amount of the loss or damage thereto. Rental payments shall not be applied to loss or damage claims. The Lease term and rental period shall continue to run while the Equipment is being repaired and shall continue to run until all repairs are completed and paid.

14. **Accidents:** Lessee shall immediately notify Lessor of any accident involving the Equipment, including but not limited to, personal injury and/or property damage arising from the transportation, possession, use, maintenance or repair of the Equipment so that Lessor's ability to investigate the accident is not prejudiced. Lessor shall have immediate access to, and right of retrieval and repair of, the Equipment. Lessee shall not remove equipment or components from site. Lessor shall make or have the right to direct all repairs occasioned by any accident at Lessee's expense. All repairs shall meet manufacturer specifications and approval. Lessee shall immediately deliver any summons, pleading, notice or paper of any kind involving any claim, suit or proceeding relating to any accident or event involving the Equipment to Lessor. Lessee shall not aid or abet the assertion of any such claim, suit or preceding and shall fully cooperate with Lessor in investigating and defending the same.

15. **Default:** Time is of the essence with respect to Lessee's performance of its obligations under this Agreement. Lessor may declare this Lease in default if any one or more of the following occurs: (a) Lessee fails to make any payment required hereunder when due; (b) Lessee fails to maintain in force at all times the required insurance; (c) Lessee fails to properly operate, maintain or repair the Equipment; (d) Lessee fails to observe or perform any other covenant or requirement of this Lease, which failure is not cured to Lessor's satisfaction within five (5) days after Lessor's notice to Lessee thereof; (e) Lessee attempts to sell, transfer or encumber the Equipment; (f) a voluntary or involuntary proceeding is instituted in any court of competent jurisdiction, seeking a decree or order (i) for relief in respect of Lessee under any applicable bankruptcy, insolvency, reorganization, assignment for the benefit of creditors, or other similar law, or (ii) for the appointment of a receiver, liquidator, assignee, custodian, trustee, sequestrator or similar official of Lessee or its property, or (iii) for the winding up or liquidation of the Lessee's affairs; (g) Lessee shall generally fail to pay its debts as they come due; and/or (h) Lessee, in Lessor's opinion, shall become financially insecure. At any time after such declaration, Lessor may enter, with or without legal process, any premises where the Equipment is located and take possession thereof. Lessee shall provide Lessor with unobstructed ingress and egress for such purpose. Furthermore, Lessee shall immediately pay to Lessor all amounts then due hereunder and all costs of removal and repossession of the Equipment. Lessor's remedies herein shall be cumulative and are in addition to all other remedies existing at law or in equity, including but not limited to, (a) terminate this Agreement and all rights of Lessee hereunder; (b) to declare the entire unpaid rent due (including any rent accruing during any minimum rental term) to be immediately due and payable; (c) to enter the premises where the Equipment is located, take possession of and remove the Equipment or render the Equipment inoperable, with or without legal process; (d) to demand that Lessee surrender and deliver up possession of the Equipment to Lessor; (e) with or without terminating this Agreement, to re-let the Equipment on such terms and conditions as are then available and otherwise acceptable to Lessor, and apply rent payments received, after deduction of all costs and expenses incurred by Lessor, to amounts due from Lessee under this Agreement; and (f) within Lessor's sole discretion, but without any obligation, to take such action or make any payment to remedy any default, including but not limited to, procuring any required insurance coverage, paying any fine, imposition, penalty, taxes or fees incurred to recover and/or release the Equipment from any forfeiture, seizure, confiscation or similar proceeding, or from any lien or other encumbrance imposed on the Equipment, all such payments of which shall be reimbursed by Lessee. In addition to the payment of any amounts due Lessor hereunder, Lessee shall be responsible for and shall reimburse Lessor for all costs and expenses incurred by Lessor in connection with the exercise of any rights and remedies hereunder, including all expenses incurred in the removal and transportation of the Equipment to Lessor's premises, any cleaning, service and/or repair of the Equipment, and in the enforcement of the terms and conditions of this Agreement or damages recoverable hereunder, including costs of collection and reasonable attorney's fees (including fees and expenses incurred in any bankruptcy proceeding or on appeal).

16. **No Assignment or Sub-Lease:** This Lease may not be assigned by Lessee and the Equipment may not be offered by Lessee for use or sublet to any other person or entity without Lessor's prior written consent (which consent may be withheld for any reason). Any consent by Lessor to an assignment or sub-lease shall not release Lessee from any obligations under this Lease.

17. **Jury Waiver:** UNLESS PROHIBITED BY LAW, LESSEE AND LESSOR EACH KNOWINGLY, UNCONDITIONALLY, AND IRREVOCABLY WAIVE TRIAL BY JURY WITH RESPECT TO ANY ACTION, CLAIM, SUIT OR PROCEEDING, WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE, IN RESPECT OF, ARISING OUT OF, RELATED TO, OR INCIDENTAL TO THE RELATIONSHIP ESTABLISHED BETWEEN THEM (OR AS TO ANY THIRD PARTIES) IN CONNECTION WITH THIS LEASE, ANY OTHER DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH, THE CONDUCT OF THE PARTIES, OR THE TRANSACTIONS RELATED HERETO.

18. **Full Agreement; Governing Law; Waiver; Severability:** This Lease, together with any addenda attached, constitute the full agreement of Lessor and Lessee. Any changes to this Lease must be evidenced in writing signed by Lessor and Lessee. This Lease shall be binding upon and shall inure to the benefit of the parties hereto, their respective successors and permitted assigns. The law of the state where the Equipment is delivered, assembled, inspected and operated shall control this Lease. Lessee agrees that exclusive jurisdiction to bring and maintain any action or proceeding arising out of or related to this Agreement shall be brought in the county of the state, or in the United States District Court where the Equipment is delivered, assembled, inspected and operated as set forth herein. Headings are provided for convenience only, not for interpretation of this Lease. Lessor and Lessee are independent contractors, and neither Lessee nor any operator of the Equipment shall be deemed to be the agent, servant or employee of Lessor for any reason or purpose. No failure of Lessor to enforce performance of any terms or covenants, or to exercise or delay in exercising any right, under this Lease shall operate as a waiver thereof; nor shall any single or partial exercise of any right hereunder preclude any other or further exercise thereof or the exercise of any other right. If any provision of this Lease is held to be invalid or illegal by a Court of competent jurisdiction, the invalid or illegal term will be deemed excluded from this Lease and will not invalidate the remaining terms of this Lease.

19. **Lessor's Right To Effect Compliance:** If Lessee fails to comply with any provision of this Agreement including, but not limited to, the obligation to pay or satisfy any taxes, liens, insurance premiums or other charges, Lessor shall have the right, but shall not be obligated, to effect such compliance in whole or in part, and all costs and expenses shall be paid by Lessee immediately upon demand by Lessor. Lessor's effecting such compliance shall not constitute a waiver of any default by Lessee hereunder.

20. **Lifting Lugs, Rigging And Apparatus:** Lessee hereby assumes all responsibility and liability to ensure the adequacy of design and strength of any lifting lug or device embedded in or attached to any object, and any and all rigging or lifting apparatus (even if such rigging or lifting apparatus is supplied by Lessor to Lessee), and Lessee will indemnify and hold Lessor harmless from any and all actions, causes of action, claims, suits, demands, investigations, obligations, judgments, losses, costs, liabilities, damages, fines, penalties and expenses, including attorney's fees arising or resulting from any failures or defects therefrom.

21. **Assembly and Disassembly:** The parties agree that any and all Equipment mobilization and/or demobilization costs including but not limited to, assembly, erection, reconfiguration, disassembly or other movement of the Equipment, were quoted by Lessor based on "Standard Activity". Standard Activity means mobilization and demobilization during the following minimum weather conditions, and otherwise absent a force majeure, (i) ambient temperature in excess of twenty (20) degrees Fahrenheit; (ii) sustained winds (including gusts) less than twenty (20) miles per hour; (iii) no precipitation

in the form of snow or ice; or (iv) minor precipitation in the form of rain (less than one (1) inch per twenty-four (24) hour period. Rates for Standard Activity apply eight (8) hours per day Monday through Friday (excluding holidays). Rates for mobilization and/or demobilization which do not fall within Standard Activity (the "Non-Standard Rates") shall be provided to Lessee prior to any such costs being incurred and the parties hereto shall cooperate in good faith to schedule such mobilization and/or demobilization on a cost efficient basis.

# REI _AL EQUIPMENT SERVICE PO_ _Y

The United State Department of Labor ("DOL") and the Occupational Health and Safety Administration ("OSHA") provide that anyone operating a crane be required to perform a safety check of the equipment prior to each shift of operation. These pre-operational inspections require all fluid levels to be checked prior to each shift of operation and all operational safety equipment to be in operating condition prior to equipment use. Also, OSHA requires written documentation of these and other inspections to remain in compliance with the laws. Maxim Crane Works, L.P. ("Maxim") provides a log book in every crane to assist you in complying with the government regulations. Maxim will track all reported machine malfunctions with the help of your assigned competent equipment operator. Maxim provides annual inspections at no additional charge to help maintain compliance with OSHA laws and regulations.

As a customer of Maxim renting equipment on a bare-rental basis, you are responsible for the daily, weekly and monthly inspection, as well as maintenance and repair of the Maxim equipment in your possession. To be in compliance with OSHA regulations, you must perform the following maintenance and operating procedures:

- Ensure that the equipment is operated only by competent persons trained to operate the specific make and model of the crane provided.

- Coordinate all repairs with the Maxim Service Department to ensure that the equipment is in a safe working condition and complies with OSHA and other state and local regulations.

- Complete the DAILY CRANE LOG:
Ensure that all operators accurately complete the DAILY CRANE LOG located in the document compartment of the crane. Instructions on completing the DAILY CRANE LOG are located on the inside cover. ENTRIES INTO THE DAILY CRANE LOG ARE MANDATORY AS PRESCRIBED BY OCCUPATIONAL SAFETY AND HEALTH ACT SECTIONS 1910 AND 1926.
To help you stay in compliance with the laws:

- All deficiencies noted on Forms C4 and C5, maintained on the DAILY CRANE LOG shall be faxed to the MAXIM Service Manager listed below immediately after deficiencies are noted. The Service Manager will track the completion of each repair on a Maxim work-order. The requestor shall be notified when the necessary repairs have been completed.

- Completion of DAILY LUBRICATION, INSPECTION AND MAINTENANCE:
Document all inspection, lubrication and maintenance of the equipment prior to use (on a daily, weekly and monthly basis) as specified by the equipment manufacturer on the DAILY INSPECTION LOG (FORM C3).

- A summary of required inspections, maintenance and lubrication procedures are detailed in the equipment operator's manual.

Customers are responsible for returning the equipment in the same condition as when delivered, ordinary wear and tear accepted. Any damage to the equipment resulting from failure to maintain or care for the equipment, abuse of the equipment, operation of the equipment under abnormal or unreasonable conditions or any other cause, accidental or otherwise is the customer's responsibility (excluding a latent manufacturer's defect or Maxim negligence).

MAXIM SERIVCE: The Maxim Service Department will perform all Long Term Preventative Maintenance ("LTPM") pursuant to a two-hundred and fifty (250) engine hour cycle or every three months (whichever is first to occur). LTPM includes, but is not limited to, a complete inspection of the crane/equipment and full oil and lube service pursuant to manufacturer specifications. Maxim will charge you for all such LTPM service work and any resulting repairs except in those cases where the condition(s) necessitating the repair work results from ordinary wear and tear to the equipment (or a latent manufacturer's defect or Maxim negligence). The charge to you for such service and repair work will be for: (i) labor (at the hourly service charge in effect and based on portal-to-portal determination); (ii) transportation costs; and (iii) parts and materials.

Maxim Service Department site labor rate: _____

Fixed Portal to Portal charge: _____

Service Option:

☐ 1. MAXIM SERVICE OPTION: I elect to have Maxim perform LTPM service as described above.

☐ 2. CUSTOMER SERVICE OPTION: I elect to self-perform LTPM in accordance with manufacturer specification.
   a. Upon Maxim's request customer is required to give Maxim access to inspect the equipment and maintenance records. If customer does not service crane in accordance with manufactures prescribed service intervals, Maxim will service the crane and charge the customer pursuant to Option 1

Maxim will respond within 24 hours or emergency repairs. For service performed other than during normal working hours, customers will be responsible for the difference between the straight time rates and the applicable overtime rates that are in effect at the time of service.

Upon arrival at a job site, at a time and date predetermined by the Maxim Service Manager and the Customer Site Supervisor, Maxim's personnel shall have access to the equipment to begin operations within one (1) hour of arrival. Excessive time is chargeable item to customer's account.

Upon termination of the rental, the equipment will be returned to Maxim's yard for inspection. Should there be any damages for which the customer is responsible; Maxim will invoice you for these damages under the same purchase order as the rental.

Maxim will notify you of any charges in a timely manner. Should you have any questions concerning the charges, please contact our Service Department.

Maxim Service Manager: _____

Office number: _____

FAX NUMBER: _____

Cell Phone Number: _____

Maxim assumes no responsibility for labor back charges due to downtime. However, every effort will be made to minimize downtime.

## EQUAL OPPORTUNITY EMPLOYER

## INSURANCE REQUIREMENTS

1.  Lessee, at its expense, shall take out, carry and maintain the insurance specified herein and in the insurance addendum attached hereto, in full force during the term of this Lease, and prior to taking delivery of the Equipment:

    a.  Primary, non-contributing, without regard to any "Other Insurance" clause, comprehensive general liability insurance, including contractual liability, protecting against liability for property damage and personal injury or death arising out of the possession, use, operation, maintenance and repair of the Equipment, with limits of liability not less than $2,000,000 each occurrence; and a $2,000,000 general aggregate (a non-contributory excess/umbrella policy may be utilized to meet minimum per occurrence coverage and aggregate limits);

    b.  Automobile liability, protecting against liability for property damage and personal injury or death arising out of the possession, use, operation and transportation of the Equipment, with limits of liability not less than $ 1,000,000 each occurrence;

    c.  Inland marine all risk coverage (physical damage insurance), with any overload, boom and jib exclusion deleted, for the full replacement value of the Equipment in the amount indicated on the face hereof;

    d.  Umbrella liability with limits of liability of not less than $3,000,000; and

    e.  Workers' compensation and employer's liability insurance, in accordance with all applicable state and federal laws, with limits of at least the statutory minimum or $1,000,000.00, whichever is greater.

2.  All insurance required hereunder shall be deemed primary, non-contributing, without regard to any "other Insurance" clause, insurance of Lessor; shall name Lessor as an additional insured party (using ISO Form GC 20 10 or equivalent) and loss payee, and shall be maintained with insurance companies with an A.M. Best rating of A- or higher and licensed or authorized to do business in the jurisdiction of the jobsite location

3.  All insurance required hereunder shall be maintained with responsible insurance companies of recognized standing.

4.  Waiver of subrogation with respect to the general liability, excess, inland marine all risk and auto coverage required.

5.  Coverage may not be altered or canceled without 30 days prior written notice to Lessor.

6.  Lessee is solely responsible for any insurance premiums and deductibles, and loss of usage of the Equipment.

7.  No "Other Insurance" provisions shall be applicable to Lessor or their underwriters by virtue of being named as an additional insured party and/or loss payee under the policy.

8.  Lessee shall furnish Lessor with certificate(s) of insurance evidencing such coverage.

9.  Lessor's policies shall be considered excess over all Lessee's policies.

10. Equipment to be covered:

    a.  Manufacture/Model/Serial Number/Unit Number:

    b.  Value:

Please fax and mail your certificate of insurance to the address below:

| | |
|---|---|
| Address: | 840 Licking Pike, Wilder KY, 41076 |
| Phone: | 859-441-7400 |
| Fax: | 859-442-6202 |

Hidden:
1530003  - Links the embedded view with it's parent

L & COMPANY CONTRACTORS, INC.                PURCHASE ORDER NO.: 13-210.02

recinct Line Road
mond, Texas 77406                                    BERKEL JOB NO.:    13-210
)NE: 281-344-1090                                    DATE:    8/21/2013
: 281-344-1099                                       Page 1 OF 2

Maxim Crane Works, L.P.             SHIP TO: West Memorial Place
'N:  Buddy Knowles                  General Cont: Skanska
)NE: 713-248-2172                        C/O: Berkel & Company Contractors, Inc.
:    281-882-9182                   Site Contact: Chris Miller  925-766-7583
)RESS:   305 20th Street            ADDRESS: 15375 Memorial Drive

| /: | STATE: | ZIP: | CITY | STATE: | ZIP |
|---|---|---|---|---|---|
| Texas City | Texas | 77592 | Houston | Texas | 77079 |
| crawler crane | DATE REQUIRED: 8/26/2013 | TAX EXEMPT: No TWIC CARD: N/A | TERMS: | | |

☐ AS REQUIRED QUANTITY OR SERVICE (IF CHECKED, THIS IS A REQUIREMENTS ORDER)
☒ SPECIFIC QUANTITY OR SERVICE
☐ READY MIX - NO ADDITIVES OR AIR ENTRAINMENT
     MIX PROPORTIONS MUST BE ON DELIVERY TICKET

| PLEASE SUPPLY ITEMS BELOW | PRICE | UNIT |
|---|---|---|
| )n conventional crawler with 190' of lattice boom | $17,500.00 | month |
| ii in | $12,000.00 | ls |
| it out | $12,000.00 | ls |
| on Supervisor | $1,500.00 | day |
| | | |
| | | |
| | | |
| | | |

'dinate deliveries with Chris Miller  925-766-7583

*PRICES AND SPECIFICATIONS AS CONFIRMED ON YOUR PROPOSAL #: 00232273*        *DATED: 8/20/2013*

Drivers & Personnel coming onsite must comply with all safety rules and use all required Personal Protective Equipment.

lces above are valid for duration of the project.

SE NOTIFY US IMMEDIATELY IF YOU ARE UNABLE TO SHIP COMPLETE ORDER BY DATE SPECIFIED.

PURCHASE APPROVAL:
cc: Job File, K.C., Superintendent, Accounting

ces, bills, statements, packages or other documents or shipments must contain the purchase order number printed on the front page of this Purchase Additionally, three copies of the Seller's invoice must accompany the original bill of lading.

Seller is specifically instructed otherwise all invoices, bills and statements must be submitted to the following address:
el & Company Contractors, Inc., 2330 Precinct Line Road, Richmond, TX 77406

'chase Order, when accepted by Seller, shall constitute a valid and binding contract. ADDITIONAL TERMS AND CONDITIONS ON THE REVERSE EREOF ARE A MATERIAL PART OF THIS CONTRACT.

# Exhibit B

13-210

08/21/2013

Contract #: 8804

# MAXIM CRANE WORKS, L.P.

840 Licking Pike, Wilder KY, 41076

P.O. #:
JDS #:

Revised April 22, 2013

## EQUIPMENT LEASE - BARE RENTAL AGREEMENT

THIS EQUIPMENT LEASE-BARE RENTAL AGREEMENT (this Lease) is entered into as of the ___21st___ day of ___August,___ ___2013;___ by and between Maxim Crane Works, L.P., a Pennsylvania limited partnership ("Lessor") and the Lessee ("Lessee") identified as follows:

| Lessee Name:<br>BERKEL & COMPANY CONTRACTORS, INC | | | Lessee is a:<br>Corporation | | |
| Lessee Street Address:<br>2330 PRECINCT LINE ROAD | | | Lessee Billing Street Address (if different): | | |
| Lessee City:<br>RICHMOND | State:<br>TX | ZIP:<br>77406 | Lessee City: | State: | ZIP: |
| Local Contact Name:<br>Bruce Smith | Position: | | Lessee Phone No.:<br>(913) 422-5125 | | Lessee Fax No.:<br>(0) 0-0 |

## LIST OF EQUIPMENT AND ACCESSORIES LEASED

| Equipment and Accessories<br>Description/Model/Serial/Unit # | Replacement Value | Last Annual Inspection Date | Rental Rate | | |
|---|---|---|---|---|---|
| | | | Per Month | Per Week | Per Day |
| 1) Unit#3500, Link-Belt LS-248H5 Crawler Crane, S/N N5J9-1601 | $1,600,000.00 | | $17,500.00 | | |
| 2) | | | | | |
| Freight In/Out: IN $12,000.00 OUT $12,000.00 | | | | | |
| Add. Charges:<br>Erection Supervisor $1,500.00/day<br>Crane OT- $49.72/hour over 176 hours | | | | | |
| Other: | | | | | |

Lessor hereby leases to Lessee the equipment and accessories identified above (the "Equipment"), and Lessee agrees to lease and pay for such Equipment from Lessor, subject to the terms and conditions of this Lease, at the Rental Rate listed above, for a minimum of ___5 months___ commencing on ___08/26/2013___, which minimum rent shall be paid on demand. All Equipment shall remain in Lessee's possession and control at all times. The Equipment is to be located at: West Memorial Place, Houston, TX

THE EQUIPMENT IS RENTED TO LESSEE ON A **BARE RENTAL BASIS ONLY**, in its "As is" condition. Lessee, at its own expense, shall transport, operate, inspect, maintain and repair the Equipment, and return the Equipment to Lessor in the same condition as when delivered to Lessee, ordinary wear and tear from normal use excepted. LESSEE IS RESPONSIBLE FOR ENSURING COMPLIANCE BY IT AND ITS EMPLOYEES/AGENTS, AND OF THE EQUIPMENT ITSELF, WITH ALL APPLICABLE LAWS, REGULATIONS AND ORDINANCES, INCLUDING THE OCCUPATIONAL SAFETY AND HEALTH ACT AND REGULATIONS (INCLUDING BUT NOT LIMITED TO 29 C.F.R. 1926, SUBPART N -- CRANES AND DERRICKS IN CONSTRUCTION AND CFR 1910, 18- CRAWLER LOCOMOTIVE AND TRUCK CRANES), and ALL APPLICABLE ANSI STANDARDS. Lessor shall have no responsibility of any kind for compliance with any such laws, regulations or ordinances during the period the Equipment is in Lessee's possession or control. See Operation, and Inspection, Maintenance and Record Keeping requirements in the Terms and Conditions. Maxim's Rental Equipment Service Policy is incorporated herein by reference.

This Lease is expressly subject to the Terms and Conditions on the following pages, which are incorporated by reference. Lessee is placed on notice that the terms and conditions on the following pages contain provisions that, among other things: require Lessee to indemnify others, including the Lessor; waive all jury trials; and eliminate all warranties.

Lessee acknowledges that it has read and understands this Lease in its entirety, including the Terms and Conditions on the following pages. This Lease is executed by a duly authorized representative of Lessor.

**BERKEL & COMPANY CONTRACTORS, INC**
(Lessee Name: Print or Type)

By: _Bruce R Smith_

_Bruce A. Smith_
(Print Name and Title)

_(Attest/Witness)_

**Maxim Crane Works, L.P.**

By: _____

Bryan Carlisle, VP
(Print Name and Title)
840 Licking Pike, Wilder KY, 41076
(Lessor's Local Office Address)
Phone: 859-441-7400 Fax: 859-442-6202
(Lessor's Local Phone & Fax Number)



EXHIBIT
180
Smith

BERK 000661

Terms And Conditions

1. Term: Unless the parties hereto agree in writing otherwise, the Lease begins on the date the first piece of Equipment is shipped to Lessee, and ends on the date the last piece of Equipment is returned to Lessor.

2. Operation: Lessee shall not subject the Equipment to careless or needlessly rough usage and Lessee hereby agrees that the Equipment shall be operated, inspected, maintained and repaired only by experienced, competent persons under Lessee's supervision and control. The Equipment shall be operated in a safe and lawful manner at all times, and in accordance with the manufacturer's operators manual, OSHA rules and ANSI standards. Lessee's operation of the Equipment shall not exceed the manufacturer's safety requirements and rated load capacities. Equipment shall not be used when overloaded, while the operator is under the influence of drugs or alcohol in violation of state or federal law, or to carry persons or property for hire. If the Equipment is a crane, it is to be used as a lift crane ONLY. Demolition, dynamic compaction, pile driving, and clamming work require additional documentation and Equipment authorized only by Lessor.

3. Compliance with Laws and Standards: Lessee shall comply with and conform to all laws, regulations, ordinances, rules and orders of any governmental entity relating to the possession, transportation, use, maintenance and repair of the Equipment, including but not limited to, all OSHA laws and regulations. Lessee shall also comply with all applicable ANSI Standards. Lessee agrees to assume full responsibility for, and to the fullest extent allowed by applicable law, shall indemnify, defend and save Lessor harmless against actual or asserted violations thereof, including all losses, damages, expenses, fines, forfeitures, seizures, confiscations, and penalties arising out of any such laws and regulations.

4. Title: All Equipment shall remain the property of Lessor at all times. Any attachments, accessions, replacement parts, repairs or additions to the Equipment shall automatically become Lessor's property. Lessee shall keep the Equipment free from any and all liens, encumbrances and claims whatsoever, and shall not do or permit any act which may encumber or impair Lessor's title or rights in the Equipment. Upon Lessor's request, Lessee shall promptly execute and/or deliver to Lessor all documentation (such as estoppel certificates or a landlord waiver), as Lessor deems necessary or appropriate for the preservation, perfection or enforcement of Lessor's interests in the Equipment and Lessor's rights under this Agreement, and if Lessee fails to do so, Lessor may execute such documents on Lessee's behalf and in Lessee's name.

5. Acceptance: Lessee shall inspect the equipment immediately upon delivery. The equipment is deemed accepted unless within 24 hours of delivery the Lessee notifies Lessor in writing that the equipment is not serviceable, specifying the reason(s) therefore. Acceptance of the equipment constitutes the Lessee's acknowledgement that it has inspected the equipment and it is in good, safe, serviceable condition, and fit for the use intended. If the equipment thereafter proves defective or unfit for use, Lessor's liabilities and responsibilities are defined in Paragraph 8 (warranties). Consistent with Paragraph 8, Lessor's sole responsibility is to repair or replace the equipment. At Lessee's option, Lessee's sole remedy is to return the Equipment and terminate the Lease. If Lessee elects to terminate the Lease, Lessee shall pay all rental and other amounts due prior to termination, which shall never be less than rent due for the minimum rental period, transportation charges, and any outstanding costs of repairs.

6. Insurance: Lessee, at its expense, shall take out, carry and maintain the insurance specified herein and in the insurance addendum attached hereto, in full force during the term of this Lease, and prior to taking delivery of the Equipment:

   a. Primary, non-contributing without regard to any "Other Insurance" clause, comprehensive general liability insurance, including contractual liability, protecting against liability for property damage and personal injury or death arising out of the possession, use, operation, maintenance and repair of the Equipment, with limits of liability not less than $2,000,000 each occurrence; and a $2,000,000 general aggregate;

   b. Automobile liability, protecting against liability for property damage and personal injury or death arising out of the possession, use, operation and transportation of the Equipment, with limits of liability not less than $1,000,000 each occurrence;

   c. Inland marine all risk coverage (physical damage insurance), with any overload, boom and jib exclusion deleted, for the full replacement value of the Equipment in the amount indicated on the face hereof;

   d. Umbrella liability with limits of liability of not less than $3,000,000; and

   e. Workers' compensation and employer's liability insurance, in accordance with all applicable state and federal laws, with limits of at least the statutory minimum or $1,000,000.00, whichever is greater.

All insurance required hereunder shall be deemed primary, non-contributory insurance of Lessor; shall name Lessor as an additional insured party (using ISO Form GC 20 10 or equivalent) and loss payee; shall be maintained with insurance companies with an A.M. Best rating of A- or higher and licensed and/or authorized to do business in the jurisdiction of the jobsite location; shall provide a waiver of subrogation with respect to the general liability, excess, inland marine all risk and auto coverage; and shall provide that the coverage thereunder may be altered or canceled only after not less than 30 days prior written notice to Lessor. Lessee is solely responsible for any insurance premiums and deductibles, and loss of usage of the Equipment. No 'Other Insurance' provisions shall be applicable to Lessor or their underwriters by virtue of being named as an additional insured party and/or loss payee under the policy. Lessee shall furnish Lessor with certificate(s) of insurance evidencing such coverage. Lessor's policies shall be considered excess over all Lessee's policies. Indemnification obligations by Lessee under this Agreement are in addition to, and an alternative, to the insurance coverage required herein; and Lessee's maintenance of any such insurance coverage shall not operate to waive any such indemnification obligations. If Lessee fails to procure and maintain the required physical damage insurance coverage in accordance with this Section 6, Lessor shall have the right (but not the obligation), without notice and at Lessee's expense, to place such insurance coverage and/or enroll Lessee in any force-placed or waiver program maintained by Lessor from time to time, and Lessee shall pay the cost thereof upon the terms set forth in Lessor's invoice made in accordance with the provisions of Section 11 hereof. To the extent Lessee may perform under this Agreement without obtaining the required insurance coverage, such an occurrence shall not operate in any manner as a waiver of Lessor's right to maintain any breach of contract action against Lessee.

7. INDEMNIFICATION:
   a. TO THE FULLEST EXTENT PERMITTED BY TEXAS INSURANCE CODE CHAPTER 151 OR OTHER APPLICABLE LAW, AND EXCEPT AS SET OUT IN SUBPARAGRAPH (B) BELOW, LESSEE SHALL DEFEND, INDEMNIFY, AND HOLD HARMLESS THE LESSOR, ITS OFFICERS, DIRECTORS, SHAREHOLDERS, PARTNERS, MEMBERS, MANAGERS, EMPLOYEES, AFFILIATES, REPRESENTATIVES AND AGENTS ("INDEMNITEES") FROM ANY AND ALL ACTIONS, CAUSES OF ACTION, CLAIMS, SUITS, DEMANDS, INVESTIGATIONS, OBLIGATIONS, JUDGMENTS, LOSSES, COSTS, LIABILITIES, DAMAGES, FINES, PENALTIES AND EXPENSES, INCLUDING ATTORNEY FEES, WHICH ARE INCURRED BY, ACCRUED, ASSERTED, OR MADE AGAINST, OR RECOVERABLE FROM ANY OF THE INDEMNITEES ARISING FROM OR RELATING TO, DIRECTLY OR INDIRECTLY, THE LESSEE'S ACCEPTANCE, POSSESSION, TRANSPORT, USE, OPERATION, OR CONTROL OF THE EQUIPMENT, WHETHER OR NOT THE SAME ARISES FROM DAMAGE TO PROPERTY (REAL OR PERSONAL), INJURY OR DEATH TO PERSONS INCLUDING BUT NOT LIMITED TO LESSEE'S EMPLOYEES, AGENTS AND REPRESENTATIVES, FAILURE TO COMPLY WITH APPLICABLE LAWS, REGULATIONS AND ORDINANCES, EQUIPMENT CONDITION, LOSS OF USE OR SEIZURE OF EQUIPMENT, OR OTHERWISE, BUT ONLY TO THE EXTENT

BERK 000662

CAUSED IN WHOLE OR IN PART BY ANY NEGLIGENT ACT OR OMISSION OR ANY INTENTIONAL ACT OF LESSEE OR ANYONE DIRECTLY OR INDIRECTLY EMPLOYED BY LESSEE OR ANYONE FOR WHOSE ACTS LESSEE MAY BE LIABLE. LESSEE'S OBLIGATION TO DEFEND, HOLD HARMLESS AND INDEMNIFY THE INDEMNITEES SHALL SURVIVE THE TERMINATION OF THIS RENTAL AGREEMENT. IT IS EXPRESSLY AGREED THAT THIS INDEMNIFICATION CLAUSE APPLIES TO BOTH THIRD-PARTY CLAIMS AND ALL CLAIMS BETWEEN LESSOR AND LESSEE.

b. NOTWITHSTANDING THE FOREGOING, TO THE FULLEST EXTENT PERMITTED BY TEXAS INSURANCE CODE CHAPTER 151 OR OTHER APPLICABLE LAW, LESSEE SHALL DEFEND, INDEMNIFY, AND HOLD HARMLESS THE LESSOR, ITS OFFICERS, DIRECTORS, SHAREHOLDERS, PARTNERS, MEMBERS, MANAGERS, EMPLOYEES, AFFILIATES, REPRESENTATIVES AND AGENTS ("INDEMNITEES") FROM AND AGAINST ALL CLAIMS, DAMAGES, LOSSES AND EXPENSES, INCLUDING, BUT NOT LIMITED TO, ATTORNEYS FEES ARISING OUT OF OR RESULTING FROM BODILY INJURY TO, OR SICKNESS, DISEASE OR DEATH OF, ANY EMPLOYEE, AGENT OR REPRESENTATIVE OF LESSEE OR ANY OF ITS SUBCONTRACTORS, REGARDLESS OF WHETHER SUCH CLAIM, DAMAGE, LOSS OR EXPENSE IS CAUSED, OR IS ALLEGED TO BE CAUSED, IN WHOLE OR IN PART BY THE NEGLIGENCE OF ANY INDEMNITEE, IT BEING THE EXPRESSED INTENT OF LESSOR AND LESSEE THAT IN SUCH EVENT THE LESSEE IS TO INDEMNIFY, HOLD HARMLESS AND DEFEND THE INDEMNITEES FROM THE CONSEQUENCES OF THEIR OWN NEGLIGENCE WHETHER IT IS OR IS ALLEGED TO BE THE SOLE OR CONCURRING CAUSE OF THE BODILY INJURY, SICKNESS, DISEASE OR DEATH OF LESSEE'S EMPLOYEE OR THE EMPLOYEE OF ANY OF ITS SUBCONTRACTORS. THE INDEMNIFICATION OBLIGATIONS UNDER THIS PARAGRAPH SHALL NOT BE LIMITED BY ANY LIMITATION ON THE AMOUNT OR TYPE OF DAMAGES, COMPENSATION OR BENEFITS PAYABLE BY OR FOR LESSEE UNDER WORKERS' COMPENATION ACTS, DISABILITY BENEFIT ACTS OR OTHER EMPLOYEE BENEFIT ACTS. LESSEE SHALL PROCURE LIABILITY INSURANCE COVERING ITS OBLIGATIONS UNDER THIS PARAGRAPH. LESSEE EXPRESSLY AGREES TO WAIVE ANY WORKERS COMPENSATION IMMUNITY IT MAY HAVE. OTHERWISE

8. NO WARRANTIES: LESSOR WARRANTS THAT THE EQUIPMENT WILL BE DELIVERED IN GOOD OPERATING CONDITION. LESSOR'S SOLE RESPONSIBILITY UNDER THE ABOVE WARRANTY SHALL BE, AT ITS OPTION, TO EITHER REPAIR OR SUITABLY REPLACE THE EQUIPMENT WITHIN A COMMERCIALLY REASONABLE TIME. THE ABOVE WARRANTY IS CONTINGENT UPON PROPER USE OF THE EQUIPMENT BY LESSEE AND SHALL NOT APPLY IF ADJUSTMENT, REPAIR OR REPLACEMENT IS REQUIRED BECAUSE OF ACCIDENT, MISUSE, IMPROPER HANDLING, OPERATION, MAINTENANCE, UNUSUAL PHYSICAL STRESS OR WEATHER CONDITIONS. THE FOREGOING IS THE EXCLUSIVE AND ENTIRE WARRANTY GIVEN IN CONNECTION WITH THE EQUIPMENT WHICH EQUIPMENT IS OTHERWISE BEING LEASED IN "AS IS" CONDITION. LESSOR IS NOT THE MANUFACTURER OF THE EQUIPMENT. LESSOR MAKES NO OTHER WARRANTY AND EXPRESSLY DISCLAIMS ANY AND ALL EXPRESS AND IMPLIED WARRANTIES AS TO THE EQUIPMENT, INCLUDING ANY WARRANTY OF MERCHANTABILITY, OR FITNESS FOR A PARTICULAR PURPOSE. LESSOR SHALL NOT BE LIABLE FOR ANY DELAYS, WORK STOPPAGES, LOSS OF USE OF EQUIPMENT, LOST TIME, INCONVENIENCE, LOST PROFITS OR ANY OTHER DIRECT OR INDIRECT INCIDENTAL, SPECIAL OR CONSEQUENTIAL DAMAGES RELATING TO THE POSSESSION, TRANSPORT, USE, OPERATION, CONTROL, MAINTENANCE AND/OR REPAIR OF THE EQUIPMENT, OR ANY LOSS DAMAGE OR INJURY RESULTING THEREFROM.

9. Rent Adjustments: All Rental Rates are based on an 8 hour day (daily rentals), 40 hour week (weekly rentals), or 176 hour month (monthly rentals), on a single day-shift operation. Lessee shall pay a proportionate hourly charge for all excess hours of usage. Lessee shall not be entitled to any abatement, deduction, reduction, set-off, counterclaim, recoupment or defense against rent for any reason, including any non-working time of the Equipment (except as provided otherwise herein or as the parties hereto may agree in writing).

10. Transportation: The Equipment will be loaded at Lessor's expense F.O.B. Lessor's yard or other shipping point designated by Lessor. Lessee, at its own expense and risk, shall do all other loading, unloading, installation, dismantling and transportation of the Equipment and shall pay all other freight, demurrage, storage, switching, drayage, rigging, trucking or other transportation charges (including but not limited to, fuel costs and taxes, mileage charges, weight and road use permits, highway taxes and any other IFTA taxes) from the time of loading by Lessor to and including the time of the Equipment's return to Lessor, unless the parties hereto agree otherwise in writing. If the Equipment is transported on its own wheels, Lessee, at its own expense and risk, shall provide a responsible person (at least 21 years of age with a valid drivers license) to accompany the Equipment to and from the shipping and receiving point. Equipment shall be returned to the destination designated by Lessor.

11. Payment: In addition to the payment of the Rental Rate specified on the front of this Lease, Lessee shall pay Lessor upon demand:

a. all taxes, levies, assessments, fees and other public charges against or upon any of the Equipment, including, but not limited to, personal property taxes, if applicable.

b. all fines, penalties, forfeitures, court costs, expenses and attorneys fees arising with respect to Lessee's possession, transportation, use, maintenance or repair of the Equipment, including but not limited to any parking, traffic or other violations assessed against the Equipment, Lessor or Lessee.

c. Lessor's costs and expenses, including reasonable attorney's fees (unless prohibited by law), incurred in enforcing this Lease, collecting any amounts due hereunder, or in repossessing the Equipment.

d. All cost of repairs and any related expenses.

Any payments more than 30 days past due hereunder shall bear interest at 1.5% per month (or the maximum rate allowed by law, which ever is higher). Any and all personal property, sales (unless collected by Lessor), use or other taxes which may be applicable to the Equipment by reason of this Agreement or to the rental payments payable hereunder shall be paid and reported by Lessee directly to the appropriate governmental agency charged with the assessment and collection of such taxes, and evidence of such payments shall be provided to Lessor upon its request.

12. Inspection, Maintenance, Repairs and Record Keeping Requirements: Lessee shall effect and bear the expense of all necessary inspections, maintenance, adjustments and repairs required by the Equipment operators manual and by law, and shall maintain the Equipment at Lessee's expense in good working condition (including making all repairs occasioned by any accident). Lessee shall be responsible for performing all normal basic service, including filters, lubricants, lubrications, protection against freezing and restoration of parts affected by abnormal exposure. While Lessor shall have the right to inspect the Equipment at any time during normal business hours, Lessee agrees that Lessor has no control over the operation, use, maintenance or repair of the Equipment when it is in Lessee's possession, supervision or control. Lessor shall have prompt access to the Equipment to properly maintain and repair same if Lessee fails to do so or upon Lessor's demand, all at Lessee's cost. Lessor retains the right to make or direct all repairs occasioned by any accident, all at Lessee's expense. All repairs must meet manufacturer specifications and equipment be certified by the manufacturer. OSHA regulations pertaining to the equipment require daily, monthly (or other periodic) and annual inspections. Lessee is solely responsible for conducting these inspections and for otherwise ensuring that the Equipment meets, and is operated in accordance with, OSHA requirements and ANSI Standards. Lessor also furnishes the following items with each crane to assist Lessee with OSHA compliance: crane logbook; operator's manual; fire extinguisher; and, load chart. Lessee will be charged a replacement fee equal to the cost to replace each missing item not returned with the Equipment. Lessee shall keep a written record of all inspections and shall be responsible for maintaining the crane log book while the Equipment is in Lessee's possession. Lessee shall be solely responsible for any liability imposed by Lessee's failure to maintain inspection records and crane log books while the Equipment is in Lessee's possession.

BERK 000663

13. **Damage:** Lessee shall immediately notify Lessor of any damage to the Equipment. All repairs to the Equipment occasioned by damage during the term hereof shall be at the expense of Lessee (excluding latent manufacturing defects). All repairs must be authorized by Lessor. All repairs must meet manufacturer specifications and the Equipment must be certified by the manufacturer. If Lessor determines that the returned Equipment has been subjected to damage, excess wear and tear or improper usage, Lessee agrees to pay Lessor upon demand all costs to restore or repair the Equipment, ordinary wear and tear from normal use excepted. Lessee exclusively bears risk of loss or damage to the Equipment, accidental or otherwise (excluding latent manufacturing defects) including but not limited to, fire, flood, theft, comprehensive losses, collision, rollover and Acts of God. Lessor and Lessee acknowledge and agree that the replacement value(s) stated on the face hereof shall be used to determine the value of the Equipment in order to establish the amount of the loss or damage thereto. Rental payments shall not be applied to loss or damage claims. The Lease term and rental period shall continue to run while the Equipment is being repaired and shall continue to run until all repairs are completed and paid.

14. **Accidents:** Lessee shall immediately notify Lessor of any accident involving the Equipment, including but not limited to, personal injury and/or property damage arising from the transportation, possession, use, maintenance or repair of the Equipment so that Lessor's ability to investigate the accident is not prejudiced. Lessor shall have immediate access to, and right of retrieval and repair of, the Equipment. Lessee shall not remove equipment or components from site. Lessor shall make or have the right to direct all repairs occasioned by any accident at Lessee's expense. All repairs shall meet manufacturer specifications and approval. Lessee shall immediately deliver any summons, pleading, notice or paper of any kind involving any claim, suit or proceeding relating to any accident or event involving the Equipment to Lessor. Lessee shall not aid or abet the assertion of any such claim, suit or preceding and shall fully cooperate with Lessor in investigating and defending the same.

15. **Default:** Time is of the essence with respect to Lessee's performance of its obligations under this Agreement. Lessor may declare this Lease in default if any one or more of the following occurs: (a) Lessee fails to make any payment required hereunder when due; (b) Lessee fails to maintain in force at all times the required insurance; (c) Lessee fails to properly operate, maintain or repair the Equipment; (d) Lessee fails to observe or perform any other covenant or requirement of this Lease, which failure is not cured to Lessor's satisfaction within five (5) days after Lessor's notice to Lessee thereof; (e) Lessee attempts to sell, transfer or encumber the Equipment; (f) a voluntary or involuntary proceeding is instituted in any court of competent jurisdiction, seeking a decree or order (i) for relief in respect of Lessee under any applicable bankruptcy, insolvency, reorganization, assignment for the benefit of creditors, or other similar law, or (ii) for the appointment of a receiver, liquidator, assignee, custodian, trustee, sequestrator or similar official of Lessee or its property, or (iii) for the winding up or liquidation of the Lessee's affairs; (g) Lessee shall generally fail to pay its debts as they come due; and/or (h) Lessee, in Lessor's opinion, shall become financially insecure. At any time after such declaration, Lessor may enter, with or without legal process, any premises where the Equipment is located and take possession thereof. Lessee shall provide Lessor with unobstructed ingress and egress for such purpose. Furthermore, Lessee shall immediately pay to Lessor all amounts then due hereunder and all costs of removal and repossession of the Equipment. Lessor's remedies herein shall be cumulative and are in addition to all other remedies existing at law or in equity, including but not limited to, (a) terminate this Agreement and all rights of Lessee hereunder, (b) to declare the entire unpaid rent due (including any rent accruing during any minimum rental term) to be immediately due and payable; (c) to enter the premises where the Equipment is located, take possession of and remove the Equipment or render the Equipment inoperable, with or without legal process; (d) to demand that Lessee surrender and deliver up possession of the Equipment to Lessor; (e) with or without terminating this Agreement, to re-let the Equipment on such terms and conditions as are then available and otherwise acceptable to Lessor, and apply rent payments received, after deduction of all costs and expenses incurred by Lessor, to amounts due from Lessee under this Agreement; and (f) within Lessor's sole discretion, but without any obligation, to take such action or make any payment to remedy any default, including but not limited to, procuring any required insurance coverage, paying any fine, imposition, penalty, taxes or fees incurred to recover and/or release the Equipment from any forfeiture, seizure, confiscation or similar proceeding, or from any lien or other encumbrance imposed on the Equipment, all such payments of which shall be reimbursed by Lessee. In addition to the payment of any amounts due Lessor hereunder, Lessee shall be responsible for and shall reimburse Lessor for all costs and expenses incurred by Lessor in connection with the exercise of any rights and remedies hereunder, including all expenses incurred in the removal and transportation of the Equipment to Lessor's premises, any cleaning, service and/or repair of the Equipment, and in the enforcement of the terms and conditions of this Agreement or damages recoverable hereunder, including costs of collection and reasonable attorney's fees (including fees and expenses incurred in any bankruptcy proceeding or on appeal).

16. **No Assignment or Sub-Lease:** This Lease may not be assigned by Lessee and the Equipment may not be offered by Lessee for use or sublet to any other person or entity without Lessor's prior written consent (which consent may be withheld for any reason). Any consent by Lessor to an assignment or sub-lease shall not release Lessee from any obligations under this Lease.

17. **Jury Waiver:** UNLESS PROHIBITED BY LAW, LESSEE AND LESSOR EACH KNOWINGLY, UNCONDITIONALLY, AND IRREVOCABLY WAIVE TRIAL BY JURY WITH RESPECT TO ANY ACTION, CLAIM, SUIT OR PROCEEDING, WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE, IN RESPECT OF, ARISING OUT OF, RELATED TO, OR INCIDENTAL TO THE RELATIONSHIP ESTABLISHED BETWEEN THEM (OR AS TO ANY THIRD PARTIES) IN CONNECTION WITH THIS LEASE, ANY OTHER DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH, THE CONDUCT OF THE PARTIES, OR THE TRANSACTIONS RELATED HERETO.

18. **Full Agreement; Governing Law; Waiver; Severability:** This Lease, together with any addenda attached, constitute the full agreement of Lessor and Lessee. Any changes to this Lease must be evidenced in writing signed by Lessor and Lessee. This Lease shall be binding upon and shall inure to the benefit of the parties hereto, their respective successors and permitted assigns. The law of the state where the Equipment is delivered, assembled, inspected and operated shall control this Lease. Lessee agrees that exclusive jurisdiction to bring and maintain any action or proceeding arising out of or related to this Agreement shall be brought in the county of the state, or in the United States District Court where the Equipment is delivered, assembled, inspected and operated as set forth herein. Headings are provided for convenience only, not for interpretation of this Lease. Lessor and Lessee are independent contractors, and neither Lessee nor any operator of the Equipment shall be deemed to be the agent, servant or employee of Lessor for any reason or purpose. No failure of Lessor to enforce performance of any terms or covenants, or to exercise or delay in exercising any right, under this Lease shall operate as a waiver thereof; nor shall any single or partial exercise of any right hereunder preclude any other or further exercise thereof or the exercise of any other right. If any provision of this Lease is held to be invalid or illegal by a Court of competent jurisdiction, the invalid or illegal term will be deemed excluded from this Lease and will not invalidate the remaining terms of this Lease.

19. **Lessor's Right To Effect Compliance:** If Lessee fails to comply with any provision of this Agreement including, but not limited to, the obligation to pay or satisfy any taxes, liens, insurance premiums or other charges, Lessor shall have the right, but shall not be obligated, to effect such compliance in whole or in part, and all costs and expenses shall be paid by Lessee immediately upon demand by Lessor. Lessor's effecting such compliance shall not constitute a waiver of any default by Lessee hereunder.

20. **Lifting Lugs, Rigging And Apparatus:** Lessee hereby assumes all responsibility and liability to ensure the adequacy of design and strength of any lifting lug or device embedded in or attached to any object, and any and all rigging or lifting apparatus (even if such rigging or lifting apparatus is supplied by Lessor to Lessee), and Lessee will indemnify and hold Lessor harmless from any and all actions, causes of action, claims, suits, demands, investigations, obligations, judgments, losses, costs, liabilities, damages, fines, penalties and expenses, including attorney's fees arising or resulting from any failures or defects therefrom.

21. **Assembly and Disassembly:** The parties agree that any and all Equipment mobilization and/or demobilization costs including but not limited to, assembly, erection, reconfiguration, disassembly or other movement of the Equipment, were quoted by Lessor based on "Standard Activity". Standard Activity means mobilization and demobilization during the following minimum weather conditions, and otherwise absent a force majeure, (i) ambient temperature in excess of twenty (20) degrees Fahrenheit; (ii) sustained winds (including gusts) less than twenty (20) miles per hour; (iii) no precipitation

BERK 000664

In the form of snow or ice; or (iv) minor precipitation in the form of rain (less than one (1) inch per twenty-four (24) hour period. Rates for Standard Activity apply eight (8) hours per day Monday through Friday (excluding holidays). Rates for mobilization and/or demobilization which do not fall within Standard Activity (the "Non-Standard Rates") shall be provided to Lessee prior to any such costs being incurred and the parties hereto shall cooperate in good faith to schedule such mobilization and/or demobilization on a cost efficient basis.

BERK 000665

# RENTAL EQUIPMENT SERVICE POLICY

The United State Department of Labor ("DOL") and the Occupational Health and Safety Administration ("OSHA") provide that anyone operating a crane be required to perform a safety check of the equipment prior to each shift of operation. These pre-operational inspections require all fluid levels to be checked prior to each shift of operation and all operational safety equipment to be in operating condition prior to equipment use. Also, OSHA requires written documentation of these and other inspections to remain in compliance with the laws. Maxim Crane Works, L.P. ("Maxim") provides a log book in every crane to assist you in complying with the government regulations. Maxim will track all reported machine malfunctions with the help of your assigned competent equipment operator. Maxim provides annual inspections at no additional charge to help maintain compliance with OSHA laws and regulations.

As a customer of Maxim renting equipment on a bare-rental basis, you are responsible for the daily, weekly and monthly inspection, as well as maintenance and repair of the Maxim equipment in your possession. To be in compliance with OSHA regulations, you must perform the following maintenance and operating procedures:

- Ensure that the equipment is operated only by competent persons trained to operate the specific make and model of the crane provided.

- Coordinate all repairs with the Maxim Service Department to ensure that the equipment is in a safe working condition and complies with OSHA and other state and local regulations.

- Complete the DAILY CRANE LOG:
Ensure that all operators accurately complete the DAILY CRANE LOG located in the document compartment of the crane. Instructions on completing the DAILY CRANE LOG are located on the inside cover. ENTRIES INTO THE DAILY CRANE LOG ARE MANDATORY AS PRESCRIBED BY OCCUPATIONAL SAFETY AND HEALTH ACT SECTIONS 1910 AND 1926.
To help you stay in compliance with the laws:
  - All deficiencies noted on Forms C4 and C5, maintained on the DAILY CRANE LOG shall be faxed to the MAXIM Service Manager listed below immediately after deficiencies are noted. The Service Manager will track the completion of each repair on a Maxim work-order. The requestor shall be notified when the necessary repairs have been completed.

- Completion of DAILY LUBRICATION, INSPECTION AND MAINTENANCE:
Document all inspection, lubrication and maintenance of the equipment prior to use (on a daily, weekly and monthly basis) as specified by the equipment manufacturer on the DAILY INSPECTION LOG (FORM C3).
  - A summary of required inspections, maintenance and lubrication procedures are detailed in the equipment operator's manual.

Customers are responsible for returning the equipment in the same condition as when delivered, ordinary wear and tear accepted. Any damage to the equipment resulting from failure to maintain or care for the equipment, abuse of the equipment, operation of the equipment under abnormal or unreasonable conditions or any other cause, accidental or otherwise is the customer's responsibility (excluding a latent manufacturer's defect or Maxim negligence).

MAXIM SERIVCE: The Maxim Service Department will perform all Long Term Preventative Maintenance ("LTPM") pursuant to a two-hundred and fifty (250) engine hour cycle or every three months (whichever is first to occur). LTPM includes, but is not limited to, a complete inspection of the crane/equipment and full oil and lube service pursuant to manufacturer specifications. Maxim will charge you for all such LTPM service work and any resulting repairs except in those cases where the condition(s) necessitating the repair work results from ordinary wear and tear to the equipment (or a latent manufacturer's defect or Maxim negligence). The charge to you for such service and repair work will be for: (i) labor (at the hourly service charge in effect and based on portal-to-portal determination); (ii) transportation costs; and (iii) parts and materials.

Maxim Service Department site labor rate: _____

Fixed Portal to Portal charge: _____

Service Option:

☐  1.  MAXIM SERVICE OPTION:   I elect to have Maxim perform LTPM service as described above.

☐  2.  CUSTOMER SERVICE OPTION: I elect to self-perform LTPM in accordance with manufacturer specification.
        a.  Upon Maxim's request customer is required to give Maxim access to inspect the equipment and maintenance records. If customer does not service crane in accordance with manufactures prescribed service intervals, Maxim will service the crane and charge the customer pursuant to Option 1

BERK 000666

Maxim will respond within 24 hours for emergency repairs. For service performed other than during normal working hours, customers will be responsible for the difference between the straight time rates and the applicable overtime rates that are in effect at the time of service.

Upon arrival at a job site, at a time and date predetermined by the Maxim Service Manager and the Customer Site Supervisor, Maxim's personnel shall have access to the equipment to begin operations within one (1) hour of arrival. Excessive time is chargeable item to customer's account.

Upon termination of the rental, the equipment will be returned to Maxim's yard for inspection. Should there be any damages for which the customer is responsible; Maxim will invoice you for these damages under the same purchase order as the rental.

Maxim will notify you of any charges in a timely manner. Should you have any questions concerning the charges, please contact our Service Department.

Maxim Service Manager: _____

Office number: _____

FAX NUMBER: _____

Cell Phone Number: _____

Maxim assumes no responsibility for labor back charges due to downtime. However, every effort will be made to minimize downtime.

## EQUAL OPPORTUNITY EMPLOYER

BERK 000667

## INSURANCE REQUIREMENTS

1. Lessee, at its expense, shall take out, carry and maintain the insurance specified herein and in the insurance addendum attached hereto, in full force during the term of this Lease, and prior to taking delivery of the Equipment:

   a. Primary, non-contributing, without regard to any "Other Insurance" clause, comprehensive general liability insurance, including contractual liability, protecting against liability for property damage and personal injury or death arising out of the possession, use, operation, maintenance and repair of the Equipment, with limits of liability not less than $2,000,000 each occurrence; and a $2,000,000 general aggregate (a non-contributory excess/umbrella policy may be utilized to meet minimum per occurrence coverage and aggregate limits);

   b. Automobile liability, protecting against liability for property damage and personal injury or death arising out of the possession, use, operation and transportation of the Equipment, with limits of liability not less than $ 1,000,000 each occurrence;

   c. Inland marine all risk coverage (physical damage insurance), with any overload, boom and jib exclusion deleted, for the full replacement value of the Equipment in the amount indicated on the face hereof;

   d. Umbrella liability with limits of liability of not less than $3,000,000; and

   e. Workers' compensation and employer's liability insurance, in accordance with all applicable state and federal laws, with limits of at least the statutory minimum or $1,000,000.00, whichever is greater.

2. All insurance required hereunder shall be deemed primary, non-contributing, without regard to any "other insurance" clause, insurance of Lessor; shall name Lessor as an additional insured party (using ISO Form GC 20 10 or equivalent) and loss payee, and shall be maintained with insurance companies with an A.M. Best rating of A- or higher and licensed or authorized to do business in the jurisdiction of the jobsite location

3. All insurance required hereunder shall be maintained with responsible insurance companies of recognized standing.

4. Waiver of subrogation with respect to the general liability, excess, inland marine all risk and auto coverage required.

5. Coverage may not be altered or canceled without 30 days prior written notice to Lessor.

6. Lessee is solely responsible for any insurance premiums and deductibles, and loss of usage of the Equipment.

7. No "Other Insurance" provisions shall be applicable to Lessor or their underwriters by virtue of being named as an additional insured party and/or loss payee under the policy.

8. Lessee shall furnish Lessor with certificate(s) of insurance evidencing such coverage.

9. Lessor's policies shall be considered excess over all Lessee's policies.

10. Equipment to be covered:

    a. Manufacture/Model/Serial Number/Unit Number:

    b. Value:

Please fax and mail your certificate of insurance to the address below:

| | |
|---|---|
| Address: | 840 Licking Pike, Wilder KY, 41076 |
| Phone: | 859-441-7400 |
| Fax: | 859-442-6202 |

Hidden:
1530003 - Links the embedded view with it's parent

BERK 000668

# Exhibit C

# QUESTION NO. 7

Did Berkel & Company Contractors fail to comply with the Bare Rental Agreement with Maxim Crane Works?

Answer "Yes" or "No"

Answer: _____

Texas PJC. 101.2

Accepted _____          Rejected _____

If you have answered "Yes" to Question No. 7 is "Yes," then answer the following question. Otherwise, do not answer the following question.

Exhibit D

| | | |
|---|---|---|
| TYLER LEE AND LEIGH ANN LEE, INDIVIDUALLY AND AS NEXT FRIEND OF SYDNEY ROSE LEE, MINOR | §<br>§<br>§<br>§ | IN THE DISTRICT COURT OF |
| PLAINTIFFS | §<br>§ | |
| V. | §<br>§ | BRAZORIA COUNTY, TEXAS |
| BERKEL & COMPANY CONTRACTORS, INC., MAXIM CRANE WORKS, L.P., | §<br>§<br>§<br>§ | |
| DEFENDANTS | §<br>§ | 149TH JUDICIAL DISTRICT |

## CHARGE OF THE COURT

**Members of the Jury:**

After the closing arguments, you will go to the jury room to decide the case, answer the questions that are attached, and reach a verdict. You may discuss the case with other jurors only when you are all together in the jury room.

Remember my previous instructions: Do not discuss the case with anyone else, either in person or by any other means. Do not do any independent investigation about the case or conduct any research. Do not look up any words in dictionaries or on the Internet. Do not post information about the case on the Internet. Do not share any special knowledge or experiences with the other jurors. Do not use your phone or any other electronic device during your deliberations for any reason. I have given you a number where others may contact you in case of an emergency.

Any notes you have taken are for your own personal use. You may take your notes back into the jury room and consult them during deliberations, but do not show or read your notes to your fellow jurors during your deliberations. Your notes are not evidence. Each of you should rely on your independent recollection of the evidence and not be influenced by the fact that another juror has or has not taken notes.

You must leave your notes with the bailiff when you are not deliberating. The bailiff will give your notes to me promptly after collecting them from you. I will make sure your notes are kept in a safe, secure location and not disclosed to anyone. After you complete your deliberations, the bailiff will collect your notes. When you are released from jury duty, the bailiff will promptly destroy your notes so that nobody can read what you wrote.

Here are the instructions for answering the questions.

1

1. Do not let bias, prejudice, or sympathy play any part in your decision.

2. Base your answers only on the evidence admitted in court and on the law that is in these instructions and questions. Do not consider or discuss any evidence that was not admitted in the courtroom.

3. You are to make up your own minds about the facts. You are the sole judges of the credibility of the witnesses and the weight to give their testimony. But on matters of law, you must follow all of my instructions.

4. If my instructions use a word in a way that is different from its ordinary meaning, use the meaning I give you, which will be a proper legal definition.

5. All the questions and answers are important. No one should say that any question or answer is not important.

6. Answer "yes" or "no" to all questions unless you are told otherwise. A "yes" answer must be based on a preponderance of the evidence unless you are told otherwise. Whenever a question requires an answer other than "yes" or "no," your answer must be based on a preponderance of the evidence unless you are told otherwise.

The term "preponderance of the evidence" means the greater weight of credible evidence presented in this case. If you do not find that a preponderance of the evidence supports a "yes" answer, then answer "no." A preponderance of the evidence is not measured by the number of witnesses or by the number of documents admitted in evidence. For a fact to be proved by a preponderance of the evidence, you must find that the fact is more likely true than not true.

A fact may be established by direct evidence or by circumstantial evidence or both. A fact is established by direct evidence when proved by documentary evidence or by witnesses who saw the act done or heard the words spoken. A fact is established by circumstantial evidence when it may be fairly and reasonably inferred from other facts proved.

7. Do not decide who you think should win before you answer the questions and then just answer the questions to match your decision. Answer each question carefully without considering who will win. Do not discuss or consider the effect your answers will have.

8. Do not answer questions by drawing straws or by any method of chance.

9. Some questions might ask you for a dollar amount. Do not agree in advance to decide on a dollar amount by adding up each juror's amount and then figuring the average.

10. Do not trade your answers. For example, do not say, "I will answer this question your way if you answer another question my way."

11. Unless otherwise instructed, the answers to the questions must be based on the decision of at least 10 of the 12 jurors. The same 10 jurors must agree on every answer. Do not agree to be bound by a vote of anything less than 10 jurors, even if it would be a majority.

As I have said before, if you do not follow these instructions, you will be guilty of juror misconduct, and I might have to order a new trial and start this process over again. This would waste your time and the parties' money, and would require the taxpayers of this county to pay for another trial. If a juror breaks any of these rules, tell that person to stop and report it to me immediately.

## DEFINITIONS AND GENERAL INSTRUCTIONS

You are instructed that any monetary recovery for damages awarded in response to Questions 5-7 is not subject to income taxes.

You are instructed that evidence of Berkel's net worth is relevant only to the amount of punitive damages, if any, and may not be considered by you in determining the amount of compensatory damages, if any.

3

# QUESTION 1

Did the negligence, if any, of any of the parties named below proximately cause the occurrence in question?

"Berkel" means Berkel & Company Contractors, Inc. and its employees.

"Maxim" means Maxim Crane Works, L.P. and its employees.

"Negligence" means failure to use ordinary care, that is, failing to do that which a person of ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances.

"Ordinary care" means that degree of care that would be used by a person of ordinary prudence under the same or similar circumstances.

"Proximate cause" means a cause that was a substantial factor in bringing about an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

Answer "Yes" or "No" with respect to each of the following:

a. Berkel      Answer: _Yes_

b. Maxim      Answer: _Yes_

4

If your answer to Question 1 is "Yes" for Berkel, then answer the following question. Otherwise, do not answer the following question.

## QUESTION 2

Did a Berkel employee acting in the course and scope of his employment believe that injury was substantially certain to result from his conduct on the date in question?

"Berkel" means Berkel & Company Contractors, Inc. and its employees acting in the course and scope of their employment.

An employer is responsible for the actions of its employees committed in the course and scope of their employment, which may include intentional actions that are closely connected with the employee's authorized duties.

Answer "Yes" or "No."

Answer: _Yes_

5

If your answer to Question 2 is "Yes," then answer the following question. Otherwise, do not answer the following question.

## QUESTION 3

Was the conduct you have found in Question 2 the conduct of a vice principal or manager of Berkel?

A person is a "vice-principal" if that person is a corporate officer; or that person has authority to employ, direct, and discharge an employee of the company; or that person is engaged in the performance of nondelegable or absolute duties of the company; or the company has confided to that person the management of the whole or a department or division of the business of the company.

A person is a manager or is employed in a managerial capacity if that person has authority to employ, direct, and discharge an employee of the company; or the company has confided to that person the management of the whole or a department or division of the business of the company.

Answer "Yes" or "No."

Answer: __Yes__

6

If you answered "Yes" to Question 1 for more than one of those named below, then answer the following question. Otherwise, do not answer the following question.

## QUESTION 4

Assign percentages of responsibility only to those you found caused or contributed to cause the occurrence. The percentages you find must total 100 percent. The percentages must be expressed in whole numbers. The percentage of responsibility attributable to any one is not necessarily measured by the number of acts or omissions found. The percentage attributable to any one need not be the same percentage attributed to that one in answering another question.

For each party you have found caused or contributed to cause the occurrence in question, find the percentage of responsibility attributable to each:

a.   Berkel      Answer: _____90%_____

b.   Maxim      Answer: _____10%_____

Total                     ___100___ %

7

If you have answered "Yes" to Question 1, then answer the following question. Otherwise, do not answer the following question.

## QUESTION 5

What sum of money, if paid now in cash, would fairly and reasonably compensate Tyler Lee for his injuries, if any, that resulted from the occurrence in question?

Consider the elements of damages listed below and none other. Consider each element separately. Do not award any sum of money on any element if you have otherwise, under some other element, awarded a sum of money for the same loss. That is, do not compensate twice for the same loss, if any. Do not include interest on any amount of damages you find.

Answer separately, in dollars and cents, for damages, if any. Do not reduce the amounts, if any, in your answers because of the negligence, if any, of any party. Any recovery will be determined by the court when it applies the law to your answers at the time of judgment.

a. Medical care expenses actually paid or incurred in the past.

Answer: $192,000

b. Medical care expenses that, in reasonable probability, Tyler Lee will incur in the future.

Answer: $11,601,006

c. Physical impairment sustained in the past.

Answer: $1,000,000

d. Physical impairment that, in reasonable probability, Tyler Lee will sustain in the future.

Answer: $7,200,000

e. Physical pain and mental anguish sustained in the past.

Answer: $3,000,000

f. Physical pain and mental anguish that, in reasonable probability, Tyler Lee will sustain in the future.

Answer: $4,500,000

g. Disfigurement sustained in the past.

Answer: $2,000,000

8

h.    Disfigurement that, in reasonable probability, Tyler Lee will sustain in the future.

Answer: $3,000,000

i.    Loss of earning capacity that, in reasonable probability, Tyler Lee will sustain in the future.

Answer: $2,200,000

9

If you have answered "Yes" to Question 1, then answer the following question. Otherwise, do not answer the following question.

## QUESTION 6

What sum of money, if paid now in cash, would fairly and reasonably compensate Leigh Ann Lee for injuries, if any, to her husband, Tyler Lee, that resulted from the occurrence in question?

Consider the elements of damages listed below and none other. Consider each element separately. Do not award any sum of money on any element if you have otherwise, under some other element, awarded a sum of money for the same loss. That is, do not compensate twice for the same loss, if any. Do not include interest on any amount of damages you find.

Answer separately, in dollars and cents, for damages, if any. Do not reduce the amounts, if any, in your answers because of the negligence, if any, of any party. Any recovery will be determined by the court when it applies the law to your answers at the time of judgment.

a.  Loss of household services sustained in the past.

"Household services" means the performance of household and domestic duties by a spouse to the marriage.

Answer: _____0_____

b.  Loss of household services, that in reasonable probability, Leigh Ann Lee will sustain in the future.

Answer: _____0_____

c.  Loss of consortium sustained in the past.

"Consortium" means the mutual right of the husband and wife to that affection, solace, comfort, companionship, society, assistance, sexual relations, emotional support, love and felicity necessary to a successful marriage.

Answer: $100,000

d.  Loss of consortium that, in reasonable probability, Leigh Ann Lee will sustain in the future.

Answer: $100,000

10

If you have answered "Yes" to Question 1, then answer the following question. Otherwise, do not answer the following question.

### QUESTION 7

What sum of money, if paid now in cash, would fairly and reasonably compensate Sydney Rose Lee, for the loss, if any, of parental consortium that resulted from the physical injury to Tyler Lee?

"Parental consortium" means the positive benefits flowing from the parent's love, affection, protection, emotional support, services, companionship, care, and society.

In considering your answer to this question, you may consider only the following factors: the severity of the injury to the parent and its actual effect on the parent-child relationship, the child's age, the nature of the child's relationship with the parent, the child's emotional and physical characteristics, and whether other consortium-giving relationships are available to the child.

Do not include interest on any amount of damages you find. Do not reduce the amounts, if any, in your answer because of the negligence, if any, of any party. Any recovery will be determined by the court when it applies the law to your answers at the time of judgment.

Answer in dollars and cents for damages, if any, that—

a.    were sustained in the past.

Answer: $50,000

b.    in reasonable probability will be sustained in the future.

Answer: $500,000

11

Answer the following question regarding Berkel only if you unanimously answered "Yes" to Question 1 regarding Berkel. Otherwise, do not answer the following question.

To answer "Yes" to any part of the following question, your answer must be unanimous. You may answer "No" to a part of the following question only upon a vote of ten or more jurors. Otherwise, you must not answer that part of the following question.

## QUESTION 8

Do you find by clear and convincing evidence that the harm to Tyler Lee resulted from gross negligence attributable to Berkel?

"Clear and convincing evidence" means the measure or degree of proof that produces a firm belief or conviction of the truth of the allegations sought to be established.

"Gross negligence" means an act or omission by Chris Miller,

(a) which when viewed objectively from the standpoint of Miller at the time of its occurrence involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and

(b) of which Miller had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others.

You are further instructed that Berkel may be grossly negligent because of an act by Chris Miller if, but only if—

1. Miller was employed as a vice principal or in a managerial capacity and was acting in the scope of employment, or

2. Berkel or a vice principal or manager or the company ratified or approved the act.

A person is a "vice-principal" if that person is a corporate officer; or that person has authority to employ, direct, and discharge an employee of the company; or that person is engaged in the performance of nondelegable or absolute duties of the company; or the company has confided to that person the management of the whole or a department or division of the business of the company.

A person is a manager or is employed in a managerial capacity if that person has authority to employ, direct, and discharge an employee of the company; or the company has confided to that person the management of the whole or a department or division of the business of the company.

Answer "Yes" or "No."

Answer: _Yes_

12

Answer the following question only if you unanimously answered "Yes" to Question 8. Otherwise, do not answer the following question.

## QUESTION 9

You are instructed that you must unanimously agree on the amount of any award of exemplary damages.

What sum of money, if any, should be assessed against Berkel and awarded to Tyler Lee as exemplary damages for the conduct found in Question 8?

"Exemplary damages" means any damages awarded as a penalty or by way of punishment but not for compensatory purposes. Exemplary damages includes punitive damages.

Factors to consider in awarding exemplary damages, if any, are—

1.   The nature of the wrong.

2.   The character of the conduct involved.

3.   The degree of culpability of the wrongdoer.

4.   The situation and sensibilities of the parties concerned.

5.   The extent to which such conduct offends a public sense of justice and propriety.

6.   Berkel's net worth.

Answer in dollars and cents, if any.

Answer: _$8,500,000_

13

FILED

at 9:08 o'clock a M.

MAY - 5 2015

_Zona Burchel_
Clerk of District Court Brazoria Co., Texas
BY_____DEPUTY

## CONCLUDING INSTRUCTIONS

### Presiding Juror:

1.      When you go into the jury room to answer the questions, the first thing you will need to do is choose a presiding juror.

2.      The presiding juror has these duties:

a.      have the complete charge read aloud if it will be helpful to your deliberations;

b.      preside over your deliberations, meaning manage the discussions, and see that you follow these instructions;

c.      give written questions or comments to the bailiff who will give them to the judge;

d.      write down the answers you agree on;

e.      get the signatures for the verdict certificate; and

f.      notify the bailiff that you have reached a verdict.

Do you understand the duties of the presiding juror? If you do not, please tell me now.

### Instructions for Signing the Verdict Certificate:

1.      Unless otherwise instructed, you may answer the questions on a vote of ten jurors. The same ten jurors must agree on every answer in the charge.  This means you may not have one group of ten jurors agree on one answer and a different group of ten jurors agree on another answer.

2.      If ten jurors agree on every answer, those ten jurors sign the verdict.  If eleven jurors agree on every answer, those eleven jurors sign the verdict.  If all twelve of you agree on every answer, you are unanimous and only the presiding juror signs the verdict.

3.      All jurors should deliberate on every question. You may end up with all twelve of you agreeing on some answers, while only ten or eleven of you agree on other answers. But when you sign the verdict, only those ten who agree on every answer will sign the verdict.

4.      There are some special instructions before Questions 8 and 9 explaining how to answer those questions. Please follow the instructions. If all twelve of you answer those questions, you will need to complete a second verdict certificate for those questions.

Do you understand these instructions? If you do not, please tell me now.

_Terri Holder_
JUDGE PRESIDING

14

# Verdict Certificate

Check one:

_____ Our verdict is unanimous. All twelve of us have agreed to each and every answer. The presiding juror has signed the certificate for all twelve of us.

_____          _____

Signature of Presiding Juror Printed                Name of Presiding Juror

___✓___ Our verdict is not unanimous. Eleven of us have agreed to each and every answer and have signed the certificate below.

_____ Our verdict is not unanimous. Ten of us have agreed to each and every answer and have signed the certificate below.

| | Signature | Named Printed |
|---|---|---|
| 1. | *Blandeaux* | brittany Kibodeaux |
| 2. | *signature* | Rufino Ramirez JR |
| 3. | *Crocker* | Morgan Crocker |
| 4. | *signature* | Jose A. San Miguel, Jr. |
| 5. | Tanya Watson | Tanya Watson |
| 6. | *signature* | Shawn M. Curran |
| 7. | *signature* | Ruben Jasso |
| 8. | Donna F Sprague | DONNA F SPRAGUE |
| 9. | *signature* | NATHAN RAO |
| 10. | *Micah Provenzano* | Micah Provenzano |
| 11. | Anne A. Comeaux | ANNE A. Comeaux |

If you have answered Question 8, then you must sign this certificate also.

15

## Additional Certificate

I certify that the jury was unanimous in answering Questions 1, 8, and 9. All twelve of us agreed to each of the answers. The presiding juror has signed the certificate for all twelve of us.

_Anne A. Comeaux_
_ANNE A. Comeaux_
Signature of Presiding Juror Printed

_ANNE A. Comeaux_
Name of Presiding Juror

16

# Exhibit E

CAUSE NO. 75576-CV

| | | |
|---|---|---|
| TYLER LEE AND LEIGH ANN LEE, INDIVIDUALLY AND AS NEXT FRIEND OF SYDNEY ROSE LEE, MINOR | § § § § | IN THE DISTRICT COURT OF |
| Plaintiff | § § § | |
| v. | § § | BRAZORIA COUNTY, TEXAS |
| BERKEL & COMPANY CONTRACTORS, INC. MAXIM CRANE WORKS, L.P., DIXON EQUIPMENT SERVICES, INC., FLOYD DIXON, ISAAC DOLAN, JAMES DAVIDSON, ANDREW BENNETT, AND LINK-BELT CONSTRUCTION EQUIPMENT CO. | § § § § § § § § § | |
| Defendants | § § | 149TH JUDICIAL DISTRICT |

**BERKEL & COMPANY CONTRACTORS, INC.'S
MOTION FOR PARTIAL SUMMARY JUDGMENT ON
MAXIM CRANE WORKS, L.P.'S CROSS-CLAIMS FOR
CONTRACTUAL INDEMNITY AND ADDITIONAL INSURED COVERAGE**

and

**BERKEL & COMPANY CONTRACTORS, INC.'S
NO-EVIDENCE MOTION FOR SUMMARY JUDGMENT ON
MAXIM CRANE WORKS, L.P.'S BREACH OF CONTRACT CLAIM**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, BERKEL & COMPANY CONTRACTORS, INC. (Berkel), Defendant herein, and files this, (1) its Motion for Partial Summary Judgment on Maxim Crane Works, L.P.,'s (Maxim) Cross-Claims for Contractual Indemnity and Additional Insured Coverage and (2) its No-Evidence Motion for Summary Judgment on Maxim's Breach of Contract Claim, and in support of same, would show the Court as follows:

011 – MSJ on Maxim's claims for defense and indemnity

## TRADITIONAL MOTION FOR SUMMARY JUDGMENT

### OVERVIEW

Berkel does not owe Maxim a defense or indemnity in the instant litigation because the parties' contractual indemnity agreement and insurance-purchasing requirements are void as against public policy under Texas' Anti-Indemnity Act. Additionally, the contractual indemnity agreement is unenforceable because it does not satisfy the express negligence test, and it is inapplicable to the facts of this case because the Plaintiff is not an employee, agent or representative of Berkel or any of Berkel's subcontractors. As a result, Maxim's cross-claims against Berkel for contractual indemnity and additional insured coverage should be denied as a matter of law.

### FACTS

Skanska USA Building, Inc (Skanska) was the general contractor at the West Memorial Place construction project (the Project) at 15375 Memorial Drive, Houston, Texas, 77079. Tyler Lee was a Skanska superintendent at the Project. Lee lost his leg above the knee during the course and scope of his employment for Skanska when the boom on a crane rented and operated by subcontractor Berkel failed. The crane was a Linkbelt 248 H5 rented from Maxim and operated on the day in question by Berkel employee, Andrew Bennett.

Berkel rented the Linkbelt crane from Maxim on August 21, 2013. On that date, the parties signed an agreement entitled Equipment Lease-Bare Rental Agreement (the Rental Agreement) that sets forth the terms and conditions that govern rental of the crane. The Rental Agreement purports to require Berkel to defend and indemnify Maxim for certain personal injury claims related to use of the crane and to name Maxim as an additional insured on Berkel's general liability insurance policy. Based on these provisions, Maxim demands that Berkel

2

defend and indemnify Maxim in the instant litigation. Berkel denies it owes Maxim a defense or indemnity for the reasons explained herein.

## SUMMARY JUDGMENT EVIDENCE

Defendant offers the following evidence in support of its motion for partial summary judgment and fully incorporates same by reference:

Exhibit 1:    Equipment Lease-Bare Rental Agreement dated August 21, 2013

Exhibit 2:    Maxim's First Amended Cross-Claim against Berkel

Exhibit 3:    Subcontract Agreement between Skanska and Berkel

## STANDARD OF REVIEW

Summary judgments seek to eliminate patently unmeritorious claims. *Rogers v. R.J. Reynolds Tobacco Co.*, 761 S.W.2d 788, 795 (Tex. App.—Beaumont 1988, writ denied). Rule 166a provides a means for summarily ending a case when no genuine issue of material fact exists. *Trinity River Auth. v. URS Consultants, Inc.-Texas*, 869 S.W.2d 367, 369 (Tex. App.—Dallas 1993), *aff'd*, 889 S.W.2d 259 (Tex. 1994).

A defendant is entitled to summary judgment when he disproves an essential element of a plaintiff's claim as a matter of law. *Park Place Hosp. v. Estate of Milo*, 909 S.W.2d 508, 511 (Tex. 1994); *Doe v. Boys Club of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995). A defendant need not disprove all the elements of a plaintiff's cause of action, only one. *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex. 1991); *Elliott-Williams Co. v. Diaz*, 9 S.W.3d 801, 803 (Tex. 1999). In granting a summary judgment, the trial court must indulge every reasonable inference in favor of the nonmovant and resolve all doubts in his favor. *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995).

3

## ARGUMENT & AUTHORITIES

I.   The Rental Agreement's indemnity provision and insurance-purchasing requirements are void as a matter of law.

Maxim's demand that Berkel defend and indemnify Maxim in the instant litigation is based on the following provisions of the parties' Rental Agreement:

6. Insurance: Lessee [Berkel], at its expense, shall take out, carry and maintain the insurance specified herein and in the insurance addendum attached hereto, in full force during the term of this Lease, and prior to taking delivery of the Equipment:

a.   Primary, non-contributing, without regard to any "Other Insurance" clause, comprehensive general liability insurance, including contractual liability, protecting against liability for property damage and personal injury or death arising out of the possession, use, operation, maintenance and repair of the Equipment, with limits of liability not less than $2,000,000 each occurrence, and a $2,000,000 general aggregate;

***

All insurance required hereunder shall be deemed primary, non-contributory insurance of Lessor [Maxim]; shall name Lessor as an additional insured party (using ISO Form GC (sic) 20 10 or equivalent) ...[1]

7. INDEMNIFICATION:

a.   TO THE FULLEST EXTENT PERMITTED BY TEXAS INSURANCE CODE CHAPTER 151 OR OTHER APPLICABLE LAW, AND EXCEPT AS SET OUT IN SUBPARAGRAPH (B) BELOW, LESSEE SHALL DEFEND, INDEMNIFY AND HOLD HARMLESS THE LESSOR, ITS OFFICERS, DIRECTORS, SHAREHOLDERS, PARTNERS, MEMBERS, MANAGERS, EMPLOYEES, AFFILIATES, REPRESENTATIVES, AND AGENTS ("INDEMNITEES") FROM ANY AND ALL ACTIONS, CAUSES OF ACTION, CLAIMS, SUITS, DEMANDS, INVESTIGATIONS, OBLIGATIONS, JUDGMENTS, LOSSES, COSTS, LIABILITIES, DAMAGES, FINES, PENALTIES AND EXPENSES, INCLUDING ATTORNEY FEES, WHICH ARE

---

[1] The insurance addendum referenced in ¶6 of the Rental Agreement and attached thereto is numbered differently and reads slightly differently than the quoted language from ¶6. See the last page of Ex. 1, but the differences are of no legal consequence to this motion.

4

INCURRED BY, ACCRUED, ASSERTED, OR MADE AGAINST, OR RECOVERABLE FROM ANY OF THE INDEMNITEES ARISING FROM OR RELATING TO, DIRECTLY OR INDIRECTLY, THE LESSEE'S ACCEPTANCE, POSSESSION, TRANSPORT, USE, OPERATION, OR CONTROL OF THE EQUIPMENT, WHETHER OR NOT THE SAME ARISES FROM DAMAGE TO PROPERTY (REAL OR PERSONAL), INJURY OR DEATH TO PERSONS, INCLUDING BUT NOT LIMITED TO LESSEE'S EMPLOYEES, AGENTS AND REPRESENTATIVES, FAILURE TO COMPLY WITH APPLICABLE LAWS, REGULATIONS AND ORDINANCES, EQUIPMENT CONDITION, LOSS OF USE OR SEIZURE OF EQUIPMENT, OR OTHERWISE, BUT ONLY TO THE EXTENT CAUSED IN WHOLE OR IN PART BY ANY NEGLIGENT ACT OR OMISSION OR ANY INTENTIONAL ACT OF LESSEE OR ANYONE DIRECTLY OR INDIRECTLY EMPLOYED BY LESSEE OR ANYONE FOR WHOSE ACTS LESSEE MAY BE LIABLE. LESSEE'S OBLIGATION TO DEFEND, HOLD HARMLESS AND INDEMNIFY THE INDEMNITEES SHALL SURVIVE THE TERMINATION OF THIS RENTAL AGREEMENT. IT IS EXPRESSLY AGREED THAT THIS INDEMNIFICATION CLAUSE APPLIES TO BOTH THIRD-PARTY CLAIMS AND ALL CLAIMS BETWEEN LESSOR AND LESSEE.

b. NOTWITHSTANDING THE FOREGOING, TO THE FULLEST EXTENT PERMITTED BY TEXAS INSURANCE CODE CHAPTER 151 OR OTHER APPLICABLE LAW, LESSEE SHALL DEFEND, INDEMNIFY AND HOLD HARMLESS THE LESSOR, ITS OFFICERS, DIRECTORS, SHAREHOLDERS, PARTNERS, MEMBERS, MANAGERS, EMPLOYEES, AFFILIATES, REPRESENTATIVES AND AGENTS ("INDEMNITEES") FROM AND AGAINST ALL CLAIMS, DAMAGES, LOSSES AND EXPENSES, INCLUDING, BUT NOT LIMITED TO, ATTORNEYS FEES ARISING OUT OF OR RESULTING FROM BODILY INJURY TO, OR SICKNESS, DISEASE OR DEATH OF, ANY EMPLOYEE, AGENT OR REPRESENTATIVE OF LESSEE OR ANY OF ITS SUBCONTRACTORS, REGARDLESS OF WHETHER SUCH CLAIM, DAMAGE, LOSS OR EXPENSE IS CAUSED, OR IS ALLEGED TO BE CAUSED, IN WHOLE OR IN PART BY THE NEGLIGENCE OF ANY INDEMNITEE, IT BEING THE EXPRESSED INTENT OF LESSOR AND LESSEE THAT IN SUCH

5

EVENT THE LESSEE IS TO INDEMNIFY, HOLD HARMLESS AND DEFEND THE INDEMNITEES FROM THE CONSEQUENCES OF THEIR OWN NEGLIGENCE, WHETHER IT IS OR IS ALLEGED TO BE THE SOLE OR CONCURRING CAUSE OF THE BODILY INJURY, SICKNESS, DISEASE OR DEATH OF LESSEE'S EMPLOYEE OR THE EMPLOYEE OF ANY OF ITS SUBCONTRACTORS. THE INDEMNIFICATION OBLIGATION UNDER THIS PARAGRAPH SHALL NOT BE LIMITED BY ANY LIMITATION ON THE AMOUNT OR TYPE OF DAMAGES, COMPENSATION OR BENEFITS PAYABLE BY OR FOR LESSEE UNDER WORKERS' COMPENSATION ACTS, DISABILITY BENEFIT ACTS OR OTHER EMPLOYEE BENEFIT ACTS. LESSEE SHALL PROCURE LIABILITY INSURANCE COVERING ITS OBLIGATIONS UNDER THIS PARAGRAPH. LESSEE EXPRESSLY AGREES TO WAIVE ANY WORKERS COMPENSATION IMMUNITY IT MAY OTHERWISE HAVE.

*See* Ex. 1 at ¶¶6-7 (capitalization and emphasis in original document).

Berkel is not required to defend or indemnify Maxim in the instant litigation, despite the quoted provisions, because: (1) the Rental Agreement violates Texas' Anti-Indemnity Act; (2) subparagraph (a) of ¶7 violates Texas' express negligence rule and (3) subparagraph (b) of ¶7 is inapplicable to these facts. Each of these arguments will be explained in turn below.

A.    The Rental Agreement violates Texas' Anti-Indemnity Act.

Effective January 1, 2012, risk-transferring agreements in commercial construction contracts are void as against public policy. Texas' Anti-Indemnity Act specifically provides:

§ 151.102. Agreement Void and Unenforceable

Except as provided by Section 151.103, a provision in a construction contract, or in an agreement collateral to or affecting a construction contract, is void and unenforceable as against public policy to the extent that it requires an indemnitor to indemnify, hold harmless, or defend a party, including a third party, against a claim caused by the negligence or fault, the breach or violation of a statute, ordinance, governmental regulation, standard, or rule, or the breach of contract of the indemnitee, its agent or employee, or any third party under the control or

6

supervision of the indemnitee, other than the indemnitor or its agent, employee, or subcontractor of any tier.

Tex. Ins. Code Ann. § 151.102 (West).

### § 151.104. Unenforceable Additional Insurance Provision

(a) Except as provided by Subsection (b), a provision in a construction contract that requires the purchase of additional insured coverage, or any coverage endorsement, or provision within an insurance policy providing additional insured coverage, is void and unenforceable to the extent that it requires or provides coverage the scope of which is prohibited under this subchapter for an agreement to indemnify, hold harmless, or defend.

Tex. Ins. Code Ann. § 151.104 (West).

The phrase "construction contract" as used in §§151.102 and 151.104 is defined in the Anti-Indemnity Act as "a contract, subcontract, or agreement, or a performance bond assuring the performance of any of the foregoing, entered into or made by an owner, architect, engineer, contractor, construction manager, subcontractor, supplier, or material or equipment lessor for the design, construction, alteration, renovation, remodeling, repair, or maintenance of, or for the furnishing of material or equipment for, a building, structure, appurtenance, or other improvement to or on public or private real property, including moving, demolition, and excavation connected with the real property." Tex. Ins. Code Ann. § 151.001(5) (West). The parties' Rental Agreement falls squarely within this definition.

Berkel was hired by Skanska to install auger cast piles at the West Memorial Place Project. (*See* Ex. 3 at page 1). Exhibit E to the Skanska/Berkel Subcontract expressly states that Berkel's work at the Project was to "include the provision of all equipment ... required to perform the Work." (*See* Ex. 3 at Ex. E p. 4). As a result of this requirement, Berkel rented the Linkbelt crane from Maxim. The Rental Agreement reflects the Linkbelt crane was to be used at

7

the Project. (*See* Ex. 1 at p. 1 "The Equipment is to be located at West Memorial Place, Houston, TX.").

The only exception to the statutory prohibition against risk-shifting agreements in construction contracts is for agreements concerning injury to or death of an employee of the indemnitor, its agent or its subcontractor. In particular, the Anti-Indemnity Act provides:

**§ 151.103. Exception for Employee Claim**

Section 151.102 does not apply to a provision in a construction contract that requires a person to indemnify, hold harmless, or defend another party to the construction contract or a third party against a claim for the bodily injury or death of an employee of the indemnitor, its agent, or its subcontractor of any tier.

There is no dispute in this case that Lee was not an employee of Berkel. Lee was not an employee of any Berkel agent or Berkel subcontractor either. He was an employee of general contractor Skanska. Maxim does not dispute Lee's employment status. (See Ex. 2 "At the time of the incident, Plaintiff was employed by Skanska USA Building Inc., the general contractor, who had retained BERKEL, a subcontractor to provide construction services, including the installation of Auger Cast Piles."). Section 151.103 is therefore inapplicable to these facts.

Because there is no exception to Texas' Anti-Indemnity Act that applies to Lee or the Rental Agreement, the contractual indemnity provision and insurance purchasing requirements in the parties' Rental Agreement are void and unenforceable as a matter of law. Absent a valid and enforceable indemnity agreement or insurance-purchasing requirement, there is no basis for Maxim's defense and indemnity demand. The Court need proceed no further with its analysis. Maxim's cross-claims against Berkel for contractual indemnity and additional insured coverage are meritless and should be denied as a matter of law.

8

B.      The indemnity provision is also unenforceable and inapplicable to these facts.

Even if the parties' contractual indemnity agreement fell within an exception to the Anti-Indemnity Act, there are additional reasons to deny Maxim's contractual indemnity claim against Berkel. Truncated to its most relevant language, the indemnity provision provides:

### 7. INDEMNIFICATION:

(a)     Lessee [Berkel] shall defend, indemnify and hold harmless the Lessor [Maxim], its officers, directors, ... employees,... and agents ("Indemnitees") ... from any and all actions... made against ... any of the Indemnitees arising from or relating to ... the Lessee's ... use... of the equipment..., but only to the extent caused ... by ... Lessee... or anyone for whose acts Lessee may be liable.

(b)     Lessee [Berkel] shall defend, indemnify and hold harmless the Lessor [Maxim] ... from and against all claims... arising out of or resulting from bodily injury to... or death of any employee, agent or representative of Lessee or any of its subcontractors, regardless of whether such claim... is caused, or is alleged to be caused ... by ... the negligence of any Indemnitee.

(Ex. 1).

Subparagraph (a) of ¶7 is unenforceable as a matter of law because it does not satisfy Texas' express negligence test. Under the express negligence test, a party is not required to indemnify another party for that other party's negligence *unless* the contract expressly states that obligation in a conspicuous way. *Fisk Elec. Co. v. Constructors & Assocs, Inc.*, 888 S.W.2d 813, 814 (Tex. 1994). Subparagraph (a) of ¶7 never states that Berkel agrees to defend and indemnify Maxim for Maxim's own negligence. It says that Berkel agrees to defend and indemnify Maxim for Berkel's negligence or the negligence of those for whom Berkel is legally liable.

The purpose of the express negligence rule is to prevent drafters of indemnity provisions from inventing clauses that could be construed to grant indemnification for one's own negligence while concealing that purported intent from the indemnitor.[2] *Ethyl Corp. v. Daniel Constr. Co.*,

---

[2] The *Ethyl* Court stated: "As we have moved closer to the express negligence doctrine, the scriveners of indemnity agreements have devised novel ways of writing provisions which fail to expressly state the true intent of those

9

725 S.W.2d 705, 708 (Tex. 1987). The express negligence requirement is a rule of contract interpretation to be determined as a matter of law. *Id.* The express negligence rule specifically applies to deny indemnity to parties who conceal or cloud their desires to be indemnified against the consequences of their own negligence. *Id.*

Texas courts strictly construe the express negligence requirement. To pass the test, the contractual indemnity language must be an unmistakable, unambiguous, and explicit statement of the intent to shift the risk of one party's negligence to a second party. *Williams v. Home Depot, USA, Inc.*, Civ.A.No. H-10-2493; 2011 WL 2517261, at *5 (S.D. Tex., June 23, 2011). Clearly, no such language appears in the indemnity provision in ¶7(a) of the Rental Agreement.

Subparagraph (b) of ¶7 is likewise unenforceable because it is inapplicable to the facts of the instant case. Whether Berkel's indemnity obligation is triggered by Lee's allegations in the instant case is a separate issue from the agreement's enforceability. *See e.g., UPS Truck Leasing, Inc. v. Leaseway Transfer Pool, Inc*, 27 S.W.3d 174, 175 (Tex. App.—San Antonio 2006, no pet.)("Assuming, without deciding, that the indemnity agreement was triggered in the underlying suit, we turn to examine whether it is enforceable."); *Coastal Mart, Inc. v. Southwestern Bell Telephone Co.*, 154 S.W.3d 839, 843-844 (Tex. App.—Corpus Christi 2005, dism'd by agreement)("The starting point of our inquiry is the operative language of the license agreement that creates and specifies the scope of SWBT's duty to indemnify...We must therefore examine SWBT's obligations under the license agreement to determine if SWBT's duty to indemnify has been triggered."); *Crowder v. Scheirman*, 186 S.W.3d 116, 120 (Tex. App.—Houston [1st Dist.] 2005, no pet.)("Accordingly, we conclude that Crowder has failed to

---

provisions. The intent of the scriveners is to indemnify the indemnitee for its negligence, yet be just ambiguous enough to conceal that intent from the indemnitor. The result has been a plethora of law suits to construe those ambiguous contracts. We hold the better policy is to cut through the ambiguity of those provisions and adopt the express negligence doctrine." 725 S.W.2d at 707-08.

10

present more than a scintilla of evidence of any third party claim relating to any act or omission by the Scheirmans 'that result[ed] in a civil or criminal false claim or fraud determination,' as required to trigger the indemnification clause.").

In Subparagraph (b) of ¶7, Berkel purportedly agreed to defend and indemnify Maxim for injury to Berkel's employees, agents or representatives. As explained above, Lee was an employee of general contractor Skanska. There is no allegation by anyone in the instant case that Lee was Berkel's employee, agent or representative. Lee's allegations against Maxim therefore fall outside of the scope of claims for which Berkel agreed to defend and indemnify Maxim in Subparagraph (b) of ¶7. It is therefore inapplicable to Maxim's demand for defense and indemnity in the instant case.

# NO-EVIDENCE MOTION FOR SUMMARY JUDGMENT

A.    Standard of Review

Rule 166a(i) of the Texas Rules of Civil Procedure provides that, after an adequate time for discovery, a party can move for summary judgment, asserting there is "no evidence of one or more essential elements of a claim or defense" on which the non-moving party will have the burden of proof. TEX.R.CIV.P. 166a(i). If the nonmovant is unable to produce summary judgment evidence sufficient to raise a genuine issue of material fact on the challenged elements, then the trial court must grant the motion. *Harrill v. A.J.'s Wrecker Serv., Inc.*, 27 S.W.3d 191, 193 (Tex. App.—Dallas 2000, pet dism'd w.o.j.). There has been adequate time for discovery in this case, which was filed in this Court on January 15, 2014. Thus, if Maxim cannot produce competent summary judgment evidence and raise a genuine issue of material fact in response to this motion, the Court must grant Berkel's no-evidence motion for summary judgment. *Id.*

11

B.      There is no evidence to support essential elements of Maxim's breach of contract claim.

The elements for a successful breach of contract action against Berkel include the following:

1.      There is a valid, enforceable contract;
2.      The plaintiff is a proper party to sue for breach of the contract.
3.      The plaintiff performed, tendered performance, or was excused from performing its contractual obligations;
4.      The defendant breached the contract; and
5.      The defendant's breach caused the plaintiff's injury.

*Valero Mktg. & Sup. Co. v. Kalama Int'l*, 51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (elements 1, 3-5); *Mandell v. Hamman Oil & Ref. Co.*, 822 S.W.2d 153, 161 (Tex. App.—Houston [1st Dist.] 1991, writ denied) (element 2).

Berkel is entitled to summary judgment on Maxim's breach of contract claim as a matter of law because there is no evidence that Berkel's alleged breach of contract proximately caused Maxim injury.

## CONCLUSION

Berkel does not owe Maxim a defense or indemnity in the instant litigation because the parties' contractual indemnity agreement violates Texas' Anti-Indemnity Act, fails the express negligence test, and is inapplicable to the facts of this case. The insurance-purchasing requirements in the parties' Rental Agreement likewise violate the Anti-Indemnity Act. The remaining allegations of breach of contract made by Maxim against Berkel in its First Amended Cross-Claim should be denied because there is no evidence that Berkel's alleged breach of the Rental Agreement proximately caused Maxim damages.

For all the reasons stated herein, Berkel is entitled to summary judgment as a matter of law on Maxim's breach of contract claim. Berkel therefore prays that this Court will grant its

12

motions for summary judgment. It also prays for such other relief, both at law and in equity, to which it is entitled.

Respectfully submitted,

LITCHFIELD CAVO LLP

By: _____
ANDREW T. MCKINNEY IV
SBN: 13716800
D. DOUGLAS MENA
SBN: 24054982

One Riverway, Suite 1000
Houston, Texas 77056
(713) 418-2000
(713) 418-2001 – FAX
mckinney@litchfieldcavo.com
mena@litchfieldcavo.com

ATTORNEYS FOR DEFENDANTS,
BERKEL & COMPANY CONTRACTORS,
INC. AND ANDREW BENNETT

13

## CERTIFICATE OF SERVICE

In accordance with Rules 21 and 21a of the Texas Rules of Civil Procedure, a true and correct copy of the above and foregoing instrument was served on all counsel of record via facsimile, hand delivery, regular mail and/or certified mail/return receipt requested on this 13TH day of January, 2015, and properly addressed as follows:

Mr. Kurt B. Arnold
Mr. M. Paul Skrabanek
ARNOLD & ITKIN LLP
6009 Memorial Drive
Houston, Texas 77007

Justin Gilbert
GILBERT & FUREY
222 North Velasco St.
Angleton, Texas 7755

Ms. Ann E, Knight
J DIAMOND AND ASSOCIATES PLLC
1010 N San Jacinto
Houston, Texas 77002

Mr. John D. Dwyer
GORDON & REES LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

Mr. Steven D. Selbe
GORDON & REES, L.L.P.
1900 West Loop South, Suite 1000
Houston, Texas 77027

Mr. Jerry B. Dozier
Law Office of Jerry B. Dozier, P.C.
2318 Koster Drive
P.O. Box 2128
Alvin, Texas 77512



D. DOUGLAS MENA

CAUSE NO. 75576-CV

| | | |
|---|---|---|
| TYLER LEE AND LEIGH ANN LEE, INDIVIDUALLY AND AS NEXT FRIEND OF SYDNEY ROSE LEE, MINOR | § § § § | IN THE DISTRICT COURT OF |
| Plaintiff | § § § | |
| V. | § § | BRAZORIA COUNTY, TEXAS |
| BERKEL & COMPANY CONTRACTORS, INC. MAXIM CRANE WORKS, L.P., DIXON EQUIPMENT SERVICES, INC., FLOYD DIXON, ISAAC DOLAN, JAMES DAVIDSON, ANDREW BENNETT, AND LINK-BELT CONSTRUCTION EQUIPMENT CO. | § § § § § § § § § | |
| Defendants | § | 149TH JUDICIAL DISTRICT |

## ORDER GRANTING BERKEL & COMPANY CONTRACTORS, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON MAXIM CRANE WORKS, L.P.'S CROSS-CLAIMS FOR BREACH OF CONTRACT

On this day came on to be considered Berkel & Company Contractors, Inc.'s ("Berkel") Motion for Partial Summary Judgment on Maxim Crane Works, L.P.'s Cross-Claims for Breach of Contract. After reviewing the motion, the response and hearing arguments of counsel, the Court is of the opinion that the motion is meritorious and should be granted. It is therefore

ORDERED, ADJUDGED and DECREED the aforementioned motion is granted. It is further

ORDERED, ADJUDGED and DECREED that the Cross-Plaintiff, Maxim Crane Works, L.P.'s, claims for breach of contract against Berkel are denied as a matter of law and dismissed with prejudice.

All other relief not expressly granted herein is denied.

Signed this _____ day of _____, 2015.

HONORABLE TERRI HOLDER

CAUSE NO. 75576-CV

| | | |
|---|---|---|
| TYLER LEE AND LEIGH ANN LEE,<br>INDIVIDUALLY AND AS NEXT FRIEND<br>OF SYDNEY ROSE LEE, MINOR | §<br>§<br>§<br>§ | IN THE DISTRICT COURT OF |
| Plaintiff | §<br>§ | |
| v. | §<br>§ | BRAZORIA COUNTY, TEXAS |
| BERKEL & COMPANY CONTRACTORS, INC.<br>MAXIM CRANE WORKS, L.P., DIXON<br>EQUIPMENT SERVICES, INC., FLOYD DIXON,<br>ISAAC DOLAN, JAMES DAVIDSON, ANDREW<br>BENNETT, AND LINK-BELT CONSTRUCTION<br>EQUIPMENT CO. | §<br>§<br>§<br>§<br>§<br>§<br>§ | |
| Defendants | §<br>§ | 149TH JUDICIAL DISTRICT |

## ORDER GRANTING BERKEL & COMPANY CONTRACTORS, INC.'S
## MOTION FOR PARTIAL SUMMARY JUDGMENT ON MAXIM CRANE WORKS, L.P.'S
## CROSS-CLAIMS FOR CONTRACTUAL INDEMNITY AND
## ADDITIONAL INSURED COVERAGE

On this day came on to be considered Berkel & Company Contractors, Inc.'s ("Berkel") Motion for Partial Summary Judgment on Maxim Crane Works, L.P.'s Cross-Claims for Contractual Indemnity and Additional Insured Coverage. After reviewing the motion, the response and hearing arguments of counsel, the Court is of the opinion that the motion is meritorious and should be granted. It is therefore

ORDERED, ADJUDGED and DECREED the aforementioned motion is granted. It is further

ORDERED, ADJUDGED and DECREED that the Cross-Plaintiff, Maxim Crane Works, L.P.'s, claims for contractual indemnity and additional insured coverage against Berkel are denied as a matter of law and dismissed with prejudice.

All other relief not expressly granted herein is denied.

Signed this _____ day of _____, 2015.

_____
HONORABLE TERRI HOLDER

# Exhibit F

Filed for Record
2/3/2015 3:47:23 PM
Rhonda Barchak, District Clerk
Brazoria County, Texas
75576-CV
Kandice Haseloff, Deputy

CAUSE NO. 75576-CV

| | | |
|---|---|---|
| TYLER LEE AND LEIGH ANN LEE INDIVIDUALLY AND AS NEXT FRIEND OF SYDNEY ROSE LEE, MINOR | § § § § | IN THE DISTRICT COURT OF |
| *Plaintiff* | § § | |
| VS. | § § | BRAZORIA COUNTY, TEXAS |
| BERKEL & COMPANY CONTRACTORS, INC., MAXIM CRANE WORKS, L.P., DIXON EQUIPMENT SERVICES, INC., FLOYD DIXON, ISAAC DOLAN, JAMES DAVIDSON ANDREW BENNETT, AND LINK-BELT CONSTRUCTION EQUIPMENT CO. | § § § § § § § § § | |
| *Defendants* | § | 149TH JUDICIAL DISTRICT |

## DEFENDANT, MAXIM CRANE WORKS, L.P.'S RESPONSE TO DEFENDANT/CROSS-DEFENDANT, BERKEL & COMPANY CONTRACTORS, INC.'S PARTIAL MOTION FOR SUMMARY JUDGMENT ON MAXIM CRANE WORKS, L.P.'S CROSS CLAIMS FOR CONTRACTUAL INDEMNITY AND ADDITIONAL INSURED COVERAGE

## AND

## DEFENDANT, MAXIM CRANE WORKS, L.P.'S RESPONSE TO DEFENDANT/CROSS-DEFENDANT, BERKEL & COMPANY CONTRACTORS, INC.'S NO-EVIDENCE MOTION FOR SUMMARY JUDGMENT ON MAXIM CRANE WORKS, L.P.'S BREACH OF CONTRACT CLAIM

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Maxim Crane Works, L.P. (hereinafter referred to as "Maxim"), one of the Defendants in the above-styled and numbered cause, and files this, its *Response to Defendant and Cross-Defendant, Berkel & Company Contractors, Inc.'s Partial Motion For Summary Judgment On Maxim Crane Works, L.P.'S Cross Claims For Contractual Indemnity and Additional Insured Coverage* and *Maxim Crane Works, L.P.'s Response To Defendant And Cross-Defendant, Berkel & Company Contractors, Inc.'s No-Evidence Motion For Summary*

*Judgment on Maxim Crane Works, L.P.'S Breach Of Contract Claim* and pursuant to Texas Rules Of Civil Procedure would show this honorable court as follows:

## I. INTRODUCTION AND BASIS FOR RESPONSE

Berkel & Company Contractors, Inc. (hereinafter referred to as "Berkel") has filed a Traditional Motion For Partial Summary Judgment on Maxim's cross-claim for contractual defense and indemnity and additional insured status. The basis for the motion is that Berkel contends that the contractual indemnity and insurance provisions within the bare rental agreement ("Agreement"), between Maxim and Berkel, are void and unenforceable under the Texas Anti-Indemnity Statute contained within Chapter 151 of the Texas Insurance Code.

Berkel has also filed a no evidence motion for summary judgment on Maxim's cross-claim for breach of contract.

Both motions for summary judgment should be denied for the following reasons:

- The contractual indemnity and insurance provisions within the Agreement comply with the requirements of the Texas Anti-Indemnity Statute and are, therefore, enforceable; and

- There is sufficient evidence to raise a genuine issue of fact on Maxim's additional breach of contract claims against Berkel.

## II. SUMMARY JUDGMENT EVIDENCE

1. Exhibit A - Bare Rental Agreement between Maxim and Berkel

2. Exhibit B - Excerpts from Code of Federal Regulations; 1926 CFR 1926 Subpart CC - Cranes and Derricks in Construction;

3. Exhibit C – Excerpts from the Crane Operators Manual;

4. Exhibit D - Correspondence dated from Link-Belt Construction Equipment Co., to Maxim Crane Works with attached data;

5.  Exhibit E - Deposition excerpts from Curt Imerman;

6.  Exhibit F - Affidavit and Recorded statement of Chris Prestridge;

7.  Exhibit G - Affidavit and Recorded statement of Mickey Disotell; and.

8.  Exhibit H- Depositions of John Merrill, Cody Crisp, James Davidson, Mark Stacey, Eric Scott and Joe Riojas.

## III. BACKGROUND FACTS

This lawsuit arises out of a personal injury that was sustained by Plaintiff on September 30, 2013, as a result of being struck by a piece of equipment at a jobsite located at 15375 Memorial Drive, Houston, Harris County, Texas. At the time of the incident, Skanska USA Building Inc. ("Skanska"), the general contractor, had retained "Berkel" a subcontractor, to provide construction services, including the installation of Auger Cast Piles. In order to provide the construction services at the jobsite, Berkel rented a Link-Belt crawler crane from Maxim. When the incident occurred, Berkel was operating the crane with an auger and leads to perform deep foundation drilling. During this process, the auger became stuck, and while attempting to release same, Berkel overloaded the crane and the boom failed. As a result, the auger and leads were released, which fell and crushed Plaintiff's left leg.

At the time of the incident, Plaintiff, Tyler Lee, was an employee of Skanska, who had entered into a contract with SCD Memorial Lakes I, LLC., the owner of the property, to perform construction and related work and services, as the general contractor/manager at the property commonly referred to as West Memorial Place – Phase I (the "Project"). Skanska instigated a Contractor Controlled Insurance Program ("CCIP") for the Project, which provided CGL and Workers' Compensation coverage, among others, for Skanska and all eligible enrolled parties performing work at the Project. Berkel was an enrolled party in the CCIP, but Maxim was not.

For those parties enrolled, their independent coverage was designated excess and contingent over the CCIP coverage for onsite activities and related costs.

As is customary for general contractors, Skanska entered into a number of subcontracts, one of which was a Subcontract Agreement with Berkel dated August 14, 2014. Under the terms of the Subcontract Agreement, Berkel agreed to provide auger cast piles during Phase I of the Project. Subsequently, Berkel entered into an Equipment Lease – Bare Rental Agreement ("Agreement") with Maxim on August 21, 2013, for the rental of a Link-Belt LS-248 H5 Crawler Crane (the "Crane").

The Agreement provides in part as follows:

THE EQUIPMENT IS RENTED TO LESSEE ON A **BARE RENTAL BASIS ONLY**, In Its "As Is" condition. Lessee, at its expense, shall transport, operate, inspect, maintain and repair the Equipment, and return the Equipment to Lessor in the same condition as when delivered to Lessee, ordinary wear and tear from normal use excepted. LESSEE IS RESPONSIBLE FOR ENSURING COMPLIANCE BY IT AND ITS EMPLOYEES/AGENTS, AND OF THE EQUIPMENT ITSELF, WITH ALL APPLICABLE LAWS, REGULATIONS AND ORDINANCES, INCLUDING THE OCCUPATIONAL SAFETY AND HEALTH ACT AND REGULATIONS (INCLUDING BUT NOT LIMITED TO 29 C.F.R. 1926, SUBPART N – CRANES AND DERRICKS IN CONSTRUCTION AND CFR 1910, 18- CRAWLER LOCAMOTIVE AND TRUCK CRANES), and ALL APPLICABLE ANSI STANDARDS, Lessor shall have no responsibility of any kind for compliance with any such laws, regulations or ordinances during the period the Equipment is in Lessee's possession or control.

### Terms and Conditions

6. **Insurance:** Lessee, at its expense, shall take out, carry and maintain the insurance specified herein and in the insurance addendum attached hereto, in full force during the term of this Lease, and prior to taking delivery of the Equipment:

a. Primary, non-contributing without regard to any "Other insurance" clause, comprehensive general liability insurance, including contractual liability, protecting against liability for property damage and personal injury or death

arising out of the possession, use, operation, maintenance and repair of the Equipment, with limits of liability not less than $2,000,000 general aggregate;

All Insurance required hereunder shall be deemed primary, non-contributory insurance of Lessor; shall name Lessor as an additional insured party ....... and loss payee;....

7.  INDEMNIFICATION:

a.  TO THE FULLEST EXTENT PERMITTED BY TEXAS INSURANCE CODE CHAPTER 151 OR OTHER APPLICABLE LAW, AND EXCEPT AS SET OUT IN SUBPARAGRAPH (B) BELOW, LESSEE SHALL DEFEND, INDEMNIFY, AND HOLD HARMLESS THE LESSOR, ITS OFFICERS, DIRECTORS, SHAREHOLDERS, PARTNERS, MEMBERS, MANAGERS, EMPLOYEES AFFILITES, REPRSENTATIVES AND AGENTS ("INDEMNITEES") FROM ANY AND ALL ACTIONS, CAUSES OF ACTION, CLAIMS, SUITS, DEMANDS, INVESTIGATIONS, OBLIGATIONS, JUDGMENTS, LOSSES, COSTS, LIABILITIES, DAMAGES, FINES, PENALTIES AND EXPENSES, INCLUDING ATTORNEY FEES, WHICH ARE INCURRED BY, ACCRUED, ASSERTED, OR MADE AGAINST, OR RECOVERAGLE FROM ANY OF THE INDEMNITEES ARISING FROM OR RELATING TO, DIRECTLY OR INDIRECTLY, THE LESSEE'S ACCEPTANCE, POSSESSION, TRANSPORT, USE, OPERATION, OR CONTROL OF THE EQUIPMENT, WHETHER OR NOT THE SAME ARISES FROM DAMAGE TO PROPERTY (REAL OR PERSONAL), INJURY OR DEATH TO PERSONS INCLUDING BUT NOT LIMITED TO LESSEE'S EMPLOYEES, AGENTS AND REPRESENTATIVES, FAILURE TO COMPLY WITH APPLICABLE LAWS, REGULATIONS AND ORDINANCES, EQUIPMENT CONDITION, LOSS OF USE OR SEIZURE OF EQUIPMENT, OR OTHERWISE, BUT ONLY TO THE EXTENT CAUSED IN WHOLE OR IN PART BY ANY NEGLIGENT ACT OR OMISSION OR ANY INTENTIONAL ACT OF LESSEE OR ANYONE DIRECTLY OR INDIRECTLY EMPLOYED BY LESSEE OR ANYONE FOR WHOSE LESSEE MAY BE LIABLE. LESSEE'S OBLIGATION TO DEFEND, HOLD HARMLESS AND INDEMNIFY THE INDEMNITEES SHALL SURVIVE THE TERMINATION OF THIS RENTAL AGREEMENT. IT IS EXPRESSLY AGREED THAT THIS INDEMNIFICATION CLAUSE APPLIES TO BOTH THIRD-PARTY CLAIMS AND ALL CLAIMS BETWEEN LESSOR AND LESSEE.

b.  NOTWITHSTANDING THE FOREGOING, TO THE FULLEST EXTENT PERMITTED BY TEXAS INSURANCE CODE CHAPTER 151 OR OTHER APPLICABLE LAW, LESSEE SHALL DEFEND, INDEMNIFY, AND HOLD HARMLESS THE LESSOR, ITS OFFICERS, DIRECTORS, SHAREHOLDERS, PARTNERS, MEMBERS, MANAGERS, EMPLOYEES, AFFILIATES, REPRESENTATIVES AND AGENTS ("INDEMNITEES") FROM AND AGAINST ALL CLAIMS, DAMAGES, LOSSES AND EXPENSES, INCLUDING BUT NOT LIMITED TO ATTORNEYS FEES ARISING OUT OF OR RESULTING FROM BODILY INJURY TO, OR SICKNESS, DISEASE OR DEATH OF ANY EMPLOYEE, AGENT OR REPRESENTATIVE OF LESSEES OR ANY OF ITS SUBCONTRACTORS, REGARDLESS OF WHETHER SUCH CLAIM, DAMAGE, LOSS OR EXPENSE IS CAUSED, OR IS ALLEGED TO BE CAUSED, IN WHOLE OR IN PART BY THE NEGLIGENCE OF ANY INDEMNITEE, IT BEING THE EXPRESSED INTENT OF LESSOR AND LESSEE THAT IN SUCH EVENT THE LESSEE IS TO INDEMNIFY, HOLD HARMLESS AND DEFEND THE INDEMNITEES FROM THE CONSEQUENCES OF THEIR OWN NEGLIGENCE WHETHER IT IS OR IS ALLOWED TO BE THE SOLE OR CONCURRING CAUSE OF THE BODILY INJURY, SICKNESS, DISEASE OR DEATH OF LESSEE'S EMPLOYEE OR THE EMPLOYEE OF ITS SUBCONTRACTOR, THE INDEMNIFICATION OBLIGATIONS UNDER THIS PARAGRAPH SHALL NOT BE LIMITED BY ANY LIMITATION ON THE AMOUNT OR TYPE OF DAMAGES, COMPENSATION OR BENEFITS PAYABLE BY OR FOR LESSEE UNDER WORKERS' COMPENSATION ACTS, DISABILTY BENEFIT ACTS OR OTHER EMPLOYEE BENEFIT ACTS, LESSEE SHALL PROCURE LIABILITY INSURANCE COVERING ITS OBLIGATIONS UNDER THIS PARAGRAPH, LESSEE EXPRESSLY AGREES TO WAIVE ANY WORKERS COMPENSATION IMMUNITY IT MAY OTHERWISE HAVE.

See Exhibit "A" attached hereto – the Bare Rental Agreement between Maxim and Berkel.

The Agreement was fully executed by Berkel and Maxim prior to delivery of the Crane on the Project Jobsite.

# IV. SUMMARY JUDGMENT STANDARD

## A. Traditional Summary Judgment Standard

The movant of a traditional motion for summary judgment bears the burden of proof and all doubts about the existence of a genuine issue of material fact are resolved against the movant. *S.W. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). The Court takes as true all evidence favorable to the non-movant, and will indulge every *reasonable* inference and resolve any doubts in the non-movant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). Summary judgment is only appropriate under Texas Rule of Civil Procedure 166a(c) when the pleadings and evidence establish that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion or in an answer or any other response." The movant is entitled to summary judgment under Rule 166a(c) if it conclusively negates at least one element of the non-movant's cause of action or conclusively establishes each element of an affirmative defense. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494,508 (Tex.2010).

After an adequate time for discovery has passed, a party may move for summary judgment on the grounds that there is no evidence of one or more essential elements of a claim on which an adverse party has the burden of proof. TEX. R. CIV. P. 166a(i). The Court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact. *Lampasas v. Spring Ctr. Inc.*, 988 S.W. 2d 428 (Tex.App.—Houston [14th Dist.] 1999, no writ). To defeat a no-evidence motion for summary judgment, the non-movant must produce more than a scintilla of probative evidence to raise a genuine issue of fact on the challenged elements. *Forbes, Inc. v Granada Biosciences*, 124 S.W. 3d 167, 172 (Tex.2003).

### B.    No-Evidence Summary Judgment Standard

After an adequate time for discovery has passed, a party may move for summary judgment on the grounds that there is no evidence of one or more essential elements of a claim on which an adverse party has the burden of proof. TEX. R. CIV. P. 166a(i). The Court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact. *Lampasas v. Spring Ctr. Inc.*, 988 S.W. 2d 428 (Tex.App.—Houston [14th Dist.] 1999, no writ). To defeat a no-evidence motion for summary judgment, the non-movant must produce more than a scintilla of probative evidence to raise a genuine issue of fact on the challenged elements. *Forbes, Inc. v Granada Biosciences*, 124 S.W. 3d 167, 172 (Tex.2003).

## V. ARGUMENTS AND AUTHORITY

### A.    Response to Berkel's Motion For Partial Summary Judgment On Maxim Crane Works Cross-Claim for Contractual Indemnity And Additional Insured Coverage.

#### 1.    The Rental Agreement is not void under the Texas Anti Indemnity Statute.[1]

Berkel asserts that the Agreement's defense and indemnity requirements are void as a matter of law and, therefore, the insurance–purchasing provision is unenforceable. On this basis Berkel asserts that it has not breached the contract with Maxim. Specifically, Berkel states that the above referenced provisions in the Agreement are void and unenforceable because "effective January 1, 2012, risk transferring agreements in commercial construction contracts are void as against public policy."[2]

Since Berkel fails to specify why the provisions of the Agreement are void under the Texas Anti Indemnity Statute, it would appear that Berkel's interpretation of the Statute is that

---

[1] Chapter 151 of the Texas Insurance Code.
[2] See P.6, Berkel's Motion for Traditional Summary Judgment.

all defense and indemnity provisions in commercial construction contracts are void.[3] However, this is not what the Statute provides and Berkel's interpretation of same is incorrect.

### i. Chapter 151 of the Texas Insurance Code - The Texas Anti-Indemnity Statute

In analyzing the application of the Texas Anti-Indemnity Statute, it is useful to review the law in Texas prior to the enactment of the Statute regarding permissible forms of defense and indemnity. At that time, three types of indemnity provisions were permitted in Texas.

1. "Broad form" clauses, where the indemnitor assumes an unqualified obligation to hold the indemnitee harmless from all liability regardless of which party was actually at fault, even as to the sole negligence of the indemnitee.

2. "Intermediate form" indemnity, where the indemnitor assumes all liabilities of the indemnitee relating to the subject matter of the agreement, except for the injury or damages caused by the indemnitee's sole negligence. Any amount of fault on the part of the indemnitor obligates the indemnitor to indemnify the indemnitee for the entire amount of damages. For example, where the indemnitee is ninety percent at fault, and the indemnitor only ten percent at fault, the indemnitor nevertheless owes one hundred percent of the indemnity.

3. "Limited form" indemnity clauses, also referred to as "comparative fault" clauses, obligate the indemnitor only to the extent of its own fault in contributing to the loss.

Texas Courts would enforce both the "broad form" and "intermediate form" defense and indemnity provisions so long as the indemnity agreement clearly expressed that intention. In other words, the indemnity clause must have satisfied the "fair notice" requirements; that is, it must have expressly stated that the indemnitee's own negligence is transferred, and it must be inserted into the contract so as to provide fair notice to the indemnitor. See *Fisk Elec. Co. v. Constructors & Assocs, Inc.*, 888 S.W. 2d 813, 814(Tex. 1994). Typically, the indemnity provision would also be accompanied by a requirement for additional insured coverage in the event that the indemnity provision was not enforceable.

---

[3] Maxim acknowledges that the Agreement is a commercial construction contract as defined by §§151.102 and 151.104 Tex. Ins. Code Ann.

However, in 2011, Chapter 151 of the Texas Insurance Code, entitled Consolidated Insurance Programs, was enacted.[4]

Chapter 151 provides in part as follows:

Sec. 151.102. AGREEMENT VOID AND UNENFORCEABLE.
Except as provided by Section 151.103, a provision in a construction contract, or in an agreement collateral to or affecting a construction contract, is void and unenforceable as against public policy *to the extent* that it requires an indemnitor to indemnify, hold harmless, or defend a party, including a third party, against a claim *caused* by the negligence or fault, the breach or violation of a statute, ordinance, governmental regulation, standard, or rule, or the breach of contract *of the indemnitee,* its agent or employee, or any third party under the control or supervision of the indemnitee, other than the indemnitor or its agent, employee, or subcontractor of any tier. [*Emphasis added*]

Sec. 151.103. EXCEPTION FOR EMPLOYEE CLAIM.

Section 151.102 does not apply to a provision in a construction contract that requires a person to indemnify, hold harmless, or defend another party to the construction contract or a third party against a claim for the bodily injury or death of an employee of the indemnitor, its agent, or its subcontractor of any tier.

Sec. 151.104. UNENFORCEABLE ADDITIONAL INSURANCE PROVISION.

(a) Except as provided by Subsection (b), a provision in a construction contract that requires the purchase of additional insured coverage, or any coverage endorsement, or provision within an insurance policy providing additional insured coverage, is void and unenforceable *to the extent* that it requires or provides coverage the scope of which is prohibited under this subchapter for an agreement to indemnify, hold harmless, or defend. [*Emphasis added*].

(b) This section does not apply to a provision in an insurance policy, or an endorsement to an insurance policy, issued under a consolidated insurance program to the extent that the provision or endorsement lists, adds, or deletes named insureds to the policy.

**ii** **Interpretation and Application of the Texas Anti-Indemnity Statute to the Agreement**

Contrary to Berkel's assertions, when the anti-indemnity provisions of Chapter 151 are reviewed, the intent of the statute is clear, that is, to avoid both defense and indemnification and

___

[4] Effective January 1, 2012.

additional insured clauses/provisions that purport to indemnify the indemnitee/additional insured for *its own negligence or fault, but not void the indemnity provision in its entirety.* The indemnity provision is unenforceable *to the extent* that it requires the indemnitor to indemnify the indemnitee for the *indemnitee's negligence.*[5] Maxim's Agreement does not require Berkel to defend and indemnify Maxim for Maxim's own negligence. Rather, the Agreement states Berkel shall do so "**but only to the extent** caused in whole or in part by any negligent act or omission or any intentional act of **Lessee (Berkel)**..."[6]

Similarly Section §151.104 of Chapter 151 does not void additional insured coverage provisions in construction contracts, rather it provides that such provisions are unenforceable, but only *"to the extent"* that such coverage is prohibited under subchapter 151.102. The *"to the extent"* indicates a savings clause approach whereby even though the additional insured requirement may exceed the scope of coverage allowed by statute, the clause may nevertheless be enforceable to the extent permitted. For example, a traditional additional insured specification stating that "Contractor shall provide additional insured coverage to Owner for liability arising out of Contractor's work under the Contract," is usually interpreted to require broad coverage, including the negligence of the additional insured. Such a provision requires broader coverage as to general indemnity than is permitted under Chapter 151, but it can be enforced at least *"to the extent"* of the named insured-contractor's negligence or fault. At the same time, the requirement does not run afoul of the exception of Sec. 151.103, allowing broad indemnity and additional insured coverage for the additional insured's own negligence as to injury to the employees of the named insured.

---

[5] Accordingly, the Statute prohibits "broad" and "intermediate" forms of indemnity.
[6] See Exhibit A, Clause 7 of the Terms and Conditions of the Agreement.

Clearly, the defense and indemnity and insurance and requirements of the Agreement comply with Texas law. Subsection (a) is careful to require the Lessee (Indemnitor/Berkel) to defend and indemnify Maxim "only to the extent of Berkel's negligence." The limited indemnity language, therefore, clearly restricts Maxim's right to defense and indemnity only for Berkel's negligence. As such, the provisions are consistent with language of §151.102, Tex. Ins. Code Ann. Where a contract is void and unenforceable as against public policy *to the extent* it requires an indemnitor (Berkel) to indemnify, hold harmless, or defend a party, including a third-party (Maxim) against a claim caused by the negligence or fault of the third -party or under the control of the third-party (Maxim), other than the indemnitor or its agent, employee, or subcontractor of any tier.

As an aside, Maxim notes that this issue is a case of first impression and, thus, there is no case law directly on point as to this Statute that can provide guidance to the Court as to the interpretation of the same and how it should be applied. Nevertheless, Maxim would respectfully propose that had the Texas legislature intended to void all indemnity provisions within the commercial construction contract arena as argued by Berkel, then the Statute would have been written to that effect and there would have been no need for any limiting language as identified above (i.e. *to the extent*) and/or a "savings clause approach." It is clear that the legislature clearly intended that "limited form" indemnity clauses, also referred to as "comparative fault" clauses should be permitted.

### iii. Berkel's Argument bolsters the validity of the Indemnity Clause of the Agreement.

Ironically Berkel's argument that the Agreement's indemnity provision violates the Texas express negligence test bolsters Maxim's argument that the indemnity provision in the parties'

Agreement comports with the requirements of Chapter 151 and, therefore, is valid under the Statute.

Berkel contends that even if the contractual indemnity provision of the Agreement did fall within the exception to the Texas Anti-Indemnity Provision,[7] it would also be unenforceable because it does not satisfy the Texas express negligence test[8]; in other words, the Agreement does not expressly and conspicuously state that Maxim is seeking defense and indemnity for Maxim's own negligence. Maxim agrees and that is precisely why the provisions are valid and enforceable. Maxim is not seeking indemnity for its own negligence (which negligence is denied in this case) and the indemnity provision of the Agreement does not provide for such indemnity, which is the very reason why the Agreement *does comply* with Section 151.102 of Chapter 151 Texas Anti Indemnity Statute.

Chapter 151 clearly negated the necessity of the express negligence test because a party is prohibited from seeking indemnity for its own negligence. The Agreement provides that Berkel shall defend and indemnify Maxim, "only to the extent" of Berkel's negligence. Accordingly, the indemnity provision in the Agreement comports with Chapter 151, as Maxim is not seeking indemnity for its own negligence, but only the negligence of Berkel; the same is permissible under the statute, and the express negligence test is not applicable.[9]

---

[7] Tex. Ins. Code Ann. §151.103

[8] See P.9, Berkel's Motion for Traditional Summary Judgment

[9] In Responding to Berkel's Motion for Traditional and No-Evidence, Maxim is not waiving any arguments regarding whether the exception contained in §151.103 applies in this case or not. The Court will recall that Berkel has previously sought immunity from this lawsuit based on the grounds that the Texas Worker's Compensation bar applied since it was enrolled in the CCIP policy for the construction project in question – See Berkel's Motion for Summary Judgment dated 07/31/2014.

### iv. Berkel's Failure to comply with the Insurance – Purchasing Provision of the Agreement.

Since the indemnity provision in the Agreement is valid as written and comports with Chapter 151, Clause 6 of the Agreement is also valid. Maxim is clearly owed additional insured status under the Agreement. If Berkel's insurance carrier continues to deny Additional Insured status to Maxim under Berkel's insurance policy, then Berkel has violated the Agreement with Maxim and is in Breach of the Agreement, and Berkel is responsible for Maxim's damages resulting from said breach.

### 2.    Summary and Conclusion

In summary, contrary to Berkel's position, the Agreement is not in violation of the Texas Anti-Indemnity Statute and therefore void. The indemnity, defense and insurance requirements are consistent with the Texas Anti-Indemnity Statute limited nature. Moreover the Texas Anti-Indemnity Statute does not void the indemnity and additional insured provisions contained within the Agreement, but rather, it provides that said provisions are unenforceable _only to the extent_ that they seek to provide defense, indemnity, and additional insurance, for the negligence or fault of Berkel; the controlling clauses in the Agreement are consistent with what the statute allows and even if they were not, the statute, clearly allows the Court to interpret the insurance and indemnity provisions in such a way as to allow Berkel to defend and indemnify Maxim to the extent of Berkel's negligence.

The insurance policy of Berkel should provide insurance coverage for Maxim and should do so to the extent of Berkel's own negligence. The only reason Maxim is a party to the present lawsuit is due to Berkel's own negligence—the Agreement contemplates that scenario and the parties contracted for that exact set of circumstances. The parties agreed that under the above circumstances, Berkel would defend, indemnify and provide insurance for and to Maxim, and do

so to the extent of Berkel's own negligence. The above is not only NOT prohibited by the statutory provisions relied upon by Berkel, but is the exact scenario contemplated by the Statute as being permissible.[10]

The facts developed in this case clearly establish that the boom failure was the result of a catastrophic overload of the crane, while being operated and controlled by Berkel, and there is no evidence that Maxim caused and/or even contributed to this incident. Pursuant to its Agreement with Berkel, Maxi has requested Berkel defend and indemnify Maxim based on its contractual obligations as well as Maxim's status as an additional insured. Maxim's Agreement, Clauses 6 and 7, clearly conform to the requirements of Chapter 151 of the Texas Insurance Code, which permits this "limited form" of defense and indemnity and, therefore, Berkel's Partial Motion for Summary Judgment on Maxim Crane Works, L.P.'S Cross - Claims for Contractual Indemnity and Additional Insured Coverage should be Denied.

**B.  Berkel's No evidence Motion for Summary Judgment on Maxim Crane Works' Cross-Claim for Breach of Contract Claim**

In addition to its cross-claim against Berkel for contractual defense and indemnity and additional insured coverage, Maxim has also made breach of contract allegations in its cross claim against Berkel for breaching the Agreement in other respects.

Specifically, the Agreement provides that Berkel shall operate the crane in a safe and lawful manner at all times and in accordance with the manufacturer's operator's manual, all applicable laws, regulations, ordinances rules and standards, and that its operation of the crane

---

[10] Maxim argues that even if the court should disagree with Maxim's position regarding Berkel's obligation to *indemnify* Maxim, then, at the very least, Berkel is required by the Agreement to *defend* Maxim and to provide it with *insurance coverage*—and certainly neither of those obligations are prohibited by the Texas Anti-Indemnity Statute (see discussion above).

would not exceed the manufacturer's safety requirements and rated load capacities.[11] The evidence established to date clearly demonstrates that Berkel breached the Agreement:

- By failing to operate the Crane in a safe and lawful manner at all times;

- By failing to operate the Crane in accordance with the manufacturer's operator's manual ;

- By operating the Crane in excess of the manufacturer's safety requirements;

- By operating the Crane in excess of its rated load capacities;

- By subjecting the Crane to careless and needlessly rough usage.

- By failing to comply with all applicable laws, regulations and ordinances, including the occupational safety and health act and regulations (including but not limited to 29 C.F.R. 1926, subpart n – Cranes And Derricks In Construction and CFR 1910, 18 – crawler locomotive and truck cranes), and all applicable ANSI standards, with respect to the operation of the equipment.

The above referenced breaches of the Agreement are in addition to:

- Berkel's refusal to defend and indemnify Maxim; and

- Berkel's refusal to meet its contractual obligations to insure that Maxim was provided coverage as an additional insured under Berkel's insurance policy(ies).

The evidence in support of Maxim's breach of contract claims as outlined above is overwhelming, and rather than inundate the Court with all the evidence in support of same, the following, as well as the evidence attached hereto, is sufficient to create a genuine issue of fact on the challenged claims.

The Agreement between Maxim and Berkel provides that Berkel shall operate the Crane in a safe and lawful manner at all times and in accordance with the manufacturer's operator's

---

[11] See - Exhibit A, Bare Rental Agreement between Maxim and Berkel.

manual, all applicable laws, regulations, ordinances, rules and standards, and that its operation of the crane would not exceed the manufacturer's safety requirements and rated load capacities.[12]

The Code of Federal Regulations, 1926 Subpart CC - Cranes and Derricks in Construction, provides, in part, that the Crane should be operated in compliance with the manufacturer's rated capacity, 1926.1417(o); that the Crane must not be operated in excess of its rated capacity, 1926.1417(o)(1) and that the crane operator must not be required to operate the equipment in a manner that would violate paragraph (o)(1) of this section. 1926.1417(o)(2). Additionally, the regulations provides that the operator must verify that the load is within the rated capacity of the crane 1926.1417(o)(3)[13]

The Crane Operations Manual also provides that the Crane should not be operated in excess of the crane's rated capacity,[14] and that the Crane should not be used to pull on a load that is not free.[15]

Whether the Crane was operated in excess of its rated capacity goes to the crux of this case, and is an issue that is contested by Berkel alone; however, there is a plethora of evidence to indicate that the crane was overloaded when Berkel attempted to release the stuck auger from the ground.

The data from the Crane's computer[16] and the Deposition of Curt Imerman[17] provide a good summary for the Court of the evidence generated through the investigation and discovery completed to date, and which clearly establishes that the crane was overloaded. Also, the

---

[12] See Exhibit A - Agreement between Maxim and Berkel.
[13] See Exhibit B - Excerpts from Code of Federal Regulations; 1926 CFR 1926 Subpart CC - Cranes and Derricks in Construction;
[14] See Exhibit C – P. 5, Crane Operators Manual;
[15] See Exhibit C – P. 6, Crane Operators Manual;
[16] Exhibit D - Correspondence dated from Link-Belt Construction Equipment Co., to Maxim Crane Works with attached data.
[17] Exhibit E - Deposition excerpts from Curt Imerman.

affidavits of Chris Prestridge[18] and Mickey Distotell[19] clearly indicate that the crane was being operated well in excess of its tolerance and capacity just prior to the incident.

Such evidence clearly creates a question of fact as to whether Berkel and its crane operator were operating the crane in compliance with the terms and conditions of the Agreement. Maxim would also advise the Court that many other depositions taken in this case also provide evidence to support Maxim's contentions in this regard and, accordingly, Maxim refers the Court to the depositions of John Merrill, Cody Crisp, James Davidson, Mark Stacey, Eric Scott, Joe Riojas, and Andrew Bennett and incorporates those depositions by reference herein[20] (see attached).

Given the abundance of evidence referenced above and attached to this response, Maxim has clearly demonstrated that there is more than sufficient evidence to create an issue of fact on Maxim's breach of contract claims against Berkel and, therefore, the Court must deny Berkel's No -Evidence Motion for Summary Judgment.

## VI. PRAYER

WHEREFORE, PREMISES CONSIDERED, MAXIM CRANE WORKS, L.P. prays that *Berkel & Company Contractors, Inc.'s Partial Motion For Summary Judgment On Maxim Crane Works, L.P.'s Cross Claims For Contractual Indemnity and Additional Insured Coverage* and *Maxim Crane Works, L.P.'s Response To Defendant And Cross-Defendant, Berkel & Company Contractors, Inc.'s No-Evidence Motion For Summary Judgment on Maxim Crane Works, L.P.'S Breach Of Contract Claims* be Denied, that Plaintiff takes nothing by reason of this suit, and that MAXIM CRANE WORKS, L.P. recover its costs, and for such other and

---

[18] Exhibit F - Affidavit and Recorded statement of Chris Prestridge;
[19] Exhibit G - Affidavit and Recorded statement of Mickey Disotell.
[20] Exhibit H - Depositions of John Merrill, Cody Crisp, James Davidson, Mark Stacey, Eric Scott and Joe Riojas.

further relief, both general and special, at law and in equity, to which **MAXIM CRANE WORKS, L.P.** may show itself justly entitled and such that justice be done.

Respectfully submitted,

**J. DIAMOND AND ASSOCIATES, PLLC**


_____/S/ Jeffrey L. Diamond_____

Jeffrey L. Diamond
    State Bar No. 05802500
Jeffrey@jdiamondandassociates.com
Ann E. Knight
    State Bar No. 00786026
Ann@jdiamondandassociates.com
1010 N. San Jacinto Street
Houston, Texas 77002
Telephone (713) 227-6800
Facsimile (713) 227-6801

Attorneys for Defendants:
**MAXIM CRANE WORKS, L.P.** and
**JAMES DAVIDSON**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was sent via facsimile, hand-delivered, via electronic transmission, and/or deposited in an official depository of the United States Postal Service, in a postage-paid wrapper, certified mail, return receipt requested, properly addressed to all known counsel of record on the 3rd day of February, 2015.

*Via Fax: 713-222-3850*
Kurt B. Arnold
M. Paul Skrabanek
**ARNOLD & ITKIN**
6009 Memorial Drive
Houston, TX 77007

*Via Fax: 404-949-8159*
Charles Lloyd Clay, Jr.
**CHUCK CLAY & ASSOCIATES, LLC.**
(Admitted *Pro Hac Vice*)
3280 Peachtree Road NE, Suite 2050
Atlanta, GA 30305

*Via Fax: 213-680-4470*
John Dwyer
**GORDON & REES, LLP**
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

*Via Fax: 713-961-3938*
Steven D. Selbe
**GORDON & REES, LLP**
1900 West Loop South, Suite 1000
Houston, TX 77027

*Via Fax: 713-418-2001*
Andrew T. McKinney IV
D. Douglas Mena
**LITCHFIELD CAVO LLP**
One Riverway, Suite 1000
Houston, TX 77056

*Via Fax: 281-331-8083*
Jerry B. Dozier
**LAW OFFICE OF JERRY B. DOZIER**
2318 Koster Road
Alvin, TX 77511

*Via Fax 713-951-3720*
Russell S. Post
Marcos Rosales
**Beck Redden LLP**
1221 McKinney, Suite 4500
Houston, TX 77010

*Via Fax: 979-849-7729*
Justin Gilbert
**GILBERT & FUREY**
222 North Velasco Street
Angleton, TX 77515

_____/S/ Jeffrey L. Diamond_____
Jeffrey L. Diamond

# Exhibit G

Filed for Record
2/9/2015 3:01:17 PM
Rhonda Barchak, District Clerk
Brazoria County, Texas
75576-CV
Kandice Haseloff, Deputy

CAUSE NO. 75576-CV

| | | |
|---|---|---|
| TYLER LEE AND LEIGH ANN LEE, INDIVIDUALLY AND AS NEXT FRIEND OF SYDNEY ROSE LEE, MINOR | § § § § | IN THE DISTRICT COURT OF |
| Plaintiff | § § § | |
| v. | § § | BRAZORIA COUNTY, TEXAS |
| BERKEL & COMPANY CONTRACTORS, INC. MAXIM CRANE WORKS, L.P., DIXON EQUIPMENT SERVICES, INC., FLOYD DIXON, ISAAC DOLAN, JAMES DAVIDSON, ANDREW BENNETT, AND LINK-BELT CONSTRUCTION EQUIPMENT CO. | § § § § § § § § § | |
| Defendants | § § | 149TH JUDICIAL DISTRICT |

**BERKEL & COMPANY CONTRACTORS, INC.'S
REPLY TO MAXIM'S RESPONSE TO BERKEL'S MOTION FOR PARTIAL SUMMARY
JUDGMENT ON MAXIM CRANE WORKS, L.P.'S CROSS-CLAIMS FOR
CONTRACTUAL INDEMNITY AND ADDITIONAL INSURED COVERAGE**

and

**BERKEL & COMPANY CONTRACTORS, INC.'S
REPLY TO MAXIM'S RESPONSE TO BERKEL'S NO-EVIDENCE
MOTION FOR SUMMARY JUDGMENT ON MAXIM CRANE WORKS, L.P.'S
BREACH OF CONTRACT CLAIM**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, BERKEL & COMPANY CONTRACTORS, INC. (Berkel), Defendant herein, and files this Reply to (1) Maxim's Response to Berkel's Motion for Partial Summary Judgment on Maxim Crane Works, L.P.,'s (Maxim) Cross-Claims for Contractual Indemnity and Additional Insured Coverage and (2) Maxim's Response to Berkel's No-Evidence Motion for Summary Judgment on Maxim's Breach of Contract Claim, and in support of same, would show the Court as follows:

## OVERVIEW

Without citing any legal authority whatsoever, Maxim argues that both the express negligence rule and the Anti-Indemnity Act are inapplicable to Berkel's agreement to indemnify Maxim. Maxim erroneously claims the parties' agreement "does not require Berkel to defend and indemnify Maxim for Maxim's own negligence." Maxim's Rsp at 11. Clearly it does because the agreement provides that Berkel will indemnify Maxim for injuries caused "in whole or in part" by Berkel, that is, even when Maxim or the other named indemnitees are concurrently negligent with Berkel.

The Texas Supreme Court has examined comparative indemnity agreements such as the one between Maxim and Berkel at least twice -- both times before the Anti-Indemnity Act was passed. Contrary to Maxim's suggestion otherwise, the Supreme Court held such agreements must pass the express negligence test to be enforceable. As a result, the only argument Maxim offers in its Response for avoiding application of the Anti-Indemnity Act under these facts is both factually inaccurate and clearly contrary to Texas law.

Furthermore, Berkel alleged in its no-evidence motion for summary judgment that there is no evidence Maxim was damaged by Berkel's alleged breach of contract. In response, Maxim did not discuss the challenged element of damages at all. Because Maxim failed to raise a genuine issue of material fact about the challenged damages element, this Court is required under Texas Rule of Civil Procedure 166a(i) to grant Berkel's summary judgment on Maxim's breach of contract claim.

2

# TRADITIONAL MOTION FOR SUMMARY JUDGMENT

## ARGUMENT & AUTHORITIES

On page 9 of Maxim's unnumbered Response, Maxim categorizes three types of indemnity agreements that Maxim argues were "permitted in Texas" prior to the enactment of the Anti-Indemnity Act: (1) Broad form clauses where an indemnitor agrees to indemnify the indemnitee for everything including the indemnitee's sole negligence; (2) Intermediate form clauses where the indemnitor agrees to indemnify for everything but the indemnitee's sole negligence; and (3) Limited form clauses where the indemnitor agrees to indemnify only for its own fault.[1] Maxim suggests the indemnity agreement between it and Berkel is a limited form clause because it "does not require Berkel to defend and indemnify Maxim for Maxim's own negligence." Maxim's Rsp at 11. Maxim thinks this is important because, according to Maxim, the Anti-Indemnity Act only prohibits agreements to the extent an indemnitor assumes liability for the negligence of an indemnitee. See Maxim's Rsp at 9 ("[T]he intent of the statue is clear, that is, to avoid both defense and indemnification and additional insured clauses/provisions that purport to indemnify the indemnitee/additional insured for its own negligence or fault...").

Maxim mischaracterizes the parties' agreement. The indemnity agreement obligates Berkel to indemnify Maxim to the extent Lee's injury was caused "in whole or in part" by Berkel. Under the indemnity categories suggested by Maxim, the Maxim/Berkel agreement is an intermediate form clause, more commonly called a comparative indemnity agreement by Texas courts, because it was meant to require Berkel to indemnify Maxim even when Maxim was partly at fault for an injury.

---

[1] Counsel for Berkel has been unable to locate even a single Texas case that recognizes, uses, discusses or supports in any way Maxim's categorization.

Maxim wants this Court to ignore the "in part" portion of the parties' agreement. *See* Maxim's Rsp at 12 ("The limited indemnity language, therefore, clearly restricts Maxim's right to defense and indemnity only for Berkel's negligence."). The reason for Maxim's attempted misdirection is certainly clear. Agreements to indemnify another for its own negligence such as the agreement between Maxim and Berkel are void under the Anti-Indemnity Act.

A.    **Maxim is accused of independent acts of negligence.**

Before delving into the case law concerning comparative indemnity agreements, Berkel would remind this Court that the Plaintiffs have made numerous allegations of direct negligence against Maxim. Among other allegations, Plaintiffs allege Maxim failed to:

- Provide a safe crane to Berkel;

- Properly inspect the crane;

- Properly set up the crane;

- Provide a crane that had adequate, functioning safety equipment, such as the crane's computer, warnings and other safety features;

- Properly supervise the set up of the crane;

- Obtain manufacturer approval for deviations from the manufacturer-approved configuration of the crane; and

- Provide proper instruction, training, and safety policies for the use of the crane.

It is not correct, then, that "[t]he only reason Maxim is a party to the present lawsuit is due to Berkel's own negligence." Maxim's Rsp. at 14. Maxim and Berkel are both accused of independent acts of negligence that proximately caused Lee's injury.

b.    **Pre-Anti-Indemnity Act, comparative indemnity agreements *were* required to pass the express negligence test.**

4

Not only does Maxim's argument rest on a false representation of fact (*i.e.*, that Maxim's negligence is not at issue in the instant litigation), it is also based on the false premise that, pre-Anti-Indemnity Act, comparative indemnity agreements were not subject to the express negligence test. As will be demonstrated below, the case law clearly establishes just the opposite. Pre-Anti-Indemnity Act, comparative indemnity agreements absolutely had to satisfy the express negligence test in order to be enforceable in Texas, and since 2012, comparative indemnity agreements are void under the Anti-Indemnity Act.

The indemnity agreement at issue in *Gilbane Bldg. Co. v. Keystone Structural Concrete, Ltd.*, 263 S.W.3d 291, 296 (Tex. App. –Houston [1st Dist.] 2007, no pet.), was very similar to the one in the instant case. It provided:

> (Keystone) agrees to indemnify and hold harmless, [Gilbane], the Owner, …from and against claims… arising out of or resulting from the performance or failure in performance of [Keystone's] work under this Agreement provided that any such claim, damage, loss, or expense… is caused, in whole or in part, by any negligent act or omission of [Keystone]…, regardless of whether caused in part by a party indemnified hereunder.

*Id.* at 296 n. 5.2. Just as Maxim does here, Gilbane argued the express negligence rule was inapplicable because it was not seeking to be indemnified for its own negligence, but rather for Keystone's sole negligence in causing the Plaintiff's injuries. *Id.* at 297. Keystone argued, on the other hand, that the contractual indemnity provision was unenforceable because Gilbane was sued for its own negligence, the indemnity provision did not expressly indemnify Gilbane for its own negligence, and therefore, it did not comply with the express negligence test mandated by Texas law. The Court of Appeals agreed with Keystone. *Id.*

The *Gilbane* Court found its case analogous to that of *Fisk Elec. Co. v. Constructors & Associates, Inc.*, 888 S.W.2d 813 (Tex. 1994). In *Fisk*, the Supreme Court held, "no obligation to indemnify an indemnitee for the costs or expenses resulting from a claim made against it for

5

its own negligence arises unless the indemnification agreement complies with the express negligence test." *Id.* at 813-14. The *Fisk* Court held that an indemnity agreement is "clear and enforceable or it is not" and that "[s]uch a determination should not depend on the outcome of the underlying suit, but should be established as a matter of law..." *Id.* at 815.

The specific issue examined in *Fisk* was "whether an indemnitor, Fisk Electric Company, must pay attorney's fees and other expenses incurred by an indemnitee, Constructors & Associates, when the indemnitee is accused of negligence, but not found to be negligent, and the indemnity agreement does not meet the express negligence test." *Id.* at 813. Constructors argued in *Fisk* that, despite the fact the indemnity agreement did not satisfy the express negligence test, Fisk had a duty to pay for Constructors' defense because the jury found Constructors not negligent. The indemnity provisions in *Fisk* provided: "[t]o the fullest extent permitted by law, [Fisk] shall indemnify, hold harmless, and defend [Constructors] ... from and against all claims, damages, losses, and expenses, including but not limited to attorney's fees ..." arising out of or resulting from the performance of Fisk's work. *Id.* at 814. The Supreme Court refused to enforce the parties' indemnity agreement, noting:

> By Constructors' own admission, if the plaintiff in the underlying suit were successful [in its lawsuit against Constructors], Fisk would not be obligated to pay anything to Constructors because the agreement fails to satisfy the express negligence test. Yet, Constructors would have this Court impose on Fisk a duty to bear the costs of defense. Such a holding would be contrary to the reasoning of *Ethyl.* The purpose of the express negligence rule 'is to require scriveners to make it clear when the intent of the parties is to exculpate an indemnitee for the indemnitee's own negligence.' Either the indemnity agreement is clear and enforceable or it is not. Such a determination should not depend on the outcome of the underlying suit, but should be established as a matter of law from the pleadings. The rule proposed by Constructors regarding defense expenses would leave indemnitors liable for a cost resulting from a claim of negligence which they did not agree to bear. Significantly, it would also leave indemnitors vulnerable to indemnitees who might settle cases without admitting negligence, leaving the indemnitor to pay the costs of settlement and defense. Without an express reference in the indemnification provision to claims based upon

6

negligence, there is no indemnity for defense costs incurred in connection with a negligence claim irrespective of whether the claim is ultimately proved.

*Id.* at 815-816.

*American Eurocopter v. CJ Systems Aviation Group,* 407 S.W.3d 274 (Tex. App.—Dallas 2013, pet. denied), is another instructive case. American was sued for negligence arising out of a helicopter crash. American settled the lawsuit against it then sued CJ Systems for contractual indemnity. *Id.* at 278. The parties' agreement contained a provision in which CJ agreed to indemnify American against all losses, claims, and expenses including legal expenses with respect to defective work "arising from services furnished and work performed" by CJ Systems. *Id.* at 288. The indemnity agreement also provided:

> [CJ's] indemnity and hold harmless obligations specifically extend to any and all losses, damages, injuries, claims, demands and expenses, including legal expenses of any kind and nature, arising from [CJ's] sole negligence. Without limiting the foregoing, in no event shall American Eurocopter be liable for any loss, damage, injury, or claim resulting from any matter, which could have been discovered by [CJ] through the exercise of reasonable diligence in connection with the undertaking of any inspection, maintenance, and/or repair performed by [CJ].

In the contractual indemnity lawsuit, the jury found CJ's defective work resulted in a loss or claim to American and that CJ, through reasonable diligence, could have discovered a matter that resulted in a loss or claim against American. *Id.* at 280. The jury did not find that the loss or claim against American arose from CH's sole negligence. *Id.* The jury also found that American's negligence was a proximate cause of the accident in question. *Id.*

On appeal, CJ Systems argued that the express negligence test barred American's claim for indemnity. *Id.* at 289. American argued the express negligence doctrine did not apply because American sought indemnity for the consequences of CJ's negligence and not for its own

7

negligence. *Id.* The Court held the agreement had to satisfy the express negligence test to be enforceable, with the following relevant discussion:

> American also argues the express negligence doctrine is not implicated because the indemnity clause between CJ and American does not reference American's own negligence. As described above, we disagree with such characterization. The agreement between CJ and American implicates indemnification for American's negligence in the event CJ could have discovered—through the exercise of reasonable diligence in connection with its undertaking of any inspection, maintenance, or repair—the matter causing the loss. The jury found both CJ's and American's negligence were causes of the crash, which resulted in all of the losses for which American seeks indemnity. Because the indemnity provision did not express in clear, unambiguous terms that CJ was indemnifying American for its own negligence and that its indemnification applied if the loss was due to the parties' concurrent negligence, application of the express negligence doctrine bars American's claim for indemnity.

*Id.* at 290.

The *American Eurocopter* Court relied on *Ethyl Corp. v. Daniel Constr. Co.*, 725 S.W.2d 705 (Tex. 1987), in reaching its decision. It said in relevant part:

> American's argument that the express negligence doctrine does not apply because American seeks indemnification for the consequences of CJ's negligence and not for its own negligence is unpersuasive. The supreme court addressed a similar argument in *Ethyl Corp.* The dispute there originated from a worker's compensation claim. When the employee of a construction company sued the premises owner, the owner sought indemnity from the construction company. The jury in the indemnity suit apportioned responsibility for the injuries ninety percent against the owner and ten percent against the construction company. Following the jury's verdict, the trial court granted indemnity to the owner, and the court of appeals reversed the judgment based on its conclusion that the indemnity provision did not clearly and unequivocally require indemnification for the owner's own negligence or the parties' concurrent negligence. Affirming the appellate decision, the supreme court adopted the express negligence doctrine and applied it to proportionate responsibility, stating, 'Indemnitees seeking indemnity for the consequences of their own negligence which proximately causes injury jointly and concurrently with the indemnitor's negligence must also meet the express negligence test.... In Texas, there exists no right to indemnity on a comparative basis under the common law.... Parties may contract for comparative indemnity so long as they comply with the express negligence doctrine set out herein.'

*American Eurocopter* at 289-90.

8

The bottom line is this. Maxim wants Berkel to defend and indemnify it in the instant litigation against *all* of the Plaintiff's claims, including those that allege negligence against Maxim. Regardless of Maxim's insistence that it is not seeking indemnity for its own negligence from Berkel,[2] if Berkel were to defend and indemnify Maxim in the instant litigation, Berkel would clearly be absolving Maxim of the financial responsibility for its own negligence that caused or contributed to Lee's accident. Comparative indemnity agreements such as this one were required to pass the express negligence test long before the Anti-Indemnity Act was passed (which this agreement clearly does not do). See *Ethyl* and *Fisk, supra*. Since 2012 when the Anti-Indemnity Act was passed, comparative indemnity agreements (and agreements to purchase insurance to support such obligations) are no longer allowed in Texas. As a result, Maxim's cross-claims against Berkel for contractual indemnity and additional insured coverage should be denied as a matter of law.

## NO EVIDENCE MOTION FOR SUMMARY JUDGMENT

**Maxim did not raise even a scintilla of evidence on the challenged element of damages.**

Maxim's burden in response to Berkel's no-evidence summary judgment motion was to raise a genuine issue of material fact about the element(s) challenged by Berkel. Tex. R. Civ. Proc. 166a(i). Berkel alleged in its motion that Maxim did not have any damages proximately caused by Berkel. Maxim attached numerous documents to its response that Maxim claims "clearly establish[] that the crane was overloaded" on the occasion in question. Assuming the evidence speaks to the issue of Berkel's breach as Maxim represents, Maxim has failed in two respects.

---

[2] "Maxim's Agreement does not require Berkel to defend and indemnify Maxim for Maxim's own negligence." "Maxim is not seeking indemnity for its own negligence." "Maxim is not seeking indemnity for its own negligence, but only for the negligence of Berkel..." Maxim's Rsp. at 11, 13.

9

First, according to Maxim's description of the evidence in its Response, none of the evidence speaks to the challenged issue of Maxim's damages. *See* Maxim's Rsp at 18 ("Such evidence clearly creates a question of fact as to whether Berkel and its crane operator were operating the crane in compliance with the terms and conditions of the Agreement."). Maxim specifically addresses in its Response what Berkel agreed to do in its contract with Maxim and how Berkel deviated on the occasion in question, *see* Maxim's Rsp at 15 to 18, but it never addresses how it was damaged by Berkel's deviation. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (A Court will grant a no-evidence motion for summary judgment when a nonmovant does not support a challenged damages element with evidence).

Second, even if the evidence Maxim attached to its Response (including six complete and one partial deposition, excerpts from the Code of Federal Regulations and the Crane Operators Manual, two affidavits, and two recorded statements) might somehow touch on Maxim's damages, neither this Court nor Berkel is required to sift through the voluminous evidence to find it. Maxim is required to point out with particularity what the relevant evidence is. *See Frankoff v. Norman*, 448 S.W.3d 75, 83 (Tex. App.—Houston [14th Dist.] 2014, n.w.h.) ("[N]either the trial court nor this court is required to comb through the referenced summary judgment evidence to see if a genuine issue of material fact had been raised as to the challenged element.").

An identical situation was presented to the Fourteenth Court of Appeals in *San Saba Energy, L.P. v. Crawford*, 171 S.W.3d 323 (Tex. App.—Houston [14th Dist.] 2005, no pet.). The Court in *San Saba* held the nonmovant had not carried its burden of proof on the damages element of its breach of contract claim. The explanation supporting its decision to affirm the no-evidence motion for summary judgment is particularly relevant here. The Court said:

In their second issue, the Interest Owners assert the trial court erred in granting summary judgment on Crawford's no-evidence ground challenging the damages element of their contract claim based on Crawford's alleged failure to give timely notice under the Operating Agreement regarding his acquisition or right to acquire the Term Assignment (hereinafter "Term Assignment Claim"). In response to a no-evidence ground for summary judgment, the nonmovants need not marshal their proof; however, their summary-judgment response needs to point out evidence that raises a genuine issue of fact as to the challenged elements...

The Interest Owners' response in opposition to Crawford's motion for summary judgment addresses only the legal standard for traditional motions for summary judgment. Although the response describes much of the evidence filed in response to Crawford's motion, it does not state that any of this evidence raises a fact issue as to damages regarding the Interest Owners' Term Assignment Claim. The response does not state any method of calculating damages or any amount of losses allegedly resulting from Crawford's alleged breach in the Term Assignment Claim. Indeed, the response does not use the word 'damage' or 'damages' a single time. The Interest Owners do state that they 'have affirmatively established each of the elements of their claims against Crawford with the evidence presented in response to Crawford's motion.' They also state that they 'have affirmatively established some evidence of each element of all of their claims against [Crawford], thereby precluding summary judgment.' The Interest Owners also incorporate by reference into their summary-judgment response five affidavits and excerpts from three depositions. Their summary-judgment evidence exceeds six hundred fifty pages in length...

On appeal, the Interest Owners assert that an affidavit from Jonathan Preston raises a fact issue as to the challenged damage element; however, they never made this assertion in their summary-judgment response. We conclude that the response in this case is similar to the one this court found deficient in the Hintz case. *See Hintz*, 2004 WL 2359260, at *2–5. If we were to determine that the summary-judgment response in this case were sufficient under Rule 166a(i), then we would be holding that a nonmovant can avoid summary-judgment by filing voluminous and complicated summary-judgment evidence along with a response that states generally that a genuine fact issue has been raised as to each element. In that event, the trial court would have the onerous task of searching the summary-judgment evidence to see if a genuine issue of fact had been raised as to each challenged element. Such a holding would place an unreasonable burden on the trial court and would violate the requirement of Rule 166a(i) that the response must point out evidence that raises a genuine issue of fact as to each challenged element... Therefore, we conclude that the trial court did not err in granting summary judgment as to the Term Assignment Claim because the Interest Owners' response does not point out evidence that allegedly raises a genuine issue of fact as to the damages element of this claim. Accordingly, we overrule the Interest Owners' second issue.

*Id.* at 330-332. The same result is warranted in this case. Simply stated, because Maxim failed to raise a genuine issue of material fact on the issue of its damages in response to Berkel's no-evidence challenge of the damages element, this Court is required to grant Berkel's motion on Maxim's breach of contract claim.

## CONCLUSION

Berkel does not owe Maxim a defense or indemnity in the instant litigation because the parties' contractual indemnity agreement violates Texas' Anti-Indemnity Act, fails the express negligence test, and is inapplicable to the facts of this case. The insurance-purchasing requirements in the parties' Rental Agreement likewise violate the Anti-Indemnity Act. Moreover, Maxim's breach of contract claim against Berkel should be denied because Maxim failed to raise a genuine of issue of material fact on the issue of whether Berkel's alleged breach of the Rental Agreement proximately caused Maxim damages.

For all the reasons stated herein, Berkel is entitled to summary judgment as a matter of law on Maxim's breach of contract claim. Berkel therefore prays that this Court will grant its motions for summary judgment. It also prays for such other relief, both at law and in equity, to which it is entitled.

12

Respectfully submitted,

LITCHFIELD CAVO LLP

By: _Doug Mena \KC_
ANDREW T. MCKINNEY IV
SBN: 13716800
D. DOUGLAS MENA
SBN: 24054982
One Riverway, Suite 1000
Houston, Texas 77056
(713) 418-2000
(713) 418-2001 – FAX
mckinney@litchfieldcavo.com
mena@litchfieldcavo.com

ATTORNEYS FOR DEFENDANTS,
**BERKEL & COMPANY
CONTRACTORS, INC. AND ANDREW
BENNETT**

13

## CERTIFICATE OF SERVICE

In accordance with Rules 21 and 21a of the Texas Rules of Civil Procedure, a true and correct copy of the above and foregoing instrument was served on all counsel of record via facsimile, hand delivery, regular mail and/or certified mail/return receipt requested on this 9th day of **February**, 2015, and properly addressed as follows:

**Mr. Kurt B. Arnold**
**Mr. M. Paul Skrabanek**
ARNOLD & ITKIN LLP
6009 Memorial Drive
Houston, Texas 77007

**Justin Gilbert**
GILBERT & FUREY
222 North Velasco St.
Angleton, Texas 7755

**Ms. Ann E, Knight**
J DIAMOND AND ASSOCIATES PLLC
1010 N San Jacinto
Houston, Texas 77002

**Mr. John D. Dwyer**
GORDON & REES LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

**Mr. Steven D. Selbe**
GORDON & REES, L.L.P.
1900 West Loop South, Suite 1000
Houston, Texas 77027

**Mr. Jerry B. Dozier**
Law Office of Jerry B. Dozier, P.C.
2318 Koster Drive
P.O. Box 2128
Alvin, Texas 77512

D. DOUGLAS MENA

14

# Exhibit H

CAUSE NUMBER 75576-CV



| | |
|---|---|
| TYLER LEE AND LEIGH ANN LEE INDIVIDUALLY AND AS NEXT FRIEND OF SYDNEY ROSE LEE, MINOR | IN THE DISTRICT COURT OF |
| vs. | BRAZORIA COUNTY, TEXAS |
| BERKEL & COMPANY CONTRACTORS, INC. MAXIM CRANE WORKS, L.P., DIXON EQUIPMENT SERVICES, INC., FLOYD DIXON, ISAAC DOLAN, JAMES DAVIDSON, ANDREW BENNETT, AND LINK-BELT CONSTRUCTION EQUIPMENT CO. | 149TH JUDICIAL DISTRICT |

## ORDER ON DEFENDANT BERKEL & COMPANY'S TRADITIONAL AND NO EVIDENCE MOTION FOR SUMMARY JUDGMENT

On the __10th__ day of February, 2015 came on to be heard the traditional and no evidence motion for summary judgment of Berkel & Company. After considering the evidence and argument of counsel the court finds that both the traditional and no evidence motions should be and are hereby DENIED.

Signed this the __2nd__ day of February, 2015.

_____
Judge Presiding

# EXHIBIT C

8

CAUSE NO. 75576-CV

| | | |
|---|---|---|
| TYLER LEE AND LEIGH ANN LEE | § | IN THE DISTRICT COURT OF |
| INDIVIDUALLY AND AS NEXT FRIEND | § | |
| OF SYDNEY ROSE LEE, MINOR | § | |
| | § | |
| *Plaintiff* | § | |
| | § | |
| VS. | § | BRAZORIA COUNTY, TEXAS |
| | § | |
| BERKEL & COMPANY CONTRACTORS, | § | |
| INC., MAXIM CRANE WORKS, L.P., DIXON | § | |
| EQUIPMENT SERVICES, INC., FLOYD | § | |
| DIXON, ISAAC DOLAN, JAMES DAVIDSON | § | |
| ANDREW BENNETT, AND LINK-BELT | § | |
| CONSTRUCTION EQUIPMENT CO. | § | |
| | § | |
| *Defendants* | § | 149ᵀᴴ JUDICIAL DISTRICT |

## MAXIM'S SUPPLEMENTAL MOTION FOR ENTRY OF JUDGMENT ON MAXIM'S CROSS ACTION AGAINST BERKEL

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, MAXIM CRANE WORKS, L.P. a Defendant in the above numbered and referenced matter (hereinafter "Maxim") and files this *Supplemental Motion for Entry of Judgment on Maxim's Cross Action Against Berkel*, and in support thereof would respectfully show as follows:

I.

At the post-verdict hearings held on June 8, 2015, Berkel again, through a Motion for JNOV, a Motion to Disregard, and a Motion for Entry of Judgment, asked the court to find that Berkel is entitled to the workers' compensation bar to suit and that the Lees' claims and verdict against Berkel should, as a matter of law, be disposed of by the court—i.e. that the Lees should take nothing of and from Berkel *(hereinafter may sometimes be referred to as "Berkel's Comp Bar Argument")*. The court has taken Berkel's arguments under

advisement; thus, the reason why Maxim has filed this *Supplemental Motion for Entry of Judgment on Maxim's Cross Action Against Berkel.*

## II.

Maxim hereby adopts and incorporates by reference, as if the same was fully set forth herein below, its previously filed *Motion for Entry of Judgment as to Maxim's Cross Action Against Berkel (and Exhibits)*, which was filed on or about June 4, 2015. Hereinafter referred to as the "Original Motion for Entry of Judgment." The Original Motion for Entry of Judgment was based upon the facts and status of the case that existed at the time said pleading was filed. Specifically, that Berkel was not considered Mr. Lee's employer for purposes of the Texas Worker's Compensation Act, and so did not have the benefit of the workers compensation bar to suit by the Lees. Under that set of circumstances and facts, Maxim acknowledges that pursuant to Chapter 151 of the Texas Insurance Code (the Texas Anti-Indemnity Act) it would not be entitled to indemnity of and from Berkel; however, Maxim is of the opinion that it would be entitled to its defense costs of and from Berkel, **but only to the extent** caused in whole or in part by any negligent act or omission or any intentional act of Berkel. See the language of Chapter 151 below:

Sec. 151.102. AGREEMENT VOID AND UNENFORCEABLE.

Except as provided by Section 151.103, a provision in a construction contract, or in an agreement collateral to or affecting a construction contract, is void and unenforceable as against public policy *to the extent* that it requires an indemnitor to indemnify, hold harmless, or defend a party, including a third party, against a claim *caused* by the negligence or fault, the breach or violation of a statute, ordinance, governmental regulation, standard, or rule, or the breach of contract *of the indemnitee*, its agent or employee, or any third party under the control or supervision of the indemnitee, other than the indemnitor or its agent, employee, or subcontractor of any tier. [*Emphasis added*]

In the Charge submitted to the jury by the court, MAXIM was assessed 10% responsible, and BERKEL was assessed 90% responsible, in the negligence/liability questions. *See Exhibit D, herein.* Therefore, it is Maxim's position that it is entitled to reimbursement of 90% of its defense costs.

Contrary to Berkel's assertions, when the anti-indemnity provisions of Chapter 151 are reviewed, the intent of the statute is clear, that is, to avoid both defense and indemnification and additional insured clauses/provisions that purport to indemnify the indemnitee/additional insured for *its own negligence or fault, but not void the indemnity provision in its entirety.* The indemnity provision is unenforceable *to the extent* that it requires the indemnitor to indemnify the indemnitee for the *indemnitee's negligence.* The Bare Rental Agreement between Maxim and Berkel does not require Berkel to defend and indemnify Maxim for Maxim's own negligence. Rather, the Agreement states Berkel shall do so "**but only to the extent** caused in whole or in part by any negligent act or omission or any intentional act of **Lessee (Berkel)**..."

**However, in the event that this court, post-verdict, or some appellate court in the future, agrees with Berkel's Comp Bar Argument and concludes that Berkel was Tyler Lee's employer at the time of incident at issue and that, therefore, Berkel is entitled to the workers' compensation bar to suit, that the Lees' claims and verdict against Berkel should, as a matter of law, be dismissed, and that the Lees should take nothing of and from Berkel, then it is Maxim's position that it is entitled to not only 90% of its defense costs, but also to indemnity, of and from Berkel in the amount of the verdict returned by the jury in this** case. Chapter 151 supports Maxim's position as to indemnity under the above described facts and circumstances. See the Exception to Chapter 151 set forth below:

Sec. 151.103. EXCEPTION FOR EMPLOYEE CLAIM.

Section 151.102 does not apply to a provision in a construction contract that requires a person to indemnify, hold harmless, or defend another party to the construction contract or a third party against a claim for the bodily injury or death of an employee of the indemnitor, its agent, or its subcontractor of any tier.

So, if Berkel is allowed to utilize the workers compensation bar to suit as a defense to the Lee claims and verdict, then, pursuant to Chapter 151.103 and the Bare Rental Agreement, Berkel would be considered Lee's employer, the exception to the Anti-Indemnity Statute would apply, and Berkel would owe Maxim both **defense and indemnity.**

### III.

Pursuant to its Original Motion for Entry of Judgment, Maxim submitted two proposed Judgments for the Court to consider as to the defense costs issue—one in favor of Maxim, and one in favor of Berkel. At the June 8, 2015 post-verdict hearing, Maxim made its position as to these proposed Judgments clear—either the court should enter the appropriate Judgment as a "Partial Judgment" and do so before the entry of the Final Judgment, or the court should take the applicable wording of the appropriate Judgment and paste it into the Final Judgment that the court ultimately elects to enter in the case.

### IV.

However, in the event that the Court embraces *Berkel's Comp Bar Argument* and is inclined to issue a ruling/Judgment accordingly, then Maxim attaches another proposed Judgment for the court's consideration. See Exhibit "A". Like the other two Judgments previously proffered by Maxim, if the court elects to go with the Judgment attached as Exhibit "A", then the Court should enter said Judgment as a "Partial Judgment" and do so before the entry of the Final Judgment, or the Court should take the applicable wording of said Judgment and paste it into the Final Judgment that the court ultimately elects to enter in the case.

The Judgment attached as Exhibit "A" permits Maxim, under the circumstance wherein Berkel's Comp Bar Argument is embraced by the Court, to recover indemnity of and from Berkel (pursuant to Chapter 151.103 and the Bare Rental Agreement) in the amount found by the jury in their verdict from the trial of this case.

### V. PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, MAXIM CRANE WORKS, L.P., prays that if the court is inclined to issue a Judgment in favor of Berkel on the workers compensation bar to suit, then MAXIM moves the court to enter a Partial or Final Judgment in accordance with the Judgment attached hereto as Exhibit "A," in the above numbered and captioned matter; and for such other and further relief, both general and special, at law and in equity to which MAXIM may otherwise be justly entitled.

Respectfully submitted,

J. DIAMOND & ASSOCIATES, PLLC

_/s/ Jeffrey L. Diamond_
Jeffrey L. Diamond
    State Bar No. 05802500
Ann E. Knight
    State Bar No. 00786026
1010 N. San Jacinto Street
Houston, Texas 77002
Tel: (713) 227-6800
Fax: (713) 227-6801
jeff@jdiamondandassociates.com
ann@jdiamondandassociates.com

Attorneys for Defendants:
**Maxim Crane Works, L.P., and James Davidson**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the forgoing instrument was served upon all known counsel of record via facsimile, hand delivery, and/or certified mail, return receipt requested, on the 9th day of June, 2015.

Kurt B. Arnold
**ARNOLD & ITKIN**
6009 Memorial Drive
Houston, TX 77007

Charles Lloyd Clay, Jr.
**CHUCK CLAY & ASSOCIATES, LLC.**
3280 Peachtree Road NE, Suite 2050
Atlanta, GA 30305

John Dwyer
**GORDON & REES, LLP**
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

Steven D. Selbe
**GORDON & REES, LLP**
1900 West Loop South, Suite 1000
Houston, TX 77027

Andrew T. McKinney IV
D. Douglas Mena
**LITCHFIELD CAVO LLP**
One Riverway, Suite 1000
Houston, TX 77056

Jerry B. Dozier
**LAW OFFICE OF JERRY B. DOZIER**
2318 Koster Road
Alvin, TX 77511

Russell S. Post
**Beck Redden LLP**
1221 McKinney, Suite 4500
Houston, TX 77010

Justin Gilbert
**GILBERT & FUREY**
222 North Velasco Street
Angleton, TX 77515


/S/ Jeffrey L. Diamond
Ann E. Knight

# EXHIBIT "A"

CAUSE NO. 75576-CV

| | | |
|---|---|---|
| TYLER LEE AND LEIGH ANN LEE | § | IN THE DISTRICT COURT OF |
| INDIVIDUALLY AND AS NEXT FRIEND | § | |
| OF SYDNEY ROSE LEE, MINOR | § | |
| | § | |
| *Plaintiff* | § | |
| VS. | § | BRAZORIA COUNTY, TEXAS |
| | § | |
| BERKEL & COMPANY CONTRACTORS, | § | |
| INC., MAXIM CRANE WORKS, L.P., DIXON | § | |
| EQUIPMENT SERVICES, INC., FLOYD | § | |
| DIXON, ISAAC DOLAN, JAMES DAVIDSON | § | |
| ANDREW BENNETT, AND LINK-BELT | § | |
| CONSTRUCTION EQUIPMENT CO. | § | |
| | § | |
| *Defendants* | § | 149TH JUDICIAL DISTRICT |

## JUDGMENT

On April 20th, 2015, the Court called this case for trial. All parties appeared in person and through their respective attorneys, and announced ready for trial. The Court summoned a jury panel and a qualified jury of twelve (plus two alternates) was sworn to be the jury and that jury, together with the Court, proceeded to hear the evidence with that jury retiring to consider the verdict and thereafter returning its verdict into open court.

**MAXIM CRANE WORKS, L.P.** and **JAMES DAVIDSON** (collectively "MAXIM") filed a cross action against **BERKEL & COMPANY CONTRACTORS, INC.,** ("BERKEL") on or about June 12, 2014, for breach of contract. MAXIM'S cross action was based upon the Bare Rental Agreement between it and BERKEL. At the Jury Charge Conference, MAXIM requested that a Breach of Contract question be submitted to the jury for consideration, but the submission of same was objected to by BERKEL and sustained by the Court. A Breach of Contract question was not submitted to the jury in the Court's Charge.

The jury returned a verdict that found both defendants negligent. In the Charge submitted to the jury by the Court, MAXIM was assessed 10% responsible, and BERKEL was assessed

90% responsible, in the negligence/liability questions. The Jury also found for the Plaintiffs in the damages questions contained in the court's Jury Charge.

Whether MAXIM was entitled to reimbursement of its defense costs had previously been submitted to the court for consideration via BERKEL'S Motion for Summary Judgment. MAXIM filed responsive pleadings to BERKEL'S Motion and BERKEL, in turn filed a Reply to same. On February 24, 2015, the Court issued an Order denying BERKEL'S Motion.

At the Charge Conference, BERKEL argued and the Court concluded, that MAXIM'S cross claim should not be couched in terms of breach of contract, but instead was a question of law to be decided pursuant to Chapter 151 of the Texas Insurance Code (the Texas Anti-Indemnity Act). Accordingly, both BERKEL and MAXIM agreed that MAXIM'S defense fees, costs and expenses should be submitted to the court for consideration outside the presence of the jury and the same was submitted to the judge via sworn testimony on May 6th, 2015.

**THEREFORE, THE COURT ORDERS THAT** MAXIM'S claim for reimbursement of its defense fees, costs and expenses is governed by Chapter 151 of the Texas Insurance Code (the Texas Anti-Indemnity Act) and by the Bare Rental Agreement entered into by MAXIM and BERKEL, and is a question of law for the court.

**THEREFORE, THE COURT FURTHER ORDERS THAT** MAXIM'S defense fees, costs and expenses are as follows:

| | |
|---|---|
| Attorney's fees-- | $327,000.00; |
| Expert witness expenses/costs-- | $121,800.00; |
| Miscellaneous expenses/costs-- | $30,000.00; and |
| Trial expenses/costs-- | $41,695.00 |
| **TOTAL DEFENSE FEES, COSTS AND EXPENSES** | **$540,495.00** |

The **COURT ADDITIONALLY ORDERS** that pursuant to the jury's findings as to the negligence questions in the Court's Jury Charge, the Bare Rental Agreement between BERKEL

and MAXIM, and Chapter 151 of The Texas Insurance Code, BERKEL is to reimburse Maxim 90% of MAXIM'S TOTAL DEFENSE FEES/EXPENSES/COSTS, which amounts to $486,445.50.

The **COURT ADDITIONALLY ORDERS** that pursuant to its decision(s) regarding BERKEL'S request for relief under the Texas Workers' Compensation Act's bar to suit, MAXIM'S claim for indemnity is governed by the Bare Rental Agreement entered into by MAXIM and BERKEL, and Chapter 151.103 of the Texas Insurance Code (the Texas Anti-Indemnity Act), and is a question of law for the court.

Accordingly, the **COURT ORDERS** that pursuant to the jury's findings as to the negligence and damages questions in the Court's Jury Charge, the Bare Rental Agreement between BERKEL and MAXIM, and Chapter 151.103 of The Texas Insurance Code, BERKEL is to indemnify and pay Maxim the sum of $3,444,300.60, which is the amount of the verdict the jury returned against Maxim.

**THE COURT DENIES** all further relief not granted in this judgment.

**SIGNED** this _____ day of June, 2015.

_____
**HONORABLE JUDGE TERRI HOLDER**

# EXHIBIT D

CAUSE NO. 75576-CV

| | | |
|---|---|---|
| TYLER LEE AND LEIGH ANN LEE INDIVIDUALLY AND AS NEXT FRIEND OF SYDNEY ROSE LEE, MINOR | § § § § | IN THE DISTRICT COURT OF |
| *Plaintiff* | § | |
| VS. | § § | BRAZORIA COUNTY, TEXAS |
| BERKEL & COMPANY CONTRACTORS, INC., MAXIM CRANE WORKS, L.P., DIXON EQUIPMENT SERVICES, INC., FLOYD DIXON, ISAAC DOLAN, JAMES DAVIDSON ANDREW BENNETT, AND LINK-BELT CONSTRUCTION EQUIPMENT CO. | § § § § § § § § | |
| *Defendants* | § | 149TH JUDICIAL DISTRICT |

## AMENDED FINAL JUDGMENT

On Monday, April 20, 2015, this case was called to trial. Plaintiffs Tyler Lee and Leigh Ann Lee, individually and as next friend of Sydney Rose Lee, a minor, appeared in person and through their attorneys and announced ready for trial. Defendants Berkel & Company Contractors, Inc. ("Berkel") and Maxim Crane Works, L.P. ("Maxim") appeared through their attorneys and announced ready for trial.

Prior to the beginning of trial, Defendant Link-Belt Construction Equipment Co. and Plaintiffs announced a confidential settlement of $1,000,000, which is treated as a credit in this Judgment.

A jury of twelve qualified jurors of Brazoria County (with two alternates) were selected, sworn, and empanelled, after which the jury heard the evidence and the arguments of counsel. Following the conclusion of evidence, in response to the jury charge, the jury made findings that the Court received, filed and entered as record on May 6, 2015. The questions submitted to the jury and the jury's findings are attached as Exhibit A and incorporated by reference.

The jury found Defendant Berkel 90% responsible for the occurrence and found Defendant Maxim 10% responsible for the occurrence.

1

After trial but prior to the entry of this Judgment, Defendant Maxim and Plaintiffs reached a settlement of $3,544,300.60, which is treated as a credit in this Judgment.

The Court hereby renders judgment for Plaintiffs against Berkel.

The Court orders that Plaintiff Tyler Lee recover damages jointly and severally from Defendant Berkel in the sum of $38,744,866.13, prejudgment interest of $387,805.81 (calculated on past damage award of $5,572,800 at the annual rate of 5% for an accrual period of 509 days), court costs and post-judgment interest at the annual rate of 5% until paid, together with all costs of court, including costs incurred in enforcement and collection.

The Court orders that Plaintiff Leigh Ann Lee, individually, recover damages jointly and severally from Defendant Berkel in the sum of $174,357.14, prejudgment interest of $6,263.01 (calculated on past damage award of $90,000 at the annual rate of 5% for an accrual period of 509 days), court costs, and post-judgment interest at the annual rate of 5% until paid, together with all costs of court, including costs incurred in enforcement and collection.

The Court orders that Plaintiff Leigh Ann Lee, as next friend of Sydney Rose Lee, a minor, recover damages jointly and severally from Defendant Berkel in the sum of $479,482.13, prejudgment interest of $3,131.51 (calculated on past damage award of $45,000 at the annual rate of 5% for an accrual period of 509 days), court costs, and post-judgment interest at the annual rate of 5% until paid, together with all costs of court, including costs incurred in enforcement and collection.

The Court orders that Maxim's Defense Fees, Costs and Expenses are as follows:

| | |
|---|---|
| Attorney's fees-- | $327,000.00; |
| Expert witness expenses/costs-- | $106,000.00; |
| Miscellaneous expenses/costs-- | $30,000.00; and |
| Trial expenses/costs-- | $41,600.00 |

2

Total Defense Fees, Costs, and Expenses are:          $504,600.00

The Court additionally orders that pursuant to the jury's findings as to the negligence questions in the Court's Jury Charge, and Chapter 151 of The Texas Insurance Code, Maxim is not entitled to reimbursement of Maxim's Defense Fees, Costs, and Expenses of and from Berkel;

The Court hereby renders judgment for Berkel against Maxim on Maxim's Cross Action.

All relief not expressly granted by this Judgment is denied.  This judgment is final, disposes of all claims and parties, and is appealable.

The Court orders execution to issue for this Judgment.

SIGNED this __15__ day of June, 2015.

_____
HONORABLE JUDGE TERRI HOLDER

3

# EXIHIBT E

FILED
at 8:29 o'clock ___ M.

SEP 16 2015

Clerk of District Court Brazoria Co., Texas
BY _____ KMh _____ DEPUTY

CAUSE NO. 75576-CV

| | | |
|---|---|---|
| TYLER LEE AND LEIGH ANN LEE, | § | IN THE DISTRICT COURT OF |
| INDIVIDUALLY AND AS NEXT FRIEND OF | § | |
| SYDNEY ROSE LEE, MINOR | § | |
| | § | |
| PLAINTIFFS | § | |
| | § | |
| V. | § | BRAZORIA COUNTY, TEXAS |
| | § | |
| BERKEL & COMPANY CONTRACTORS, INC., | § | |
| MAXIM CRANE WORKS, L.P., AND | § | |
| LINK-BELT CONSTRUCTION EQUIPMENT CO. | § | |
| | § | |
| DEFENDANTS | § | 149TH JUDICIAL DISTRICT |

## FINAL JUDGMENT

On Monday, April 20, 2015, this case was called to trial. Plaintiffs Tyler Lee and Leigh Ann Lee, individually and as next friend of Sydney Rose Lee, a minor, appeared in person and through their attorneys and announced ready for trial. Defendants Berkel & Company Contractors, Inc. ("Berkel") and Maxim Crane Works, L.P. ("Maxim") appeared through their attorneys and announced ready for trial.

Prior to the beginning of trial, Defendant Link-Belt Construction Equipment Co. and Plaintiffs announced a confidential settlement, which has been approved by the Court and which is treated as a credit in this Judgment.

A jury of twelve qualified jurors of Brazoria County (with two alternates) was selected, sworn, and empanelled, after which the jury heard the evidence and the arguments of counsel. Following the conclusion of evidence, in response to the jury charge, the jury made findings that the Court received, filed, and entered as record on May 6, 2015. The questions submitted to the jury and the jury's findings are attached as Exhibit A and incorporated by reference.

The jury found Defendant Berkel 90% responsible for the occurrence and found Defendant Maxim 10% responsible for the occurrence.

1816.001/547506

After trial but prior to the entry of this Judgment, Defendant Maxim and Plaintiffs reached a settlement of $3,544,300.60, which is treated as a credit in this Judgment.

The Court hereby renders judgment for Plaintiffs against Berkel.

The Court orders that Plaintiff Tyler Lee recover damages jointly and severally from Defendant Berkel in the sum of $38,744,866.13, prejudgment interest of $464,145.53 (calculated on past damage award of $5,572,800 at the annual rate of 5% for an accrual period of 608 days), court costs, and post-judgment interest at the annual rate of 5% until paid, together with all costs of court, including costs incurred in enforcement and collection.

The Court orders that Plaintiff Leigh Ann Lee, individually, recover damages jointly and severally from Defendant Berkel in the sum of $174,357.14, prejudgment interest of $7,495.89 (calculated on past damage award of $90,000 at the annual rate of 5% for an accrual period of 608 days), court costs, and post-judgment interest at the annual rate of 5% until paid, together with all costs of court, including costs incurred in enforcement and collection.

The Court orders that Plaintiff Leigh Ann Lee, as next friend of Sydney Rose Lee, a minor, recover damages jointly and severally from Defendant Berkel in the sum of $479,482.13, prejudgment interest of $3,747.95 (calculated on past damage award of $45,000 at the annual rate of 5% for an accrual period of 608 days), court costs, and post-judgment interest at the annual rate of 5% until paid, together with all costs of court, including costs incurred in enforcement and collection.

Maxim's motion for entry of judgment is denied, and Maxim takes nothing on its claims against Berkel.

All relief not expressly granted by this Judgment is denied. This judgment is final, disposes of all claims and parties, and is appealable.

The Court orders execution to issue for this Judgment.

SIGNED this 15 day of Sept , 2015.

_T. Hilder_
PRESIDING JUDGE